## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ROYAL SLEEP PRODUCTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07 C 6588 |
| | ) | |
| RESTONIC CORPORATION; RESTONIC | ) | Judge Pallmeyer |
| MATTRESS CORPORATION; SLEEP | ) | Magistrate Judge Valdez |
| ALLIANCE, LLC; ROYAL BEDDING | ) | |
| COMPANY OF BUFFALO; JACKSON | ) | |
| MATTRESS CO. LLC; CONTINENTAL | ) | |
| SILVERLINE PRODUCTS L.P.; STEVENS | ) | |
| MATTRESS MANUFACTURING CO.; TOM | ) | |
| COMER, JR.; DREW ROBINS; and RICHARD | ) | |
| STEVENS, | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER AND AFFIRMATIVE DEFENSES OF RESTONIC CORPORATION AND RESTONIC MATTRESS CORPORATION TO PLAINTIFF'S COMPLAINT

Defendants, Restonic Corporation ("Restonic") and Restonic Mattress Corporation ("RMC"), by and through their undersigned attorneys, Burke, Warren, MacKay & Serritella, P.C., make the following answer to the complaint of plaintiff, Royal Sleep Products, Inc.

### JURISDICTION, THE PARTIES, AND VENUE

#### JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states and the matter in controversy exceeds, exclusive of interest, costs and attorneys' fees, the sum or value of Seventy Five Thousand Dollars ($75,000.00).

**ANSWER:**    Restonic and RMC make no answer to the allegations in paragraph 1 of the Complaint as they state legal conclusions. Further, neither defendant is aware of the residency of the individual members of the several defendant limited liability companies or the

amount in controversy, and thus cannot admit or deny the factual predicate for the allegations in

paragraph 1 of the Complaint.

2.     This Court has personal jurisdiction over the Defendants pursuant to Illinois' long-arm statute, Ill. Rev. Stat. ch. 110, para. 2-209 ("Section 209") in that each of Defendants ROYAL BEDDING COMPANY OF BUFFALO, JACKSON MATTRESS CO. LLC, STEVENS MATTRESS MANUFACTURING CO. and CONTINENTAL SILVERLINE PRODUCTS L.P., through their respective owners, Defendants TOM COMER, JR., DREW ROBINS, and RICHARD STEVENS, made or performed a contract or promise substantially connected with Illinois and thereby transacted business in Illinois by invoking the benefits and protections of Illinois law in the contractual relationship, as the contracts executed by them are governed by Illinois law. The Court also has personal jurisdiction over Defendants SLEEP ALLIANCE, LLC, ROYAL BEDDING COMPANY OF BUFFALO, JACKSON MATTRESS CO. LLC, STEVENS MATTRESS MANUFACTURING CO. and CONTINENTAL SILVERLINE PRODUCTS L.P., and their respective owners, Defendants TOM COMER, JR., DREW ROBINS, and RICHARD STEVENS, pursuant to Section 209 in that such Defendants, shareholders of RMC (as hereinafter defined), breached the fiduciary duties owed by them within the State of Illinois. Similarly, this Court possesses jurisdiction over Defendant TOM COMER, JR. as a result of his breach of his fiduciary duty to RMC and its licensees, including Plaintiff, as a member of RMC's Board of Directors. This Court also has personal jurisdiction over Defendants SLEEP ALLIANCE, LLC, ROYAL BEDDING COMPANY OF BUFFALO, JACKSON MATTRESS CO. LLC, STEVENS MATTRESS MANUFACTURING CO. and CONTINENTAL SILVERLINE PRODUCTS L.P., and their respective owners, Defendants TOM COMER, JR., DREW ROBINS, and RICHARD STEVENS, pursuant to Section 209 in that all such Defendants have committed a tortious act within Illinois, as fully set forth below. Further, this Court has personal jurisdiction over such Defendants in that such Defendants acquired ownership, possession or control of a thing of value located within Illinois, to wit: stock in RMC.

**ANSWER:**     Restonic and RMC make no answer to the allegations in paragraph 2 of

the Complaint as they state legal conclusions. Further, this paragraph fails to identify any

particular jurisdictional basis for the claims asserted against Restonic and RMC.

PARTIES

3.     Plaintiff ROYAL SLEEP PRODUCTS, INC. is a Florida corporation having its

principal place of business in Miami, Florida.

**ANSWER:**     Restonic and RMC lack sufficient information to answer the allegations in

paragraph 3 of the Complaint, subject to the qualification that "Royal Sleep Products" generally

held itself out this way in its dealings with Restonic and RMC.

4.    Defendant RESTONIC CORPORATION is an Illinois corporation having its principal place of business in Rosemont, Illinois.

**ANSWER:**    Denied. Further answering, Restonic avers it is a Delaware corporation, with its headquarters in Palatine, Illinois.

5.    Upon information and belief, Defendant RESTONIC MATTRESS CORPORATION ("RMC") is an Illinois corporation having its principal place of business in Rosemont, Illinois.

**ANSWER:**    Admitted.

6.    Upon information and belief, Defendant SLEEP ALLIANCE LLC is a Delaware corporation having its principal place of business in Delaware. Upon information and belief, none of the members of Sleep Alliance LLC are Illinois residents.

**ANSWER:**    Restonic and RMC admit the existence of an entity known as Sleep Alliance, LLC, but lack sufficient information to answer the remaining allegations in paragraph 6 of the Complaint, other than to note that a limited liability company cannot by definition be a corporation.

7.    Defendant JACKSON MATTRESS Co. LLC is a North Carolina corporation having its principal place of business in Fayetteville, North Carolina. Upon information and belief, none of the members of Jackson Mattress Co. LLC are Illinois residents.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in paragraph 7 of the Complaint, subject to the qualification that "Jackson Mattress Company" generally held itself out in certain dealings with Restonic and RMC as being a North Carolina business entity based in Fayetteville, North Carolina, and other than to note that a limited liability company cannot by definition be a corporation.

8.    Upon information and belief, Defendant ROYAL BEDDING COMPANY OF BUFFALO is a New York corporation having its principal place of business in Buffalo, New York.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in paragraph 8 of the Complaint, subject to the qualification that "Royal Bedding Company"

generally held itself out in certain dealings with Restonic and RMC as being a New York

business entity based in Buffalo, New York.

9.    Upon information and belief, Defendant CONTINENTAL SILVERLINE PRODUCTS, L.P. is a Texas Limited Partnership having its principal place of business in Houston, Texas. Upon information and belief, none of the partners of Continental Silverline Products, L. P. are Illinois residents.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 9 of the Complaint, subject to the qualification that "Continental Silverline Products"

generally held itself out in certain dealings with Restonic and RMC as being a Texas business

entity based in Houston, Texas.

10.    Upon    information    and    belief,    Defendant    STEVENS    MATTRESS MANUFACTURING CO. is a North Dakota corporation with its principal place of business in Grand Forks, North Dakota.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 10 of the Complaint, subject to the qualification that "Stevens Mattress

Manufacturing" generally held itself out in certain dealings with Restonic and RMC as being a

North Dakota business entity based in Grand Forks, North Dakota.

11.    Defendant TOM COMER JR. is an individual over the age of eighteen (18), is sui juris and, upon information and belief, is a citizen of and resides in North Carolina.

**ANSWER:**    Restonic and RMC admit that Mr. Comer is an individual over the age of

18; Restonic and RMC lack sufficient information to answer the remaining allegations in

paragraph 11 of the Complaint.

12.    Defendant DREW ROBINS is an individual over the age of eighteen (18), is sui juris and, upon information and belief, is a citizen of and resides in Texas.

**ANSWER:**    Restonic and RMC admit that Mr. Robins is an individual over the age of

18; Restonic and RMC lack sufficient information to answer the remaining allegations in

paragraph 12 of the Complaint.

13.    Defendant RICHARD STEVENS is an individual over the age of eighteen (18), is sui juris and, upon information and belief, is a citizen of and resides in North Dakota.

**ANSWER:**    Restonic and RMC admit that Mr. Stevens is an individual over the age of

18; Restonic and RMC lack sufficient information to answer the remaining allegations in

paragraph 13 of the Complaint.

VENUE

14.    Venue in this district is appropriate pursuant to 28 U.S.C. Sec. 1391(a).

**ANSWER:**    Restonic and RMC make no answer to the allegations in paragraph 14 of

the Complaint as they state legal conclusions.

15.    Plaintiff retained the undersigned law firms and has agreed to pay it a reasonable fee for its services.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 15 of the Complaint.

16.    All conditions precedent to the filing of this action have either occurred or been waived.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 16 of the Complaint.

**GENERAL ALLEGATIONS**

THE BACKGROUND OF THE PARTIES

17.    Restonic Corporation ("Restonic") has developed programs, services and know-how and is the owner of certain patents and trademarks, all of which are useful in connection with the manufacture and sale of bedding products. Restonic is the parent company of Res tonic Mattress Corporation.

**ANSWER:**    Restonic admits that it owns certain intellectual property used in

connection with the manufacture, marketing and sale of mattresses and related products.

Restonic denies the remaining allegations in paragraph 17 of the Complaint.

18.    Restonic Mattress Corporation ("RMC") is a subsidiary corporation of Restonic.

**ANSWER:**    Denied. Further answering, RMC states it is a sister corporation relative to

Restonic.

19.    Royal Sleep Products, Inc. ("Royal") is a Restonic licensee located in Miami,
Florida. Royal specializes in the manufacturing of mattresses and box springs for retail stores,
hotels and designers. Royal is owned by Gary Robinson ("Mr. Robinson") and maintains a
manufacturing facility located at 3520 NW 46th Street, Miami, FL 33142 (the "Miami Facility").
Royal owns fifteen (15) shares of RMC stock.

**ANSWER:**    Restonic believes and admits that Royal entered into a certain agreement

with it on or about June 1, 2007, entitled "Amended and Restated Sublicense Agreement," which

amends and restates prior agreements between the parties and is believed to govern the

relationship of the parties. Restonic and RMC also admit that Royal owns fifteen (15) shares of

RMC common stock. Restonic and RMC deny the remaining allegations in paragraph 19 of the

Complaint.

20.    Royal Bedding Company of Buffalo ("Royal Bedding") is a Restonic licensee
located in Buffalo, New York that specializes in the manufacturing of mattresses and box
springs. Royal Bedding is owned by Defendant Tom Comer, Jr., ("Mr. Comer"), a member of the
Board of Directors of RMC. Royal Bedding owns fifteen (15) shares of RMC stock.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 20 of the Complaint, subject to the allegations previously answered as to Royal

Bedding Company. Restonic and RMC deny the remaining allegations in paragraph 20 of the

Complaint.

21.    Jackson Mattress Co. LLC ("Jackson") is a Restonic licensee located in
Fayetteville, North Carolina that specializes in the manufacturing of mattresses and box springs,
furniture and furnishings. Jackson is also owned by Defendant Mr. Comer. Jackson owns sixty
(60) shares of RMC stock.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 21 of the Complaint, subject to the allegations previously answered as to Jackson

Mattress Company, and subject to the averment that Jackson Mattress Company has

manufactured certain goods pursuant to certain agreements with Restonic. Restonic and RMC

deny the remaining allegations in paragraph 21 of the Complaint.

      22.     Continental Silverline Products ("Continental") is a Restonic licensee located in Houston, Texas that specializes in the manufacturing of mattresses and box springs. Continental is owned by Defendant Drew Robins ("Mr. Robins"). Continental owns sixty (60) shares of RMC stock.

      **ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 22 of the Complaint, subject to the allegations previously answered as to Continental

Silverline Products, and subject to the averment that Continental Silverline Products has

manufactured certain goods pursuant to certain agreements with Restonic. Restonic and RMC

also admit that Continental Silverline Products owns sixty (60) shares of RMC common stock.

Restonic and RMC deny the remaining allegations in paragraph 22 of the Complaint.

      23.     Stevens Mattress Manufacturing, Inc. ("Stevens") is a Restonic licensee located in Grand Rapids, Michigan that specializes in the manufacturing of mattresses and box springs Stevens is owned by Defendant Richard Stevens ("Mr. Stevens"). Stevens owns forty-five (45) shares of RMC stock.

      **ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 23 of the Complaint, subject to the allegations previously answered as to Stevens

Mattress Manufacturing, and subject to the averment that Stevens Mattress Manufacturing has

manufactured certain goods pursuant to certain agreements with Restonic. Restonic and RMC

also admit that Stevens owns thirty (30) shares of RMC common stock. Restonic and RMC deny

the remaining allegations in paragraph 23 of the Complaint.

      24.     Sleep Alliance is the result of a strategic alliance among Royal Bedding, Jackson, Mr. Comer, Continental, Mr. Robins, Stevens and Mr. Stevens, through which each of the aforementioned licensees and their owners gained majority ownership and control of Restonic and RMC.

**ANSWER:**    Restonic and RMC admit the existence of an entity known as Sleep Alliance, LLC. Restonic and RMC deny the remaining allegations in paragraph 24 of the Complaint.

### THE SUB-LICENSE AGREEMENT

25.    On or about April, 2001, Royal became a sub-licensee of RMC through the execution of a sub-license agreement (the "Sub-License Agreement"). Based on numerous written and oral assurances from representatives of Restonic and RMC, Mr. Robinson reasonably believed that Royal would operate the only manufacturing facility in the State of Florida.

**ANSWER:**    Restonic and RMC admit the existence of the afore-alleged Amended and Restated Sublicense Agreement. Restonic and RMC deny the summary language averred in paragraph 25 of the Complaint and affirmatively state that the afore-alleged Amended and Restated Sublicense Agreement speaks for itself. Any provision in this paragraph that contradicts the afore-alleged Amended and Restated Sublicense Agreement is hereby denied. Restonic and RMC deny the remaining allegations in paragraph 25 of the Complaint.

26.    The Sub-License Agreement permitted Royal to participate in the utilization of patents of Restonic, the utilization of Restonic trademarks, as well as participation in Restonic programs for the manufacture of mattresses and bedding products.

**ANSWER:**    Restonic and RMC admit the existence of the afore-alleged Amended and Restated Sublicense Agreement. Restonic and RMC deny the summary language averred in paragraph 26 of the Complaint and affirmatively state that the afore-alleged Amended and Restated Sublicense Agreement speaks for itself. Any provision in this paragraph that contradicts the afore-alleged Amended and Restated Sublicense Agreement is hereby denied.

27.    In addition to the Sub-License Agreement, Royal also became a signatory to the Restonic National Account Program (the "National Account Program"). The National Account Program mandates that with respect to national accounts obtained by Restonic, the Restonic licensee whose manufacturing facility is geographically the closest to the product shipping location must service the Restonic customer unless otherwise requested by the customer.

**ANSWER:**    Restonic and RMC admit the existence, at certain times, and under certain conditions, of a "National Account Program." Restonic and RMC deny the summary language and characterizations averred in paragraph 27 of the Complaint. To the extent necessary, Restonic and RMC deny the remaining allegations in paragraph 27 of the Complaint.

<u>MR. ROBINSON'S RELATIONSHIP WITH TOM COMER JR.</u>

28.    Sometime in 2002, Mr. Comer, through his company, Jackson, purchased the rights to the North Carolina, Tampa, and Jacksonville Restonic licenses from Gigi Girsch ("Ms. Girsch"), as well as Ms. Girsch's Jacksonville warehouse that was being utilized to ship Restonic licensed mattresses and bedding products.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in paragraph 28 of the Complaint.

29.    In 2002, Mr. Robinson and Mr. Comer met at the International Sleep Products tradeshow in Nashville, Tennessee. During a discussion between the two, Mr. Robinson presented Royal's purchase offer whereby Mr. Robinson suggested that Jackson sell its Jacksonville license and warehouse and Tampa license to Royal, and use the proceeds from the sale to develop its Baltimore facility. In doing so, Royal, Jackson, Royal Bedding and RMC would benefit because: (1) Royal would be able to expand its shipments to Northern Florida without competition from Jackson; (2) Jackson would realize a financial gain; (3) Royal Bedding would receive increased cash flow to expand its production in Baltimore; and (4) RMC would benefit by the decreased inner-company competition and increased production and shipment of Restonic product overall.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in paragraph 29 of the Complaint.

30.    Mr. Comer rejected Royal's offer stating instead that he intended to run Royal out of business, push it out of Florida and make Mr. Robinson "regret the day he heard the Restonic name."

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in paragraph 30 of the Complaint.

<u>THE FORMATION OF THE SLEEP ALLIANCE AND THE APPOINTMENT OF MR.<br>COMER TO THE RMC BOARD OF DIRECTORS</u>

31.    Sometime in the summer of 2006, Mr. Comer, owner of franchisee Jackson and Royal, and holder of seventy-five (75) shares of RMC stock, Drew Robins ("Mr. Robins"),

owner of franchisee Continental Silverline Products ("Continental") and holder of sixty (60) shares of RMC stock, and Richard Stevens ("Mr. Stevens"), owner of franchisee Stevens Mattress Manufacturing Inc. ("Stevens") and holder of forty- five (45) shares of RMC stock, joined together to form the Sleep Alliance ("Sleep Alliance").

**ANSWER:** Restonic and RMC admit the existence of an entity known as Sleep Alliance, LLC. Restonic and RMC adopt their previous answers to the allegations in this Complaint as to the identity of shareholders and share ownership, and deny the remaining allegations in paragraph 31 of the Complaint.

32.    Given the fact that there were a total of three hundred and forty-five (345) shares of outstanding Restonic and RMC stock, the partnership between Mr. Comer, Mr. Robins and Mr. Stevens resulted in the Sleep Alliance holding 52.2% of the Restonic stock. Accordingly, Sleep Alliance became the majority shareholder of Restonic and RMC.

**ANSWER:** Restonic and RMC admit the total number of shares of Restonic and RMC stock, and deny the remaining allegations in paragraph 32 of the Complaint.

33.    In the fall of 2006, after Sleep Alliance became the majority shareholder of Restonic and RMC, Sleep Alliance fired Carlene Evenson from her position as Restonic President and replaced her with Steve Russo ("Mr. Russo"), a personal friend of Mr. Comer.

**ANSWER:** Restonic admits that Mr. Russo is its current President and has been since on or about December 1, 2006, and further that he was hired by Restonic to replace one Carlene Evenson. To the extent necessary, Restonic and RMC deny the remaining allegations in paragraph 33 of the Complaint.

34.    Also in the fall of 2006, Sleep Alliance voted Adam Weinman ("Mr. Weinman"), a friend of Mr. Russo and Dan Cantor ("Mr. Cantor"), the former owner of the Buffalo Restonic license, as members of the RMC board of directors.

**ANSWER:** RMC admits that Mr. Weinman and Mr. Cantor were elected in or about November 2006 as members of the RMC Board of Directors. To the extent necessary, Restonic and RMC deny the remaining allegations in paragraph 34 of the Complaint.

35.    Shortly after he was appointed, Mr. Weinman resigned his position on the RMC board of directors and Sleep Alliance voted to replace him with Mr. Comer. Accordingly, as of late fall, 2006, Mr. Comer became a member of the RMC board of directors.

**ANSWER:**     RMC admits that in late 2007, Mr. Weinman resigned as a member of the RMC Board of Directors as he accepted a position with a competitive entity. RMC also admits that in late 2006, Mr. Comer was elected to the RMC Board of Directors, along with at least another member. To the extent necessary, Restonic and RMC deny the remaining allegations in paragraph 35 of the Complaint.

<u>SLEEP ALLIANCE'S USURPATION OF THE RESTONIC-MATTRESS GIANT BUSINESS RELATIONSHIP</u>

36.     Prior to the formation of Sleep Alliance, RMC, on behalf of itself and its licensees, began negotiations to conduct business with Mattress Giant. The negotiations continued to advance in late 2005 when Donna Favia, the then Vice President of sales at RMC, ("Ms. Favia") took over the negotiation.

**ANSWER:**     Restonic and RMC admit certain limited discussions with Mattress Giant, and deny the remaining allegations and any characterizations in paragraph 36 of the Complaint.

37.     On or about July 2006, in a meeting of the Restonic licensees at a trade show in Las Vegas, Nevada, Ms. Favia announced that the negotiations between RMC and Mattress Giant were going well. Specifically, Ms. Favia reported that RMC had several meetings with Mattress Giant, including one at the Houston Restonic facility owned by Mr. Robins (the "Houston Meeting"), to show Mattress Giant some product samples.

**ANSWER:**     Restonic and RMC admit a meeting in Las Vegas in July 2006, and the Houston Meeting, and deny the remaining allegations and any characterizations in paragraph 37 of the Complaint.

38.     Pursuant to the negotiations with Mattress Giant, if RMC was awarded the Mattress Giant account many of the Restonic licensees, including Royal, would benefit, as the orders would be distributed equally amongst the licensees based on the geographic region for which the product was requested. Specifically, the deal would be structured in the same way as all RMC national account business: the manufacturing facility closest to the Mattress Giant warehouse issuing the order would be granted the business and produce the product. By structuring the deal in this manner, the Restonic licensees with warehouses or facilities located in Texas, Florida, New Jersey, New York and Pennsylvania, the regions in which Mattress Giant does business, would benefit from the acquisition of the Mattress Giant account.

**ANSWER:**     Denied.

39.    Unfortunately however, shortly after the meeting in Houston, Sleep Alliance interfered with these negotiations and took over the Mattress Giant negotiations from RMC corporate on its own behalf. According to Mr. Comer, if a deal was reached with Mattress Giant by Sleep Alliance, it would be for the benefit of Sleep Alliance and not RMC and the Restonic licensees. Importantly, since Mr. Comer, Mr. Robins and Mr. Stevens were the members of Sleep Alliance, they would also personally benefit from a deal between Mattress Giant and Sleep Alliance.

**ANSWER:**    Denied.

40.    In making this statement, Mr. Comer and the other members of the Sleep Alliance immediately breached their fiduciary duty to all of the Restonic licensees and admitted to their unethical self-dealing. Indeed, by usurping the benefit of the Mattress Giant deal in favor of Mr. Comer, Sleep Alliance and its affiliated principals and entities, Sleep Alliance could bypass the National Account Program for its own pecuniary gain.

**ANSWER:**    Denied.

### SLEEP ALLIANCE'S AGREEMENT WITH ROYAL

41.    Between September and December 2006, Sleep Alliance toured the Miami facility and with assistance from Deborah Gory, Sleep Alliance's Information Technology representative ("Ms. Gory"), reviewed Royal's financial statements. Subsequently, Sleep Alliance approached Royal with offers to either purchase Royal in its entirety, or, in the alternative, to enter into a supply agreement with Royal.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 41 of the Complaint.

### THE LADY AMERICANA OPPORTUNITY

42.    On July 7, 2007, Lady Americana, another licensing group that holds licenses for the production of mattresses, negotiated a deal to sell its product to Mattress Giant.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 42 of the Complaint.

43.    Upon learning of this fact, Mr. Robinson contacted Kerry Tramell ("Mr. Tramell"), the president of Lady Americana, to express Royal's interest in manufacturing the Lady Americana product and supplying to Mattress Giant.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 43 of the Complaint.

44.    Mr. Tramell requested that Mr. Robinson travel to Oklahoma and meet with corporate executives.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 44 of the Complaint.

45.    On July 9, 2007, Mr. Comer called Mr. Robinson and asked him if Royal was becoming a Lady Americana franchisee. Mr. Robinson asked Mr. Comer how he had heard and Mr. Comer stated that he was not at liberty to say.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 45 of the Complaint.

46.    Mr. Robinson flew to Oklahoma on July 10, 2007 and participated in a meeting with Lady Americana.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 46 of the Complaint.

47.    The meeting with Lady Americana went well until such point as Mr. Tramell mentioned that he had spoken to Mattress Giant about Royal and Mattress Giant said they had heard negative things. Despite this statement from Mattress Giant, Mr. Tramell informed Mr. Robinson that he was personally impressed by Royal and wanted to do an inspection of the Miami Facility.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 47 of the Complaint.

48.    On July 21, 2007, Steve Booker, the sales manager for Lady Americana ("Mr. Booker"), and Ray Frazier, the Texas franchisee for Lady Americana ("Mr. Frazier"), toured Royal's Miami Facility. They were very impressed with the Miami Facility and felt that Mattress Giant's negative impression was unsubstantiated. It was at that time that Mr. Booker and Mr. Robinson discussed the previous issues that Royal had with Jackson and the telephone call from Mr. Comer that Mr. Robinson received on July 9, 2007. Mr. Booker then informed Mr. Robinson that a Mattress Giant representative told Mr. Booker confidentially that the negative comments came from someone at Restonic. Mr. Booker indicated that he believed the source of the comments was likely Mr. Comer.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 48 of the Complaint.

49.    Upon learning this information, on July 22, 2007, Mr. Robinson called Mr. Robins and told him about the comments from Mr. Comer's facility. Mr. Robins informed Mr. Robinson that at the Houston meeting, Mr. Robins had heard the same negative comments about Royal from Mattress Giant but was unaware of the source.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 49 of the Complaint.

## DEFAMATION OF ROYAL BY MR. COMER, JACKSON AND ITS EMPLOYEES

50.    On or about July 21, 2007, Mr. Robinson learned that Mr. Comer and Jackson were intentionally making defamatory statements about Royal. Specifically, in an effort to commandeer a potential business opportunity between Royal and Mattress Giant, one of the country's largest and fastest-growing specialty bedding retailers, Mr. Comer intentionally advised Mattress Giant, despite knowing that these statements were not true, that Royal was going out of business, that Royal was liquidating its business, that Royal did not follow product specifications, that Royal did not honor warranties, and that Restonic was considering terminating Royal's franchise agreement.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 50 of the Complaint, subject to the qualification that it denies that Restonic was

considering terminating any relationship with Royal.

51.    On or about August 2007, Mr. Robinson had several conversations with Mr. Booker who indicated that he was trying to get a representative from Mattress Giant to inspect Royal's Miami facility to assure Mattress Giant's comfort with Royal as a Lady Americana franchisee.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 51 of the Complaint.

52.    Not surprisingly, because of the negative comments about Royal made by Mr. Comer and representatives of Jackson to Mattress Giant, Mr. Comer and Sleep Alliance's breach of their fiduciary duty of loyalty, and Mr. Comer's intentional interference with Royal's negotiations with Lady Americana and Mattress Giant, Royal was unable to secure the deal with Mattress Giant.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 52 of the Complaint.

53.     On September 11, 2007, Mr. Comer informed Mr. Robinson that Mr. Robins and Sleep Alliance's sales manager, Brent Ford, were having a meeting with Mattress Giant to discuss a business arrangement between Mattress Giant and Sleep Alliance.

**ANSWER:**     Restonic and RMC lack sufficient information to answer the allegations in

paragraph 53 of the Complaint.

### SLEEP ALLIANCE'S WITHDRAWAL OF THE BUYOUT OFFER AND SUPPLY AGREEMENT

54.     In August 2007, Mr. Russo approached Mr. Robinson to determine whether Mr. Robinson was willing to sell the Royal business as well as his fifteen (15) shares of RMC stock to the Alliance (the "Buyout").

**ANSWER:**     Restonic and RMC admit certain limited discussions between Mr. Russo

and Mr. Robinson in September 2007, and deny the remaining allegations and any

characterizations in paragraph 54 of the Complaint.

55.     Thereafter, in approximately August 2007, Mr. Russo contacted Mr. Robinson to inquire if he would be willing to take payment over time for the Buyout. Mr. Robinson agreed. Mr. Comer subsequently informed Mr. Robinson that before finalizing the Buyout, Sleep Alliance would need to see Royal's financials. Mr. Robinson agreed but in return, requested that he also be provided a copy of Sleep Alliance financials.

**ANSWER:**     Restonic and RMC admit certain limited discussions between Mr. Russo

and Mr. Robinson in September 2007, and deny the remaining allegations and any

characterizations in paragraph 55 of the Complaint.

56.     Initially, Sleep Alliance agreed to produce its financials. Later however, Sleep Alliance retracted on this agreement, arguing that its lawyer had advised against it because Sleep Alliance was now contemplating opening its own manufacturing facility in Florida. Despite the fact that Sleep Alliance had already reviewed Royal's financials prior to negotiating the Buyout, Sleep Alliance, contended that its review of Royal's financials now, could potentially expose it to future legal action.

**ANSWER:**     Restonic and RMC lack sufficient information to answer the allegations in

paragraph 56 of the Complaint.

57.     Despite this, on or about September 18, 2007, Mr. Robinson and Mr. Robins had a telephone conversation. During that conversation, Sleep Alliance indicated that it was going to

terminate the Buy Out and Supply Agreement due to its intent to open its own manufacturing facility in Florida.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 57 of the Complaint.

58.    According to Sleep Alliance, the motivation for Sleep Alliance to open its own facility in Florida was the fact that Mattress Giant would prefer to do business with a company that owned all of its own factories, as opposed to a licensing group that worked with individually-owned factories. According to Sleep Alliance, because it already owned factories in New York, North Carolina, Iowa, North Dakota, Maryland and Texas, it made sense to add a factory in Florida. This rationale however, is belied by the fact that Mattress Giant had previously entered into a deal with Lady Americana, which, like Restonic, is a mattress licensing group. Thus, the justification provided by Sleep Alliance for its intention to open a Florida factory was clearly pretextual.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 58 of the Complaint.

59.    Following this conversation, Mr. Robinson received a letter from Sleep Alliance indicating that all discussions relating to the Buyout and Supply Agreement were immediately terminated.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 59 of the Complaint.

60.    The fact that Sleep Alliance was considering opening a manufacturing facility in Florida completely contradicted the representations, assurances and promises of the former RMC presidents that no additional facilities would be opened in Florida, and that the opening of such additional facilities would not be beneficial to Restonic and RMC.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in

paragraph 60 of the Complaint.

61.    Indeed, after Mr. Robinson learned of Sleep Alliance's plans to open a manufacturing facility in Florida, Mr. Robinson contacted Mr. Russo to express his concerns in this regard. Mr. Russo stated that such plans were a surprise to him and that Sleep Alliance opening a factory in Tampa or Jacksonville made no business or economic sense to him given the size of business currently being serviced and the plethora of issues that would result from it. According to Mr. Russo, opening an additional manufacturing facility in Florida would be a very bad business move for Restonic and RMC and a very bad business move for Sleep Alliance.

**ANSWER:**   Restonic and RMC admit that Mr. Russo has certain opinions as to the business wisdom of opening additional manufacturing facilities in Florida through Restonic and RMC licenses, and may have expressed those opinions, and deny the remaining allegations and any characterizations in paragraph 61 of the Complaint.

## RMC'S BREACH OF THE SUB-LICENSE AGREEMENT

62.     Under the Sub-License Agreement, Royal was granted the right "to receive and use RMC Know-How and RMC Services on terms and conditions applicable to other RMC Sub-Licensees."

**ANSWER:**   Restonic and RMC admit the existence of the afore-alleged Amended and Restated Sublicense Agreement, which they believe govern the relationship of the parties, and which speaks for itself. Any provision in this paragraph 62 that contradicts the afore-alleged Amended and Restated Sublicense Agreement is hereby denied.

63.     The Sub-License Agreement defines "RMC Services" as "such services as RMC shall make available from time to time to RMC Sub-Licensees, including advertising services, recommendations regarding sources of components, marketing information and statistics and data processing services and also including all such services made available by Restonic to RMC."

**ANSWER:**   Restonic and RMC admit the existence of the afore-alleged Amended and Restated Sublicense Agreement, which they believe govern the relationship of the parties, and which speaks for itself. Any provision in this paragraph 63 that contradicts the afore-alleged Amended and Restated Sublicense Agreement is hereby denied.

64.     Given that Sleep Alliance was seeking to open its own facility in Florida for the purpose of attracting Mattress Giant to it, on October 19, 2007, Mr. Robinson contacted Ms. Favia, the RMC Vice President of Sales, and asked that RMC continue its prior negotiations with Mattress Giant on behalf of RMC.

**ANSWER:**   Restonic and RMC lack sufficient information to answer the allegations in paragraph 64 of the Complaint, subject to the qualification that even if contact was had with Ms.

Favia as alleged, Ms. Favia had no authority to act on behalf of Restonic and/or RMC in any way relating to the subject matter of the Complaint.

65.    Ms. Favia responded to Mr. Robinson that she had to consult with Mr. Russo (Restonic's President appointed by Sleep Alliance) regarding Mr. Robinson's request.

**ANSWER:**    Restonic and RMC lack sufficient information to answer the allegations in paragraph 65 of the Complaint, subject to the qualification that Ms. Favia had no authority to act on behalf of Restonic and/or RMC in any way relating to the subject matter of the Complaint.

66.    Prior to being appointed by Sleep Alliance as president of RMC, Mr. Russo worked in Tampa for Spring Air, a mattress licensing group based out of Chicago. As a result, Mr. Russo had extensive contacts in the mattress industry. Mr. Robinson believed that asking Mr. Russo to use his contacts to help acquire several bedding accounts, including Famous Tates, would be beneficial to RMC, Restonic and Royal. Accordingly, on or about October 24, 2007, Mr. Robinson contacted Mr. Russo and asked that he contact Famous Tates on behalf of RMC.

**ANSWER:**    Restonic and RMC do not dispute the general characteristics of Mr. Russo's background, and lack sufficient information to answer the remaining allegations in paragraph 66 of the Complaint, subject to the qualification that it admits contact between Mr. Russo and Mr. Robinson as to Famous Tates.

67.    Mr. Russo replied that it was best for Mr. Russo to "stay away" from that account, as Fayetteville, the North Carolina factory owned by Mr. Comer, was also interested in acquiring it. When Mr. Robinson suggested that Paragraph 4 of the Rules and Regulations of the National Account Program (which dictates which Restonic licensee receives business from national accounts) would alleviate any competition between Royal and Jackson, Mr. Russo still refused to contact Famous Tates. Mr. Russo's failure to fulfill his obligation to assist a Restonic licensee such as Royal, in acquiring business accounts, was a clear violation of the provisions of the Sub-License Agreement.

**ANSWER:**    Restonic and RMC admit certain limited discussions between Mr. Russo and Mr. Robinson as to Famous Tates, but deny the remaining allegations and any characterizations in paragraph 67 of the Complaint.

68.    Based on the foregoing, it is clear that RMC was not providing the services due to Royal under the Sub-License Agreement because of Sleep Alliance's chokehold on the company, which constitutes a breach of such agreement.

**ANSWER:**   Denied.

## COUNT I

### BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Against Mr. Comer)

COUNT I IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT I OF PLAINTIFF'S COMPLAINT.

## COUNT II

### BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Against Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens)

COUNT II IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT II OF PLAINTIFF'S COMPLAINT.

## COUNT III

### AIDING AND ABETTING BREACH OF FIDUCIARY DUTY OF LOYALTY
### (Against Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens)

COUNT III IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT III OF PLAINTIFF'S COMPLAINT.

## COUNT IV

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE WITH LADY AMERICANA
### (Against Mr. Comer)

COUNT IV IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT IV OF PLAINTIFF'S COMPLAINT.

## COUNT V

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE WITH LADY AMERICANA
### (Against Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens)

93.    The allegations set forth in Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

**ANSWER:**    For its answer to paragraph 93 of the Complaint, Restonic and RMC incorporate by reference as though fully set forth their answers to paragraphs 1 to 68 of the Complaint.

94.    Royal had a reasonable expectation of entering into a valid business relationship with Lady Americana.

**ANSWER:**    Restonic and RMC make no answer to the allegations in paragraph 94 of the Complaint as they state a legal conclusion.

95.    Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens had knowledge of Royal's expectancy.

**ANSWER:**    Restonic and RMC make no answer to the allegations in paragraph 95 of the Complaint as they state a legal conclusion.

96.    Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens interference with Lady Americana and Royal's prospective economic advantage represents an intentional and unjustified interference.

**ANSWER:**    Restonic and RMC deny any wrongdoing or liability to the plaintiff.

97.    Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens' purposeful interference prevented Royal from realizing a valid business relationship with Lady Americana.

**ANSWER:**    Restonic and RMC deny any wrongdoing or liability to the plaintiff.

98.    As a result of Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens interference, Royal has suffered substantial harm and damages.

**ANSWER:**    Denied.

## COUNT VI

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE WITH MATTRESS GIANT
### (Against Mr. Comer)

COUNT VI IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT VI OF PLAINTIFF'S COMPLAINT.

## COUNT VII

### TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE WITH MATTRESS GIANT
### (Against Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens)

105.    The allegations set forth in Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

**ANSWER:**    For its answer to paragraph 105 of the Complaint, Restonic and RMC incorporate by reference as though fully set forth their answers to paragraphs 1 to 68 of the Complaint.

106.    Royal had a reasonable expectation of entering into a valid business relationship with Mattress Giant.

**ANSWER:**    Restonic and RMC make no answer to the allegations in paragraph 106 of the Complaint as they state a legal conclusion.

107.    Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens had knowledge of Royal's expectancy.

**ANSWER:**    Restonic and RMC make no answer to the allegations in paragraph 107 of the Complaint as they state a legal conclusion.

108.    Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens' purposeful interference with Mattress Giant and Royal's prospective economic advantage represents an intentional and unjustified interference.

**ANSWER:**    Restonic and RMC deny any wrongdoing or liability to the plaintiff.

109.    Restonic, RMC, Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens' purposeful interference prevented Royal from realizing a valid business relationship with Mattress Giant.

**ANSWER:**    Restonic and RMC deny any wrongdoing or liability to the plaintiff.

110.    As a result of Restonic's, RMC's, Sleep Alliance's, Jackson's, Continental's, Stevens', Mr. Robins' and Mr. Stevens' interference, Royal has suffered substantial harm and damages.

**ANSWER:**    Denied.

## COUNT VIII

### TORTIOUS INTERFERENCE WITH SUB-LICENSE AGREEMENT
### (Against Mr. Comer)

COUNT VIII IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT VIII OF PLAINTIFF'S COMPLAINT.

## COUNT IX

### TORTIOUS INTERFERENCE WITH SUB-LICENSE AGREEMENT
### (Against Sleep Alliance, Jackson, Continental, Stevens, Mr. Robins and Mr. Stevens)

COUNT IX IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT IX OF PLAINTIFF'S COMPLAINT.

## COUNT X

### DEFAMATION
### (Against Mr. Comer and Jackson)

COUNT X IS NOT ASSERTED AGAINST DEFENDANTS RESTONIC AND/OR RMC, AND, ACCORDINGLY, THEY MAKE NO ANSWER TO COUNT X OF PLAINTIFF'S COMPLAINT.

## COUNT XI

### BREACH OF CONTRACT
### (Against RMC)

126.    The allegations set forth in Paragraphs 1 through 68 above are re-alleged as if fully set forth herein.

**ANSWER:**    For its answer to paragraph 126 of the Complaint, Restonic and RMC incorporate by reference as though fully set forth their answers to paragraphs 1 to 68 of the Complaint.

127.    Royal and RMC entered into a valid, binding and enforceable contract, to wit: the Sub-License Agreement.

**ANSWER:**    Restonic and RMC admit the existence of the Sub-License Agreement.

128.    RMC breached the Sub-License Agreement by refusing and failing to provide to Royal the RMC Services, as defined therein.

**ANSWER:**    Denied.

129.    Royal performed all of its required obligations under the Sub-License Agreement.

**ANSWER:**    Denied.

130.    Royal has suffered damages by reasons of the breach, for which Royal is entitled to recover actual, compensatory and consequential damages, including lost future profits.

**ANSWER:**    Denied.

### AFFIRMATIVE DEFENSES

1.    Royal's Complaint fails to state a claim upon which relief can be granted.

2.    Royal materially breached the afore-alleged Amended and Restated Sublicense Agreement, which discharged any obligation of, and/or excused RMC and/or Restonic from further performance under, the Agreement.

3.    Any damages claimed by Royal for breach of the afore-alleged Amended and Restated Sublicense Agreement are the result of Royal's conduct and Royal is wholly responsible for any damages that it allegedly suffered.

4.     Any damages claimed by Royal for breach of the afore-alleged Amended and Restated Sublicense Agreement are the result of Royal's conduct and Royal has assumed the risk of any such damages.

5.     Any damages claimed by Royal for breach of the afore-alleged Amended and Restated Sublicense Agreement are the result of Royal's conduct and Royal is contributorily negligent and caused its own damages.

6.     Royal has waived any claim for breach of the afore-alleged Amended and Restated Sublicense Agreement.

WHEREFORE, defendants, Restonic Corporation and Restonic Mattress Corporation, pray that this Court enter judgment in their favor and against plaintiff, Royal Sleep Products, Inc., as requested in the Complaint, award Restonic and RMC their costs incurred herein, and award such other and further relief as this Court deems just and proper.

Dated: March 20, 2008

By: s/ Frederic A. Mendelsohn
    Frederic A. Mendelsohn, 6193281
    Kimberly A. Cloud, 6278478
     Attorneys for Defendants, Restonic
     Corporation and Restonic Mattress
     Corporation
    Burke, Warren, MacKay & Serritella, P.C.
    330 N. Wabash Avenue, 22nd Floor
    Chicago, Illinois 60611
    Phone: 312-840-7000
    Fax: 312-840-7900
    fmendelsohn@burkelaw.com
    kcloud@burkelaw.com