UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROYAL SLEEP PRODUCTS, INC.,
a Florida Corporation,

    Plaintiff,

vs.

RESTONIC CORPORATION,
an Illinois Corporation, et al.,

    Defendants.
_____/

Case No. 1:07-CV- 06588

Judge: Pallmeyer

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' TOM COMER, JR., ROYAL BEDDING COMPANY OF BUFFALO, JACKSON MATTRESS CO. LLC, AND SLEEP ALLIANCE, LLC'S MOTION TO DISMISS**

Plaintiff, Royal Sleep Products, Inc., ("Plaintiff"), by and through its undersigned counsel, hereby files its Memorandum of Law in Opposition to Defendants' Tom Comer, Jr. ("Mr. Comer"), Royal Bedding Company of Buffalo ("Royal Bedding"), Jackson Mattress Co., LLC ("Jackson Mattress"), and Sleep Alliance, LLC's ("Sleep Alliance") (collectively, the "Defendants") Motion to Dismiss, and in support thereof, states as follows:

I.    **PRELIMINARY STATEMENT**

This case stems from a dispute between sub-licensees of Defendants Restonic Corporation ("Restonic") and Restonic Mattress Corporation ("RMC"). Specifically, Defendants, aside from making and performing a contract in the State of Illinois, conducting extensive business transactions in Illinois and acquiring stock of Restonic and RMC in Illinois, have also committed tortious acts in Illinois and breached their fiduciary duties in Illinois. As detailed herein, Defendants have purposely availed themselves of the privilege of conducting

activities in Illinois so that they should reasonably have anticipated being haled into court in Illinois. As such, Defendants' Motion to Dismiss should be denied in its entirety.

II.     **STATEMENT OF FACTS APPLICABLE TO JURISDICTION**

    A.     **The Parties**

    1.     Mr. Comer is, and was at all times relevant to Plaintiff's claims, Chief Executive Officer ("CEO") of Sleep Alliance, Royal Bedding and Jackson Mattress. *See* Affidavit of Tom Comer, Jr. in support of Defendants' Motion to Dismiss ("Comer Affidavit") #1 at ¶2 and 3.

    2.     Royal Bedding is a Restonic licensee located in Buffalo, New York that specializes in the manufacturing of mattresses and box springs. (July 2, 2008 Deposition of Tom Comer, Jr. ("Depo. Comer"), 11:14-17), a true and correct copy of the relevant portions of which is attached hereto as Exhibit "A." Royal Bedding owns 15 shares of RMC stock. *See* Stockholders of Restonic Corporation and Restonic Mattress Corporation Chart, a true and correct copy of which is attached hereto as Exhibit "B"; *see also* (July 14, 2008 Deposition of Stephen Russo ("Depo. Russo"), 20:7-10), a true and correct copy of the relevant portions of which are attached hereto as Exhibit "C."

    3.     Jackson Mattress is a Restonic licensee located in Fayetteville, North Carolina that specializes in the manufacturing of mattresses and box springs, furniture and furnishings. (Depo. Comer, 21:8-9; 23:18-20). Jackson owns 60 shares of RMC stock. *See* Exhibit "B"; *see also* (Depo. Russo, 20:7-10).

    4.     Sometime in the summer of 2006, Mr. Comer, owner of franchisee Jackson and Royal, and holder of 75 shares of RMC stock, Drew Robins ("Mr. Robins"), owner of franchisee Continental Silverline Products ("Continental") and holder of 60 shares of RMC stock, and Richard Stevens ("Mr. Stevens"), owner of franchisee Stevens Mattress Manufacturing Inc.

("Stevens") and holder of 45 shares of RMC stock, joined together to form Sleep Alliance ("Sleep Alliance"), the majority shareholder of Restonic and RMC. *See* Exhibit "**B**"; *see also* (Depo. Russo, 20:14-20).

5.  As of late fall, 2006, Mr. Comer became a member of the RMC Board of Directors. (Depo. Russo, 22:6-7). Then in late 2007, Comer became of member of the Restonic Board of Directors. (Depo. Russo, 21:20-24; 22:1-3).

6.  Mr. Comer regularly participates in meetings for the respective Board of Directors by telephone with representatives of both RMC and Restonic in Illinois. (Depo. Russo, 25:1-2).

**B.     Defendants' Contacts with Illinois**

   **a.     Tom Comer, Jr., Individually and on Behalf of Sleep Alliance**

7.  During the relevant time period for the causes of action alleged in Plaintiff's Complaint (the "Complaint"), Mr. Comer regularly attended meetings in Illinois for RMC, Restonic and Sleep Alliance. In 2006, Mr. Comer traveled to Illinois one (1) time and in 2007, Mr. Comer traveled to Illinois five (5) times. ("Depo. Comer"), 15:22-24).

8.  More specifically, Mr. Comer attended marketing meetings in Chicago, Illinois for RMC in order to participate in public relations consultant presentations as well as to interview marketing firms to "help Restonic rebrand itself." (Depo. Comer, 16:17-23; 17:2-7).

9.  Further, Mr. Comer traveled to Illinois twice in 2007, to participate in Sleep Alliance business review meetings. (Depo. Comer, 62: 11-14).

10. On October 23-24, 2007, Mr. Comer, as well as members and employees of all of the Defendants, attended a meeting in Chicago, Illinois for a business planning review session of Sleep Alliance. The meeting was "facilitated" by Steve Russo, President of RMC and Restonic

and, amongst other things, was organized to meet with investment bankers that were retained to help Sleep Alliance locate an equity partner. (Depo. Comer, 59:14-20); (Depo. Russo, 15:6-14).

11. The Sleep Alliance met in Chicago, because, according to Mr. Comer, it was "a convenient location." (Depo. Comer, 66:10-11); *see also* (Depo. Russo, 19:5-11; 65:24; 66:1-4).

12. In addition to traveling to Illinois to conduct business on a regular basis, Mr. Comer also negotiated (on behalf of Royal Bedding and Jackson Mattress) over the telephone, all of the agreements with Restonic and RMC with representatives of Restonic and RMC, who were located in Illinois. (Depo. Comer, 38:19-25; 41:8-12; 43:12-14; 45:11-17; 46:16-24).

13. Further, Mr. Comer executed and mailed to Restonic and or RMC in Illinois, on behalf of Royal Bedding and Jackson Mattress, all of the agreements with Restonic and RMC. (Depo. Comer, 38:13-18; 41:13-5: 43:3-5).

    b. **Royal Bedding and Jackson Mattress**

14. In addition to Mr. Comer attending meetings in Illinois on behalf of Royal Bedding, Lori Tokarz, Sales Manager for Royal Bedding, also traveled to Illinois to conduct business on behalf of Royal Bedding. Specifically, Ms. Tokarz traveled to Illinois once in 2006 and five (5) times in 2007. (Depo. Comer, 13:17-25; 14:1-25); (Depo. Russo, 17:16-20).

15. In addition to Mr. Comer attending meetings in Illinois on behalf of Jackson Mattress, Randy Bancroft, President of Jackson Mattress, also traveled to Illinois to conduct business on behalf of Jackson Mattress. Specifically, Mr. Bancroft traveled to Illinois four (4) times in 2007. (Depo. Comer, 32:21-25).

16. Specifically, Mr. Bancroft traveled to Illinois for fire-retardency testing of Jackson Mattress's products at Underwriters Laboratories on one occasion and Mr. Bancroft

4

traveled to Illinois on three (3) other occasions for certification of Jackson Matress's product to meet the new federal fire regulations. (Depo. Comer, 33:1-20).

17. In addition, Bryan Easterly, Chief Financial Officer of Jackson Mattress, traveled to Illinois twice in 2007. The first trip was to attend the manufacturing fire-retardancy meeting with Mr. Bancroft, and the second was to attend the Sleep Alliance Business Review Session with Mr. Comer. (Depo. Comer, 33:21-25; 34:1-8).

18. According to Steve Russo, Defendants' employees traveled to meetings in Illinois on behalf of Royal Bedding in order to "help Restonic." (Depo. Russo, 56:15).

19. Restonic actually paid for the cost and expenses of the participation in these meetings as well as reimbursing the travel expenses to Defendants. (Depo. Russo; 55:21-24).

20. Moreover, on June 1, 2007, Mr. Comer, on behalf of Royal Bedding and Jackson Matress, executed via mail, the Amended and Restated Sub-License Agreements with RMC (the "Royal Bedding Sub-License Agreement") with representatives of RMC in Illinois. The negotiations that took place prior to the execution of the Royal Bedding and Jackson Matress Sub-License Agreements were conducted over the telephone with representatives of RMC in Illinois. (Depo. Comer, 38:19-25; 41:8-12; 43:12-14; 45:11-17; 46:16-24).

21. Paragraph 17 of the Royal Bedding and Jackson Mattress Sub-License Agreements provide that the Sub-License Agreements will be governed by the internal laws of the State of Illinois. *See* Royal Bedding and Jackson Matress Sub-License Agreements, true and correct copies of which are attached hereto as Exhibits "D" and "E" respectively.

22. Mr. Comer, on behalf of Royal Bedding and Jackson Mattress, has executed Stockholder Agreements in addition to the Sub-License Agreements. As with the Sub-License

Agreements, all negotiations prior to the execution of the Stockholder Agreements were conducted by telephone with representatives of RMC in Illinois. (Depo. Comer, 46:16-24).

23.     Further, Royal Bedding and Jackson Mattress, on a monthly or quarterly basis, purchases point-of-purchase materials and marketing materials from Restonic in Illinois. (Depo. Comer, 56:23-25; 54:1-8); *see also* (Depo. Russo; 61:2-15).

24.     Moreover, Royal Bedding and Jackson Mattress have continuously sent by mail to Restonic in Illinois, reports of Royal Bedding and Jackson Mattress's Total Sales of Bedding Products reports and the corresponding monthly royalty payments since Mr. Comer first became CEO of Royal Bedding and Jackson Mattress. (Depo. Comer, 55:1-23).

25.     Royal Bedding and Jackson Mattress routinely use Illinois-based companies to provide the products and services necessary to run Royal Bedding and Jackson Mattress. *See e.g.* (Depo. Comer, 74:15-25; 75:1-8).

26.     Notably, on at least one occasion, Jackson Mattress may have shipped a mattress into Illinois using Bekins Worldwide and Home Direct moving companies. (Depo. Comer, 77:24-1-7; 79:3-10; 92:17-25; 93:1-7).

### III.   ARGUMENT

#### A.   Standard of Review for Motion to Dismiss

In reviewing a motion to dismiss for lack of personal jurisdiction, "[a] plaintiff need only make a *prima facie* showing that jurisdiction over a defendant is proper." *GMAC Real Estate, LLC v. Canyonside Realty, Inc.*, 2005 U.S. Dist. LEXIS 12589, *5-6 (N.D. Ill. June 15, 2005); *Budget Rent A Car Corp. v. Crescent Ace Hardware*, 2003 U.S. Dist. LEXIS 12084, *5 (N.D. Ill. July 15, 2003). On the question of jurisdiction, the "court must resolve all factual disputes in the plaintiff's favor and accept as true all uncontroverted allegations made by both plaintiffs and

defendants." *Id.* In short, a complaint must not be dismissed for lack of personal jurisdiction unless it is clear, beyond a doubt, that plaintiffs cannot prove any facts which would entitle them to relief. *Hoffman, v. Partners in Collections, Inc.*, 1993 U.S. Dist. LEXIS 12702, *1 (September 13, 1993).

Because the Plaintiff has properly alleged facts in support of each of its claims and since Illinois is the proper forum for this action, Defendants' Motion must be denied in its entirety.

### B.      Defendants' Motion Must be Denied Because the Illinois Long-Arm Statute and Due Process Authorize the Court to Exercise Personal Jurisdiction

When considering a motion to dismiss for lack of personal jurisdiction, a federal court presiding over a claim brought pursuant to the court's diversity jurisdiction engages in a three-step inquiry. *Bank of Montreal v. McKenzie Methane Corp.*, 1993 U.S. Dist. LEXIS 14654*5 (N.D. Ill. Oct. 5, 1993). First, a court must interpret whether the defendant's conduct falls within the meaning of the long-arm statute; if it does, then the court must determine whether asserting jurisdiction over defendant would be consistent with the due process clause. Finally, the Court must determine whether the exercise of personal jurisdiction over the nonresident defendant violates either the Illinois Constitution or the United States Constitution. *See Dombrowski v. Water Mania Water Park*, 630 N.e. 2d 973, 976-7 (Ill. App. 1st 1994); see also *The Great Frame Up Systems, Inc. v. Rosch*, 1991 U.S. Dist. LEXIS 1279, *11 (Feb. 4, 1991). If the exercise of personal jurisdiction would not violate the Illinois or United States Constitutions, then personal jurisdiction may be exercised regardless of the enumerated facts found in Section 2-209 (a) of the Illinois Long-Arm Statute (735 Ill. Comp. Stat. 5/2-209 (2002)). *Birnberg v. Milk Street Residential Associates L.P.*, 2003 U.S. Dist. LEXIS 806, *9 (N.D. Ill. Jan. 17, 2003).

As explained below, Defendants, in addition to meeting more than one element of the Illinois Long-Arm Statute by: (1) making and performing a contract in Illinois; (2) regularly

sending employees of Defendants to conduct business in Illinois; (3) purchasing point-of-purchase and marketing materials from Restonic on a quarterly- basis in Illinois; (4) sending sales reports and royalty payments on a monthly basis to Illinois; (5) routinely using Illinois-based companies to provide products and services to Defendants; (6) acquiring stock of Restonic and RMC in the state of Illinois; (7) committing tortious acts in the state of Illinois, including defamation; and (8) breaching their fiduciary duties by, amongst other things, usurping corporate opportunity and engaging in self-dealing, have also availed themselves of the jurisdiction of the Illinois Courts by purposefully establishing minimum contacts with Illinois. As such, Defendants should have foreseen the possibility that they could be haled into an Illinois Court.

1. **The Illinois Long-Arm Statute**

The Illinois Long-Arm Statute provides, in relevant part:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this State; (2) The commission of a tortious act within this State; (7) The making or performance of any contract or promise substantially connected with this State; (10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired; (11) The breach of any fiduciary duty within this State; (12) The performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State;
>
> (c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

735 Ill. Comp. Stat. 5/2-209 (2002).

    a.    **Defendants Activities In Illinois Fall Within the Long-Arm Statute**

        i.    **Defendants Transact Business in Illinois**

Defendants actively conduct business in Illinois. "There are three common factors courts examine to determine whether or not a defendant transacted business in Illinois for the purposes of personal jurisdiction. These factors are: (1) who initiated the transaction; (2) where the contract was entered into; and (3) where the performance of the contract was to take place." *BAB Systems, Inc. v. UNK, Inc.*, 2002 U.S. Dist. LEXIS 24476, *5 (Dec. 18, 2002); *Viktron Ltd. Partnership v. Program Data, Inc.*, 759 N.E. 2d 186 (2d Dist. 2001). In addition, a "fourth factor, where the contract was negotiated . . . is clearly relevant." *Id*

Here, Restonic and RMC are Illinois corporations sought out by Defendants for the purpose of becoming sub-licensees thereof. Indeed, as indicated by Mr. Comer during his deposition, Comer acquired Royal Bedding and Jackson Mattress for the purpose of, amongst other things manufacturing bedding products for Restonic and RMC. (Depo. Comer, 26:19-25; 27:1-15) Moreover, the Sub-License Agreements were entered into in Illinois. In fact, paragraph 17 of the Sub-License Agreements provide that the Sub-License Agreements will be governed by the internal laws of the State of Illinois, automatically subjecting Defendants to jurisdiction of the Illinois Courts. *See Bank of Montreal v. McKenzie Methane Corp.*, 1993 U.S. Dist. LEXIS at * 8 (holding that were a loan agreement contained a choice of law provision providing that Illinois law would govern enforcement of the agreement, jurisdiction over defendant in Illinois was proper).

Further, the Sub-License Agreements clearly contemplate that Defendants, for their part, will perform a significant part of the Sub-License Agreement in Illinois; to wit, their obligation to report their Total Dollar Sales of Bedding Products to RMC in Illinois on a monthly basis and their corresponding obligation to pay license fees to RMC in Illinois. Indeed, Mr. Comer testified that the Defendants did in fact pay monthly license fees to RMC in the form of a check

sent by mail to Illinois. (Depo. Comer, 55:1-23); *see also Ben Kozloff, Inc. v. H & G Distributors, Inc.*, 717 F. Supp. 1336, 1338 (noting that defendants were required to make payment to an Illinois corporation in Illinois and finding that defendants therefore "transacted business" in Illinois).

Finally, as explained by Mr. Comer, Defendants' Sub-License Agreements, as well as all other pertinent agreements were negotiated by telephone in Illinois, clearly indicating that the ordinary course of Defendants' relationship with Restonic and RMC in Illinois involves extensive use of telephone and mail contact. "Where a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." *Heritage House Restaurants, Inc., v. Continental Funding Group, Inc.*, 906 F. 2d 276, 281 (7th Cir. 1990). In fact, "[t]he physical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute." *Id.*

It is important to note that Illinois Courts have routinely held that "one business transaction related to the cause of action is clearly a sufficient basis for jurisdiction." *J. Walker & Sons, v. DeMert & Dougherty, Inc.* 821 F. 2d 399, 402 (7th Cir. 1987); *Heritage House Restaurants, Inc.*, 906 F. 2d at 281 (7th Cir. 1990) ("A single transaction which gives rise to the cause of action and amounts to defendant's purposeful availment 'of the privilege of conducting activities within the forum State' will support jurisdiction over a defendant"). Here, the fact that Defendants initiated the Sub-License Agreements with Restonic and RMC in Illinois, entered into the Sub-License Agreements in Illinois, performed the Sub-License Agreements in Illinois and negotiated the Sub-License Agreements in Illinois, would be enough to exercise jurisdiction over the Defendants. However, Defendants' actions described below further fulfill the Illinois Long-Arm Statute and subject them to the jurisdiction of this Court.

    **ii.    Defendants Regularly Send Their Principals and Employees to Illinois to Conduct Business Meetings**

As established by Mr. Comer during his deposition, Defendants regularly send employees to Illinois to participate in business meetings for Restonic, RMC and Sleep Alliance, subjecting Defendants to jurisdiction in Illinois. *See Scovill Mfg. Co. v. Dateline Electrical Co.*, 461 F.2d 897 (7th Cir. 1972) (holding that where defendant sends an agent to Illinois to transact business, defendant is amenable to suit in Illinois).

    **iii.    Defendants' Acquired Shares of Stock of RMC in Illinois**

In addition, as highlighted herein, as sub-licensees of Restonic and RMC, both of which are Illinois corporations, Defendant Jackson Mattress, Defendant Royal Bedding and Defendant Sleep Alliance, all own shares of RMC stock.

    **iv.    Defendants Breached Their Fiduciary Duties in Illinois**

As alleged in Plaintiff's Complaint, Defendants, through Sleep Alliance, interfered with RMC's negotiations in Illinois to engage in a business relationship with Mattress Giant. By usurping the benefit of the Mattress Giant deal in favor of Sleep Alliance, Defendants, as both majority shareholders and board members of RMC breached their fiduciary duties to the shareholders of RMC.

    **v.    Defendant Tom Comer, Jr. Wrongfully and Improperly Committed Tortious Activity in Illinois**

Moreover, it is abundantly clear, that Mr. Comer employed both wrongful means and improper purposes in intentionally and unjustifiably interfering with Plaintiff's relationship with Lady Americana. At all relevant times, Mr. Comer, a member of the Board of Directors of RMC, was aware that Plaintiff and Lady Americana were engaged in a business relationship. Through his direct, unauthorized and defamatory statements about Plaintiff, Mr. Comer

wrongfully and improperly interfered with Plaintiff's relationship with Lady Americana and prevented Plaintiff from realizing a valid business relationship with Lady Americana. *See Mergenthaler Linotype Co. v. Leonard Storch Enter. Inc.*, 383 N.E.2d 1379, 1384 (Ill. App. Ct. 1978) ("[a] single tortuous act occurring in Illinois will establish jurisdiction in Illinois, even though the defendant has no other contact in Illinois and has never been to Illinois.")

>vi.    **Defendant Tom Comer, Jr. Is a Member of the Boards of Directors**

Finally, as established in Plaintiff's Complaint and as acknowledged by Mr. Comer during his deposition, in late fall, 2006, Sleep Alliance elected Mr. Comer as a member of the RMC board of directors. Then in late 2007, Mr. Comer became of member of the Restonic Board of Directors, subjecting him to the jurisdiction of the Illinois Court. Because Defendants transacted business in Illinois and Mr. Comer, as director of Restonic and RMC "knew of should have known" of such activities, he subjected himself to the jurisdiction of Illinois courts under the long-arm statute. *Morse v. E & B Coal Co.*, 634 N.E.2d 436, 443, (Ill. App. Ct. 1994).

>2.    **This Court Should Deny Defendants' Motion to Dismiss Because Both State and Federal Due Process Have Been Met**
>
>>a.    **Defendants Have Sufficient Minimum Contacts in Illinois to Demonstrate that They Have Purposefully Availed Themselves of the Privileges of Conducting Activities within the Forum State**

"Once a court has determined that jurisdiction exists under the long-arm statute, it must also ensure that constitutional due process requirements would not be violated by exercising jurisdiction over the nonresident defendant." *Heritage House Restaurants, Inc.*, 906 F. 2d at 279. Personal jurisdiction consistent with federal due process requires that the defendant have "minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *GMAC Real Estate*, 2005 U.S. Dist. LEXIS 12589, *8-9 (*citing Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002));

*Hollinger, supra*, 2005 U.S. Dist. LEXIS 21305, *55 [citation excluded]. "Minimum contacts sufficient to support the exercise of personal jurisdiction is established when the defendants' contacts with the forum demonstrate that the 'defendants purposefully avail themselves of the privileges of conducting activities within the forum state.'" *GMAC Real Estate*, 2005 U.S. Dist. LEXIS 12589 *9 (*quoting Wasendorf v. DBH Brokerhaus AG*, 2004 U.S. Dist. LEXIS 25107, *2 (Dec. 13, 2004). "The main factor in the minimum contacts due process analysis is not physical presence in the forum state but rather 'foreseeability.'" *Heritage House Restaurants, Inc.*, 906 F. 2d at 283. "The Supreme Court has stated that 'the forseeability that is critical to the due process analysis . . .is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (*quoting Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As discussed in detail herein, Defendants conduct business transactions in Illinois, including the execution of contracts in Illinois, the negotiation of agreements in Illinois and the performance of the Sub-License Agreements in Illinois. In addition, the Defendants regularly send their principals and employees to conduct business meetings in Illinois, purchase marketing materials from RMC in Illinois, send sales reports and royalty payments on a monthly basis to Illinois, routinely use Illinois-based companies to provide products and services to Defendants, own stock within the State of Illinois, breached their fiduciary duties in Illinois, and, in the case of Defendant, Mr. Comer, sit on the Board of Directors of RMC and have committed tortious acts within Illinois. As previously noted, Illinois Courts have held that one of these transactions alone would subject Defendants to jurisdiction in Illinois.[1] When considered together as a whole however, it is unquestionable that Defendants have the sufficient minimum contacts in Illinois to

---

[1] *See J. Walker & Sons, v. DeMert & Dougherty, Inc.* 821 F. 2d 399, 402 (7th Cir. 1987).

demonstrate that they have purposefully availed themselves of the privileges of conducting activities within the forum state, making it foreseeable that they could be haled into court there.

### b. The Maintenance of the Suit Does Not Offend Traditional Notions of Fair Play and Substantial Justice.

After a Court determines that the defendant has established minimum contacts with the forum state, it may also consider the relative convenience of litigating in that forum and the interests of the states involved. *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 476-77 (1985). Specifically, the court must ensure that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Thus, the Court should examine the following:

> (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; and (5) the extent to which the claim is related to the defendant's local activities; and (6) the avoidance of a multiplicity of suits on conflicting adjudications.

*Birnberg.*, 2003 U.S. Dist. LEXIS 806, *11-12 (citations excluded). "Because no one factor is dispositive, this Court must balance all of the factors. ***However, the most important factors to consider are the interests of the forum and the relative convenience of the defendant in litigating in that forum***." *Id.* (emphasis added); *see also Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 700 (N.D. Ill. 2002).

In the instant case, it is clear that Illinois is a convenient forum for the Defendants to litigate in. During his deposition on July 2, 2008, undersigned counsel specifically asked Mr. Comer why the Defendants held the Sleep Alliance meetings in Chicago, Illinois. Mr. Comer's specific response was that it was "a convenient location."(Depo. Comer, 66:10-1).[2] If Chicago

---

[2] The President of Restonic and RMC, Stephen Russo, who facilitated the Sleep Alliance meetings testified during his July 14, 2008 deposition that Chicago, Illinois was a convenient location for Mr. Robins, Mr. Ford, Mr. Comer and Mr. Stevens to meet, and therefore was a convenient location to conduct Sleep Alliance meetings. (Depo. Russo, 65:10-24; 66:1-11)

was a convenient forum for the members of the Sleep Alliance, all of whom are defendants here, to conduct business in, then there is no means by which Defendants could now successfully contend that Illinois is not a convenient forum for the adjudication of the instant litigation.

Further, Illinois has a significant interest in providing the Plaintiff an Illinois forum for adjudication of this dispute, as the Sub-License Agreement that Plaintiff executed with Defendants Restonic and RMC, clearly provided that Illinois law would apply and an Illinois Court is best situated to interpret said law. *See e.g., Heritage House*, 906 F.2d 276 (7th Cir. 1990). Moreover, as highlighted herein, because the instant litigation stems directly from the Defendants' "continuous and systematic" contacts with Illinois and because the interests of judicial economy support the avoidance of a multiplicity of suits and conflicting adjudications, the maintenance of the instant litigation in this Court does not offend either "traditional notions of fair play and substantial justice" or the United States or Illinois Constitutions. *Id.*

Based on the foregoing, Defendants' Motion to Dismiss for lack of personal jurisdiction must be denied because, when viewed in light most favorable to the Plaintiff, the evidence certainly establishes that Defendants' conduct has subjected them to the personal jurisdiction of this Court in compliance with traditional notions of fair play and substantial justice.

## CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order: (i) denying Defendants Tom Comer, Jr., Royal Bedding, Jackson Mattress and Sleep Alliance's Motion to Dismiss; and (ii) granting such other and further relief as this Honorable Court deems just and proper.

Dated: August 25, 2008.

Respectfully submitted,

ZARCO EINHORN SALKOWSKI & BRITO, P.A.
*Attorneys for Plaintiffs*
Bank of America Tower
100 Southeast 2nd Street, Suite 2700
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By: /s/ Robert F. Salkowski
    ROBERT ZARCO
    Florida Bar No. 502138
    ROBERT F. SALKOWSKI
    Florida Bar No. 903124
    MELISSA L. BERNHEIM
    Florida Bar No. 0623069
    *(Admitted Pro Hac Vice)*

-AND-

Brian Ira Tanenbaum, Esq. (IL Bar No. 6181447)
John A. Benson, Jr., Esq. (IL Bar No. 6289042)
Attorneys for Plaintiff
The Law Offices of Brian Ira Tanenbaum, Ltd.
2970 Maria Avenue, Suite 207
Northbrook, IL 60062
Telephone: 847-562-1636
Facsimile: 847-562-1637

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 25, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ John A. Benson, Jr.

## SERVICE LIST

Royal Sleep Products, Inc., v. Restonic, et al.
Case No.: 1:07-cv- 06588
United States District Court, Northern District of Illinois

| | |
|---|---|
| Frederic A. Mendelson, Esq.<br>Burke, Warren, MacKay & Serritella, PC<br>330 North Wabash Avenue, 22nd Floor<br>Chicago, IL 60611<br>**Counsel for Restonic Corporation and Restonic Mattress Corporation** | Glenn E. Amundsen, Esq.<br>Thomas J. Lyman, III, Esq.<br>Smith & Amundsen, L.L.C.<br>150 North Michigan Avenue, Suite 3300<br>Chicago, IL 60601<br>**Counsel for Continental Silverline Products, L.P., Jackson Mattress Co. LLC, Royal Bedding Company of Buffalo Sleep Alliance, LLC, Drew Robins and Tom Comer, Jr.** |
| Thomas R. Hill, Esq.<br>Michelle Fisher, Esq.<br>Dykema Gossett PLLC<br>10 South Wacker Drive, Suite 2300<br>Chicago, IL 60606<br>**Counsel for Stevens Mattress Manufacturing Co. and Richard Stevens** | Andrew Friedberg, Esq.<br>William P. Maines, Esq.<br>Fullbright & Jaworski, LLP<br>1301 McKinney<br>Suite 5100<br>Houston, TX 77010<br>**Counsel for Continental Silverline Products L.P. and Drew Robins** |