**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ROYAL SLEEP PRODUCTS, INC.

Case No.: 1:07 CV 6588

Plaintiff.

Judge: Pallmeyer

v.

RESTONIC CORPORATION, *et al.*

Defendants.

______________________________/

**PLAINTIFF'S RESPONSE TO DEFENDANTS CONTINENTAL SILVERLINE PRODUCTS L.P. AND DREW ROBINS' MOTION TO DISMISS**

Plaintiff, Royal Sleep Products, Inc., by and through undersigned counsel, hereby files its Response in Opposition to Defendants Continental Silverline Products L.P. and Drew Robins' Motion to Dismiss. In support thereof, Plaintiff states as follows:

## I. PRELIMINARY STATEMENT

This case stems from a dispute between sub-licensees of Defendants Restonic Corporation ("Restonic") and Restonic Mattress Corporation ("RMC"). Specifically, Defendants, Drew Robins ("Mr. Robins") and Continental Silverline Products, L.P. ("Continental"), aside from making and performing a contract in the State of Illinois, conducting extensive business transactions in the State of Illinois and acquiring stock of Restonic and RMC in the State of Illinois, have also breached their fiduciary duties in the State of Illinois. As detailed herein, and contrary to what Defendants would have this Court believe, Defendants have purposely availed themselves of the privilege of conducting activities in Illinois so that they should reasonably have anticipated being haled into court in Illinois. As such, Defendants' Motion to Dismiss should be denied in its entirety.

## II. STATEMENT OF FACTS APPLICABLE TO JURISDICTION

### A. The Parties

1. Defendant Mr. Robins, is, and was at all times relevant to Plaintiff's claims, owner and principal partner of Continental. *See* Affidavit of Drew Robins, ¶ 2.

2. Continental is a Restonic sublicensee located in Houston, Texas that specializes in the manufacturing of mattresses and box springs. Continental owns 60 shares of Restonic Mattress Corporation ("RMC") stock. *See* Stockholders of Restonic Corporation and Restonic Mattress Corporation Chart, a true and correct copy of which is attached hereto as **Exhibit "A."**

### B. Contact with Illinois

#### a. Drew Robins

3. Mr. Robins regularly attends various meetings in Illinois for RMC and Restonic. Pursuant to Mr. Robins's testimony during his deposition on May 29, 2008, within the last year, Mr. Robins has attended at least one Restonic marketing meeting in Illinois for RMC and Restonic. (May 29, 2008 Deposition of Drew Robins ("Depo. Robins"), 26:16-23; 27:7-11, a true and correct copy of the relevant portions of which is attached hereto as **Exhibit "B"**). In addition to the last Restonic marketing meeting Mr. Robins attended in Illinois, over the past five (5) years, Mr. Robins has travelled to Illinois at least four to five times to attend Restonic meetings. (Depo. Robins, 27:18-25; 28:1).

4. More specifically, in 2007, Mr. Robins traveled to Illinois to attend Restonic and RMC meetings on at least two different occasions. (Depo. Robins, 40:13-25; 41:15-19, 23-25; 42:1).

5. Mr. Robins travels to Illinois to attend Restonic licensing meetings, which are held from time to time in Illinois. (Depo. Robins, 30:10-25). Indeed, at the time of Mr. Robins'

deposition, Restonic had scheduled a licensing meeting in Illinois for the following week, and which Mr. Robins planned to attend. (Depo Robins, 31:7-10).

6. Mr. Robins also regularly travels to Illinois to attend RMC shareholder meetings. (Depo. Robins, 32:14-17) and has traveled to Illinois to attend meetings for Defendant Sleep Alliance, LLC ("Sleep Alliance"), a company formed by Mr. Robins, and Defendants Tom Comer and Richard Stevens. (July 2, 2008 Deposition of Brent Ford ("Depo. Ford"), 29:23-25; 30:6-25; 31:1-11, a true and correct copy of the relevant portions of which is attached hereto as **Exhibit "B."** July 15, 2008 Deposition of Stephen Russo ("Depo. Russo"), 15:10-24; 16:1-2; 17:10-20, a true and correct copy of the relevant portions of which is attached hereto as **Exhibit "C"**). Further, Chicago, Illinois was the chosen location for the Sleep Alliance meeting to take place because it was a convenient location for Mr. Robins, Mr. Ford, Mr. Comer and Mr. Stevens to meet. (Depo. Russo, 65:10-24; 66:1-11).

**b. Continental**

7. Continental regularly sends Brent Ford ("Mr. Ford") and Rosa Ortiz ("Ms. Ortiz"), employees of Continental, to Illinois to attend product marketing, manufacturing, and other Restonic meetings on its behalf. (Depo. Robins, 32:21-25; 33:1-5; 34:5-7; 35:10-19; 36:10-12).

8. In 2007, Mr. Ford traveled to Illinois on Continental's behalf on at least five to seven separate occasions to attend various Restonic meetings and to conduct other business on behalf of Continental, such as to meet with vendors from other parts of the country in Illinois. (Depo. Robins, 37:19-25; 38:1-13; 40:2-7; 42:16-25; 43:1-8, 23-25; 44:1-14; 45:4-23; Depo. Ford, 15:2-10; 16:1-5; 22:17-25; 23:1-5). As of the date of Mr. Ford's deposition in this matter on July 2, 2008, Mr. Ford has traveled to Illinois to conduct business on behalf of Continental at

least once in 2008. (Depo. Ford, 14:12-25; 15:1).

9. In 2006, Ms. Ortiz traveled to Illinois on Continental's behalf at least one time to attend a Restonic meeting. (Depo. Robins, 38:19-24). In 2007, Ms. Ortiz traveled to Illinois on Continental's behalf on at least one occasion to attend a Restonic meeting. (Depo. Robins, 39:4-13).

10. In addition, on or about June 1, 2007, Mr. Robins, on behalf of Continental, executed the Amended and Restated SubLicense Agreement with RMC. Section 17 of the Stevens Mattress Restated SubLicense Agreement provides that the laws of Illinois govern. A true and correct copy of the Amended and Restated SubLicense Agreement between RMC and Stevens Mattress is attached hereto as **Exhibit "D."**

11. In addition to sending its employees to Illinois to conduct business on a regular basis, Continental also regularly conducts business with Restonic in Illinois via telephone and e-mail. (Depo. Robins, 62:14-19; 63:2-19).

12. Continental has also executed a promissory note with RMC in Illinois, which was negotiated with RMC in Illinois via telephone. (Depo. Robins, 23:15-21; 24:4-8).

13. Further, Continental has continuously sent royalty payments in the form of checks to Restonic in Illinois under its license agreement with Restonic since it first became a Restonic sublicensee in 1981. (Depo. Robins, 47:18-25; 48:1-21).

14. In addition to the licensing fees that Continental pays to Restonic in Illinois, Continental also purchases point-of-purchase and marketing materials from Restonic in Illinois. (Depo. Robins, 48:22-25; 49:1-9; Depo. Ford, 36:4-8; Depo. Russo, 61:2-15).

15. Moreover, Continental submits reimbursement requests to Restonic, and Restonic reimburses Continental for Mr. Ford's expenses to travel to Illinois to attend Restonic meetings

on Continental's behalf. (Depo. Robins, 46:3-22, 25; 47:1-6; Depo. Ford, 35:12-25; Depo. Russo. 55:21-24). Continental also sends to Restonic in Illinois reimbursement requests for expenses incurred relating to product development committee meetings. (Depo. Robins, 60:17-25; 61:1-10).

16. Indeed, Continental has sold samples of product to Restonic in Illinois for use at the Restonic showroom in Las Vegas. (Depo. Russo. 63: 13-20).

17. Furthermore, Continental bills Restonic for the bedding samples. (Depo. Robins, 49:18-25; 50:1-3; 51:4-25; 52:1-4; 53:9-13). Continental also sends invoices to Restonic in Illinois for costs associated with product development that Continental performs for Restonic. (Depo. Robins, 61:17-21).

18. Finally, Continental has received commissions from Restonic in Illinois for sales that were made to a "contract customer." (Depo. Robins, 64:19-25; 65:1-2).

## III. ARGUMENT

### A. Standard of Review for Motion to Dismiss

In reviewing a motion to dismiss for lack of personal jurisdiction, "[a] plaintiff need only make a *prima facie* showing that jurisdiction over a defendant is proper." *GMAC Real Estate, LLC v. Canyonside Realty, Inc.*, 2005 U.S. Dist. LEXIS 12589, *5-6 (N.D. Ill. June 15, 2005); *Budget Rent A Car Corp. v. Crescent Ace Hardware*, 2003 U.S. Dist. LEXIS 12084, *5 (N.D. Ill. July 15, 2003) (same). On the question of jurisdiction, the "court must resolve all factual disputes in the plaintiff's favor and accept as true all uncontroverted allegations made by both plaintiffs and defendants." *Id.* In short, the complaint must not be dismissed unless it is clear, beyond a doubt, that plaintiff cannot prove any facts which would entitle it to relief. *See Hoffman, v. Partners in Collections, Inc.*, 1993 U.S. Dist. LEXIS 12702, *1 (September 13,

1993).

Because the Plaintiff has properly alleged facts in support of each of its claims and since Illinois is the proper forum for this action, Defendants' Motion must be denied in its entirety.

**B. This Court Should Deny Defendants' Motion to Dismiss Because The Illinois Long-Arm Statute and Notions of Due Process Authorize the Court to Exercise Personal Jurisdiction Over Defendants**

When considering a motion to dismiss for lack of personal jurisdiction, a federal court presiding over a claim brought pursuant to the court's diversity jurisdiction engages in a three-step inquiry. *Bank of Montreal v. McKenzie Methane Corp.*, 1993 U.S. Dist. LEXIS 14654*5 (N.D. Ill. Oct. 5, 1993). First, a court must interpret whether the defendant's conduct falls within the meaning of the long-arm statute; if it does, then the court must determine whether asserting jurisdiction over defendant would be consistent with the due process clause. Finally, the Court must determine whether the exercise of personal jurisdiction over the nonresident defendant violates either the Illinois Constitution or the United States Constitution. *See Dombrowski v. Water Mania Water Park*, 630 N.E. 2d 973, 976-7 (Ill. App. Ct. 1994); *see also The Great Frame Up Systems, Inc. v. Rosch*, 1991 U.S. Dist. LEXIS 1279, *11 (Feb. 4, 1991); *see also Cotter & Co. v. Assabet Valley Hardware Store, Inc.*, 1991 U.S. Dist. LEXIS 499, *11 (Jan. 16, 1991). If the exercise of personal jurisdiction would not violate the Illinois or United States Constitutions, then personal jurisdiction may be exercised regardless of the enumerated facts found in Section 2-209 (a) of the Illinois Long-Arm Statute (735 Ill. Comp. Stat. 5/2-209 (2002)). *Birnberg v. Milk Street Residential Associates L.P.*, 2003 U.S. Dist. LEXIS 806, *9 (N.D. Ill. Jan. 17, 2003).

As explained in more detail below, Defendants, in addition to meeting more than one element of the Illinois Long-Arm Statute by: (1) making and performing a contract in the state of

Illinois; (2) regularly sending employees of Defendants to conduct business in the State of Illinois; (3) purchasing point-of-purchase and marketing materials from Restonic on a quarterly-basis in Illinois; (4) sending sales reports and royalty payments on a monthly basis to Illinois; (5) routinely using Illinois-based companies to provide products and services to Defendants; (6) acquiring stock of Restonic and RMC in the state of Illinois; and (7) breaching their fiduciary duties by, amongst other things, usurping corporate opportunity and engaging in self-dealing, have also availed themselves of the jurisdiction of the Illinois Courts by purposefully establishing minimum contacts with the State of Illinois. As such, Defendants should have foreseen the possibility that they could be haled into an Illinois Court.

**1. The Illinois Long-Arm Statute**

The Illinois Long-Arm Statute provides, in relevant part:

> (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this State; (2) The commission of a tortious act within this State; (7) The making or performance of any contract or promise substantially connected with this State; (10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired; (11) The breach of any fiduciary duty within this State;
>
> (c) A court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.

735 Ill. Comp. Stat. 5/2-209 (2002).

**a. Defendants Activities In Illinois Fall Within the Meaning of the Long-Arm Statute**

**i. Defendants Transact Business in Illinois**

Defendants actively conduct business in Illinois. “There are three common factors courts

examine to determine whether or not a defendant transacted business in Illinois for the purposes of personal jurisdiction. These factors are: (1) who initiated the transaction; (2) where the contract was entered into; (3) where the performance of the contract was to take place." *BAB Systems, Inc. v. UNK, Inc.*, 2002 U.S. Dist. LEXIS 24476, *5 (Dec. 18, 2002); *Viktron Ltd. Partnership v. Program Data, Inc.*, 759 N.E. 2d 186 (2d Dist. 2001). In addition, a "fourth factor, where the contract was negotiated . . . is clearly relevant." *Id.*

In the instant case, Restonic and RMC are Illinois corporations sought out by Defendants for the purpose of becoming sub-licensees thereof. Indeed, as indicated by Mr. Robins during his deposition, Continental became a Restonic sub-licensee in 1981 and has been associated with Restonic ever since that time. (Depo. Robins, 18:6-8). Moreover, the Sub-License Agreements were entered into in the State of Illinois. In fact, paragraph 17 of the Sub-License Agreements provide that the Sub-License Agreements will be governed by the internal laws of the State of Illinois, automatically subjecting Defendants to jurisdiction of the Illinois Courts. *See Bank of Montreal v. McKenzie Methane Corp.*, 1993 U.S. Dist. LEXIS at * 8 (holding that were a loan agreement contained a choice of law provision providing that Illinois law would govern enforcement of the agreement, jurisdiction over defendant in Illinois was proper).

Further, the Sub-License Agreement clearly contemplates that Defendants, for their part, will perform a significant part of the License Agreement in Illinois; to wit, their obligation to report their Total Dollar Sales of Bedding Products to RMC in Illinois on a monthly basis and their corresponding obligation to pay license fees to RMC in Illinois. Indeed, as testified to by Mr. Robins during his deposition, Continental has paid monthly license fees to RMC in the form of a check sent by mail to RMC in Illinois since it first became a Restonic sub-licensee in 1981. (Depo. Robins, 47:18-25; 48:1-21); *see also Ben Kozloff, Inc. v. H & G Distributors, Inc.*, 717 F.

Supp. 1336, 1338 (noting that defendants were required to make payment to an Illinois corporation in Illinois in finding that defendants "transacted business" in Illinois).

Finally, Continental has unquestionably had an ongoing business relationship with RMC and Restonic in Illinois for the past twenty-seven (27) years that clearly involved extensive use of telephone and mail contact. (Depo. Robins, 62:14-24; 63:2-19) "Where a relationship is naturally based on telephone and mail contacts, these contacts can justify jurisdiction over a defendant." *Heritage House Restaurants, Inc., v. Continental Funding Group, Inc.*, 906 F. 2d 276, 281 (7th Cir. 1990). In fact, "[t]he physical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute." *Id.*

It is important to note that Illinois Courts have held that "one business transaction related to the cause of action is clearly a sufficient basis for jurisdiction." *J. Walker & Sons, v. DeMert & Dougherty, Inc.* 821 F. 2d 399, 402 (7th Cir. 1987); *Heritage House Restaurants, Inc.*, 906 F. 2d at 281 (7th Cir. 1990) (internal citations omitted) ("A single transaction which gives rise to the cause of action and amounts to defendant's purposeful availment 'of the privilege of conducting activities within the forum State' will support jurisdiction over a defendant."). In this case, the fact that Defendants initiated the Sub-License Agreements with Restonic and RMC in Illinois, entered into the Sub-License Agreements in Illinois, performed the Sub-License Agreements in Illinois and negotiated the Sub-License Agreements in Illinois, would be enough to exercise jurisdiction over the Defendants. However, Defendants' actions described below further fulfill the Illinois Long-Arm Statute and subject them to the jurisdiction of this Court.

**ii. Defendants Regularly Send Their Principals and Employees to Illinois to Conduct Business Meetings**

As established by Mr. Robins during his deposition, Defendants regularly send employees to Illinois to participate in business meetings for Restonic, RMC and Sleep Alliance.

*See Scovill Mfg. Co. v. Dateline Electrical Co.*, 461 F.2d 897 (7th Cir. 1972) (holding that where defendant sends an agent to Illinois to transact business, defendant is amenable to suit in Illinois).

**iii. <u>Defendants' Acquired Shares of Stock of RMC in Illinois</u>**

In addition, as highlighted herein, as sub-licensees of Restonic and RMC, Defendant Continental owns 60 shares of RMC stock in Illinois and Defendant Sleep Alliance, by virtue of the sum total of its members' shares of stock, owns 180 shares of RMC stock.

**iv. <u>Defendants Breached Their Fiduciary Duties in Illinois</u>**

Further, as clearly alleged in Plaintiff's Complaint, Defendants, through Sleep Alliance, interfered with RMC's negotiations in Illinois to engage in a business relationship with Mattress Giant. By usurping the benefit of the Mattress Giant deal in favor of Sleep Alliance, Defendants, as both majority shareholders and board members of RMC breached their fiduciary duties to the shareholders of RMC.

**2. <u>This Court Should Deny Defendants' Motion to Dismiss Because Both State and Federal Due Process Has Been Met</u>**

**a. <u>Defendants Have Sufficient Minimum Contacts in Illinois to Demonstrate that They Have Purposefully Availed Themselves of the Privileges of Conducting Activities within the Forum State</u>**

"Once a court has determined that jurisdiction exists under the long-arm statute, it must also ensure that constitutional due process requirements would not be violated by exercising jurisdiction over the nonresident defendant." *Heritage House Restaurants, Inc.*, 906 F. 2d at 279. Personal jurisdiction consistent with federal due process requires that the defendant have "minimum contacts" with the forum state such that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *GMAC Real Estate*, *supra*, 2005 U.S. Dist. LEXIS 12589, *8-9 (*citing Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 716 (7th Cir. 2002));

*Hollinger*, *supra*, 2005 U.S. Dist. LEXIS 21305, *55 [citation excluded].[1] "Minimum contacts sufficient to support the exercise of personal jurisdiction is established when the defendants' contacts with the forum demonstrate that the 'defendants purposefully avail themselves of the privileges of conducting activities within the forum state.'" *GMAC Real Estate*, 2005 U.S. Dist. LEXIS 12589 *9 (*quoting Wasendorf v. DBH Brokerhaus AG*, 2004 U.S. Dist. LEXIS 25107, *2 (Dec. 13, 2004). "The main factor in the minimum contacts due process analysis is not physical presence in the forum state but rather 'foreseeability.'" *Heritage House Restaurants, Inc.*, 906 F. 2d at 283. "The Supreme Court has stated that 'the forseeability that is critical to the due process analysis . . .is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" *Id.* (*quoting Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As discussed in detail herein, Defendants conduct extensive business transactions in Illinois, such as shipping bedding samples to Restonic in Illinois, for which Continental bills Restonic for in Illinois. (Depo. Robins, 49:18-25; 50:1-3; 51:4-25; 52:1-4; 53:9-13), executing a promissory note with RMC in Illinois, which was negotiated with RMC in Illinois via telephone (Depo. Robins, 23:15-21; 24:4-8), executing a Sub-License Agreement with RMC providing for the laws of Illinois to govern, owning RMC and Restonic stock in Illinois, and routinely sending employees of Continental to travel to Illinois to attend various RMC and Restonic meetings. (Depo. Robins, 32:21-25; 33:1-5; 34:5-7; 35:10-19; 36:10-12). Indeed, Mr. Robins and Continental regularly and intentionally conducted business with RMC and Restonic by mail and telephone on a routine basis for approximately twenty-seven (27) years. (Depo. Robins, 62:14-

---

[1] The Seventh Circuit Court has held that because "Illinois courts have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction," federal courts sitting in diversity in Illinois rely on federal due process analysis to determine if Illinois due process guarantees are satisfied. *RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *see also Binberger*, supra, 2003 U.S. Dist. LEXIS 806, *8; *Hollinger*, supra, 2005 U.S. Dist. LEXIS 21305, *55.

24; 63:2-19) As previously noted, Illinois Courts have held that one of these transactions alone would subject Defendants to jurisdiction in Illinois.[2] When considered together as a whole however, it is unquestionable that Defendants have the sufficient minimum contacts in Illinois to demonstrate that they have purposefully availed themselves of the privileges of conducting activities within the forum state, making it foreseeable that they could be haled into court there.

**b. The Maintenance of the Suit Does Not Offend Traditional Notions of Fair Play and Substantial Justice.**

After a Court determines that the defendant has established minimum contacts with the forum state, it may also consider the relative convenience of litigating in that forum and the interests of the states involved. *Burger King Corp. v. Rudewicz*, 471 U.S. 462, 476-77 (1985). Specifically, the court must ensure that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." To that end, the Court should examine the following:

> (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; and (5) the extent to which the claim is related to the defendant's local activities; and (6) the avoidance of a multiplicity of suits on conflicting adjudications.

*Birnberg,*, 2003 U.S. Dist. LEXIS 806, *11-12 (citations excluded). "Because no one factor is dispositive, this Court must balance all of the factors. ***However, the most important factors to consider are the interests of the forum and the relative convenience of the defendant in litigating in that forum***." *Id.* (emphasis added); *see also Kohler Co. v. Kohler Int'l, Ltd.*, 196 F. Supp. 2d 690, 700 (N.D. Ill. 2002).

In the instant case, it is clear that Illinois is a convenient forum for the Defendants to litigate in. During Mr. Stephen Russo's deposition on June 14, 2008, who facilitated the Sleep

---

[2] *See J. Walker & Sons, v. DeMert & Dougherty, Inc.* 821 F. 2d 399, 402 (7th Cir. 1987).

Alliance meetings in Illinois, he stated that Chicago, Illinois was a convenient location for Mr. Robins, Mr. Ford, Mr. Comer and Mr. Stevens to meet. (Depo. Russo, 65:10-24; 66:1-11). If Chicago was a convenient forum in which to conduct business for the members of the Sleep Alliance, all of whom are defendants in the instant litigation, then there is no means by which Defendants could now successfully contend that Illinois is not a convenient forum for the adjudication of the instant litigation.

Further, Illinois has a significant interest in providing the Plaintiff an Illinois forum for adjudication of this dispute, as the Sub-License Agreement that Plaintiff executed with Defendants Restonic and RMC, clearly provided that Illinois law would apply and an Illinois Court is best situated to interpret said law. *See e.g., Heritage House*, 906 F.2d 276 (7th Cir. 1990). Moreover, as highlighted herein, because the instant litigation stems directly from the Defendants' "continuous and systematic" contacts with Illinois and because the interests of judicial economy support the avoidance of a multiplicity of suits and conflicting adjudications, the maintenance of the instant litigation in this Court does not offend either "traditional notions of fair play and substantial justice" or the United States or Illinois Constitutions. *Id.*

Based on the foregoing, Defendants' Motion to Dismiss for lack of personal jurisdiction must be denied because, when viewed in light most favorable to the Plaintiff, the evidence certainly establishes that Defendants' conduct has subjected them to the personal jurisdiction of this Court in compliance with traditional notions of fair play and substantial justice.

## IV. CONCLUSION

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an Order: (i) denying Defendants Continental Silverline Products, L.P. and Drew Robins' Motion to Dismiss; and (ii) granting such other and further relief as this Honorable Court deems just and

proper.

Dated: August 25, 2008.

Respectfully submitted,

**ZARCO EINHORN SALKOWSKI & BRITO, P.A.**
*Attorneys for Plaintiffs*
Bank of America Tower
100 Southeast 2nd Street, Suite 2700
Miami, Florida 33131
Telephone: (305) 374-5418
Telecopier: (305) 374-5428

By: /s/ Robert F. Salkowski
ROBERT ZARCO
Florida Bar No. 502138
ROBERT F. SALKOWSKI
Florida Bar No. 903124
MELISSA L. BERNHEIM
Florida Bar No. 0623069
*(Admitted Pro Hac Vice)*

*-AND-*

Brian Ira Tanenbaum, Esq. (IL Bar No. 6181447)
John A. Benson, Jr., Esq. (IL Bar No. 6289042)
Attorneys for Plaintiff
The Law Offices of Brian Ira Tanenbaum, Ltd.
2970 Maria Avenue, Suite 207
Northbrook, IL 60062
Telephone: 847-562-1636
Facsimile: 847-562-1637

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 25, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ John A. Benson, Jr.

**SERVICE LIST**

**Royal Sleep Products, Inc., v. Restonic, et al.**
**Case No.: 1:07-cv- 06588**
**United States District Court, Northern District of Illinois**

| | |
|---|---|
| Frederic A. Mendelson, Esq.<br>Burke, Warren, MacKay & Serritella, PC<br>330 North Wabash Avenue, 22nd Floor<br>Chicago, IL 60611<br>***Counsel for Restonic Corporation and Restonic Mattress Corporation*** | Glenn E. Amundsen, Esq.<br>Thomas J. Lyman, III, Esq.<br>Smith & Amundsen, L.L.C.<br>150 North Michigan Avenue, Suite 3300<br>Chicago, IL 60601<br>***Counsel for Continental Silverline Products, L.P., Jackson Mattress Co. LLC, Royal Bedding Company of Buffalo Sleep Alliance, LLC, Drew Robins and Tom Comer, Jr.*** |
| Thomas R. Hill, Esq.<br>Michelle Fisher, Esq.<br>Dykema Gossett PLLC<br>10 South Wacker Drive, Suite 2300<br>Chicago, IL 60606<br>***Counsel for Stevens Mattress Manufacturing Co. and Richard Stevens*** | Andrew Friedberg, Esq.<br>William P. Maines, Esq.<br>Fullbright & Jaworski, LLP<br>1301 McKinney<br>Suite 5100<br>Houston, TX 77010<br>***Counsel for Continental Silverline Products L.P. and Drew Robins*** |