**AMENDED AND RESTATED
SUBLICENSE AGREEMENT**

This AMENDED AND RESTATED SUBLICENSE AGREEMENT (this "Agreement") dated and effective as of the 1st day of June, 2007, by and between Restonic Mattress Corporation, an Illinois corporation, having its offices at 1540 E. Dundee Road, Suite 102, Palatine, IL 60074 ("RMC") and Royal Sleep Products, Inc., a Florida Corporation, having its offices at 3520 N.W. 46th Street, Miami, FL 33142 ("Sub-Licensee").

W I T N E S S E T H:

WHEREAS, RMC and Sub-Licensee have previously entered into a Sublicense Agreement dated as of January 1, 2006 (the "Prior Sublicense Agreement"); and

WHEREAS, effective as of June 1, 2007, RMC and Sub-Licensee desire to amend and restate the Prior Sublicense Agreement in its entirety, on the terms and conditions set forth in this Agreement; and

WHEREAS, Restonic Corporation, a Delaware corporation ("Restonic"), has developed programs, services and know-how and is the owner of certain patents and trademarks, all of which are useful in connection with the manufacture and sale of bedding products; and

WHEREAS, pursuant to a License Agreement between RMC and Restonic dated as of December 31, 1995 (as amended, restated, modified or supplemented, the "License Agreement"), Restonic has licensed certain of such intellectual property rights to RMC and allowed RMC to use Restonic's patents and trademarks and to provide certain services and know-how to sub-licensees of RMC, all on the terms and conditions set forth therein; and

WHEREAS, Sub-Licensee, desires to participate in the utilization of Restonic patents and the utilization and promotion of Restonic trademarks and desires to participate in Restonic programs and receive Restonic services and know-how; and

WHEREAS, RMC is willing to allow Sub-Licensee to participate in Restonic programs, to provide to Sub-Licensee such Restonic services and know-how and to allow Sub-Licensee to use Restonic's patents and trademarks, all on the terms and conditions hereinafter set forth;

NOW, THEREFORE, in consideration of the premises and of the mutual covenants and agreements herein set forth, RMC and Sub-Licensee agree as follows:

1.   Definitions.  As used in this Agreement, the following terms have the indicated meanings:

"Bedding Products" means:

(a)   mattresses, excluding crib mattresses and mattresses which are sold as integral parts of sofa beds, bunk beds or rollaway cots;

RMC:06012007.15

EXHIBIT D

(b) foundations, including box springs; and

(c) flotation support sleep systems, including bladder, liner, dish, heater, cover, platform and/or foundation if sold as an integral part of such a system.

"ComfortCare™ Products" means those RMC Products either (i) bearing a ComfortCare™ trademark or (ii) manufactured utilizing one or more of the Restonic or RMC Proprietary Components identified on Exhibit A hereto as ComfortCare™ Proprietary Components and such additional components as RMC may designate by written notice to Sub-Licensee as ComfortCare™ Proprietary Components.

"Contract Products" means RMC Products designed for sale to institutional end users and not for retail consumption.

"Healthrest™ Products" means those RMC Products either (i) bearing a Healthrest™ trademark or (ii) manufactured utilizing one or more of the Restonic or RMC Proprietary Components identified on Exhibit A hereto as Healthrest™ Proprietary Components and such additional components as RMC may designate by written notice to Sub-Licensee as Healthrest™ Proprietary Components.

"License Agreement" has the meaning given thereto in the Recitals hereto.

"Non-RMC Products" means any Bedding Products not utilizing any Restonic Patents and/or any Restonic or RMC Proprietary Components and not bearing any Restonic Trademark.

"OEM Products" means Bedding Products either: (i) manufactured utilizing Restonic Patents and/or Restonic or RMC Proprietary Components; or, (ii) bearing Restonic Trademarks, and, in either case, sold and delivered by Sub-Licensee to another manufacturing entity independent of Sub-Licensee for use as an assembly component in a final product different from a mattress/box spring set which such entity will manufacture, sell and deliver to its customers. OEM Products specifically includes sleeper sofa mattresses and recreational vehicle mattresses.

"Private Label Products" means Bedding Products utilizing any Restonic Patents and/or Restonic or RMC Proprietary Components but not utilizing any Restonic Trademarks, which Bedding Products are manufactured by Sub-Licensee by permission of RMC pursuant to Section 2(a).

"Restonic" has the meaning given thereto in the Recitals hereto.

"Restonic or RMC Proprietary Components" means components of Bedding Products (i) which have been developed by Restonic or RMC or (ii) for which either Restonic or RMC has obtained the exclusive rights to sublicense, manufacture, sell or distribute, including those proprietary components identified on Exhibit A hereto and such additional components as RMC may designate by written notice to Sub-Licensee.

"Restonic Patents" means the patents described in <u>Exhibit A</u> attached hereto and such additional patents as RMC may designate by written notice to Sub-Licensee.

"Restonic Trademarks" means the marks set forth or described in <u>Exhibit B</u> attached hereto and such additional marks as RMC may designate by written notice to Sub-Licensee.

"RMC" has the meaning given thereto in the Recitals hereto.

"RMC Know-How" means trade secrets, information, techniques, materials, processes, specifications and other technical and commercial information either (a) developed by Restonic and licensed to RMC or (b) developed by RMC for use in connection with the manufacture, promotion and sale of Bedding Products.

"RMC Products" means Bedding Products manufactured in accordance with RMC Specifications and/or sold under Restonic Trademarks. For purposes of this Agreement, RMC Products shall also include foundations or box springs sold to match, or sold in conjunction with, mattresses bearing Restonic Trademarks.

"RMC Programs" means such programs as RMC shall make available from time to time to RMC Sub-Licensees, including advertising and promotional programs, educational programs, purchasing programs and marketing programs and also including all such programs made available by Restonic to RMC.

"RMC Services" means such services as RMC shall make available from time to time to RMC Sub-Licensees, including advertising services, recommendations regarding sources of components, marketing information and statistics and data processing services and also including all such services made available by Restonic to RMC.

"RMC Specifications" means the written instructions or directions provided by Restonic to RMC or otherwise adopted from time to time by RMC relating to type, quantity, or quality of material and methods and processes to be utilized in the manufacture and fabrication of RMC Products.

"RMC Sub-Licensees" means those shareholders of RMC who are also sub-licensees of RMC with factory locations in the United States.

"Sub-Licensee" has the meaning given thereto in the Recitals hereto.

"Sub-Licensee Locations" means Sub-Licensee's factory located at 3520 N.W. 46th Street, Miami, FL 33142 or such other factory locations as shall be approved in writing by RMC.

"Total Dollar Sales" means the gross amount invoiced by Sub-Licensee for Bedding Products less quantity discounts and returns.

2. <u>Rights Granted to Sub-Licensee</u>. During the term of this Agreement and subject to the conditions stated herein, RMC grants to Sub-Licensee the right:

-3-

      (a)    to use Restonic Patents and Restonic or RMC Proprietary Components solely in connection with the manufacture at Sub-Licensee Locations and at no other locations (i) of RMC Products, Contract Products or OEM Products or (ii) of Private Label Products, with the manufacture and marketing of such Private Label Products, permitted hereunder only with the prior written approval of RMC, which approval may be granted or denied, with any conditions imposed by RMC, solely within the discretion of RMC; or (iii) of Bedding Products other than RMC Products, Private Label Products, Contract Products and OEM Products, but only if RMC, in its sole discretion and at the written request of Sub-Licensee setting forth in detail the proposed use thereof, determines that such use is not inconsistent with the purpose of this Agreement;

      (b)    to use Restonic Trademarks, but only in connection with the promotion and sale of RMC Products manufactured at or shipped from a Sub-Licensee Location; provided (i) that the use of such Trademarks shall be in strict accord with guidelines provided by Restonic or RMC or in a manner approved in writing by RMC and (ii) that Sub-Licensee will not use or permit the use of its business name on products, labels or consumer advertising materials on which Restonic Trademarks are also displayed except where required by law;

      (c)    to receive and use RMC Know-How and RMC Services on terms and conditions applicable to other RMC Sub-Licensees;

      (d)    to participate in RMC Programs on terms and conditions applicable to other RMC Sub-Licensees; and

      (e)    to use the name "Restonic" as part of Sub-Licensee's business name but only in a manner approved in writing by RMC.

Sub-Licensee agrees and acknowledges that it may not in any manner use any Restonic Patents, Restonic Trademarks, Restonic or RMC Proprietary Components, RMC Know-How or RMC Services for the use, promotion, manufacture or sale of any products other than RMC Products, Contract Products or OEM Products or, with the prior written approval of RMC, pursuant to Section 2(a), Private Label Products.

      3.    <u>Payments and Reporting by Sub-Licensee</u>.  As consideration for the rights granted by RMC in Section 2 above:

      (a)    Sub-Licensee will pay to RMC, during each calendar quarter in which this Agreement is in effect, an amount equal to the greater of $7,125 or, with respect to Sub-Licensee's sales during such calendar quarter, the sum of:

      (i)    2.50% of Sub-Licensee's Total Dollar Sales of ComfortCare$^{TM}$ Products and Healthrest$^{TM}$ Products; plus

      (ii)    2.50% of Sub-Licensee's Total Dollar Sales of RMC Products other than ComfortCare$^{TM}$ Products and Healthrest$^{TM}$ Products; plus

    (iii) 2.50% of Sub-Licensee's Total Dollar Sales of Private Label Products; plus

    (iv) 0.5% of Sub-Licensee's Total Dollar Sales of Contract Products; plus

    (v) 0.5% of Sub-Licensee's Total Dollar Sales of OEM Products; plus

    (vi) 0.5% of Sub-Licensee's Total Dollar Sales of Non-RMC Products.

(b)

    (i) Because Total Sales of Bedding Products for a given calendar quarter cannot be accurately calculated for some period following the end of the quarter in which such sales occurred, Sub-Licensee shall pay each month an amount equal to one-eleventh (1/11) of Sub-Licensee's Total Dollar Sales of each category of Bedding Products specified in subsection 3(a) during the eleven month period January through November of the preceding calendar year multiplied by the percentage specified in such subsection 3(a) for each such category.

    (ii) The monthly installment due in May, August, November and February, respectively, shall be adjusted to compensate for any over-payment or under-payment during the calendar quarter ending the preceding March, June, September and December, respectively.

    (iii) All installments will be paid by Sub-Licensee within 30 days after RMC renders an invoice therefore to Sub-Licensee. If this Agreement is terminated during a calendar year, payment shall be prorated to the date of termination.

  (c) Notwithstanding the provisions of subparagraphs 3(a) and 3(b) above, for any calendar year in which Sub-Licensee's total payments to RMC pursuant to subparagraphs 3(a) and 3(b) are less than one-percent (1%) of Sub-Licensee's Total Sales of Bedding Products, Sub-Licensee shall pay an additional amount equal to the difference between the amount paid pursuant to subsections 3(a) and 3(b) and one-percent (1%) of Sub-Licensee's Total Sales of Bedding Products.

  (d) Within 10 days after the end of each calendar month, Sub-Licensee will report, in such form as RMC may specify, the amount of its Total Dollar Sales of Bedding Products (including Private Label Products, Contract Products, OEM Products and Non-RMC Products) during such month and will provide to RMC such other information as may be reasonably requested. RMC may, at any time upon reasonable notice and during regular business hours, enter Sub-Licensee's place of business and examine sales records and other books of account to determine the accuracy of such reports. If such examination shows that Sub-Licensee's Total Dollar Sales of Bedding Products were understated by more than 3%, Sub-Licensee shall pay promptly the

-5-

amount due by reason of such understatement, together with the reasonable costs and expenses, including reasonable salaries, incurred by RMC in making such examination.

(e) Licensee will also pay, within 30 days after RMC renders an invoice therefore, any amount due to RMC by reason of Sub-Licensee's receipt of RMC Know-How or RMC Services, or by reason of Sub-Licensee's participation in RMC Programs, provided charges therefore are on a basis uniformly applicable to other RMC Sub-Licensees.

(f) Sub-Licensee also agrees to pay to RMC in addition to the amounts payable pursuant to subsection 3(a) a commission equal to (i) 1.4% on all product orders secured by RMC's Vice-President of Contract Sales and (ii) 1.4% on all Fleetwood or Flexsteel orders secured by RMC's Director of OEM Sales.

4. Manufacturing Specification, Labels and Inspections.

(a) RMC Products manufactured or sold by Sub-Licensee will bear a label approved by RMC and will be manufactured in strict accordance with the RMC Specifications applicable to the Restonic Trademarks under which such Products are sold. In the event Restonic obtains a patent on an invention which must be practiced in order to meet RMC Specifications, RMC grants to Sub-Licensee a royalty-free license to practice such patent, but solely in connection with the manufacture and sale of RMC Products.

(b) The parties hereto acknowledge that RMC Specifications may be changed from time to time by Restonic when, in its sole discretion, Restonic deems it in the best interest of Restonic and its licensees to make such change. RMC will notify Sub-Licensee as soon as practicable after it receives notice of any change in RMC Specifications. RMC will, at Sub-Licensee's written request, and subject to Restonic's approval, consider varying RMC Specifications applicable to RMC Products. Any such request for variation shall include full specifications, description of materials and manufacturing methods. If RMC, in its sole discretion, deems the methods, materials and specifications contemplated by the proposed variance to be compatible with the manufacture of products of a quality consistent with the applicable Restonic Trademark, and such variance is approved by Restonic, then such variance will be granted.

5. Patents, Trademarks, Know-How and Protection Thereof. RMC warrants that it has the right and power to sublicense the Restonic Patents and Restonic Trademarks and that there are no outstanding sub-licenses or other rights which prevent it from entering into this Agreement.

Sub-Licensee acknowledges that the Restonic Patents and Restonic Trademarks are the exclusive property of Restonic, as licensed to RMC, and that RMC grants to Sub-Licensee only such limited rights to use such Restonic Patents and Restonic Trademarks as are set forth herein. Sub-Licensee will not contest or directly or indirectly assist others in contesting the validity of the Restonic Trademarks or the exclusiveness of Restonic's ownership or other rights in such Restonic Trademarks and will not use or permit others to use any Restonic

-6-

Trademark in a manner which might create a likelihood of confusion between RMC Products and other products.

Sub-Licensee will fully cooperate with Restonic and RMC in securing federal or state common law and/or statutory protection for Restonic Trademarks, and will, at RMC's request, make bona fide sales and shipments in interstate commerce of products bearing Restonic Trademarks. Sub-Licensee will irrevocably assign to RMC all right, title or interest in any Restonic Trademark which Sub-Licensee may have by reason of Sub-Licensee's use thereof, under this Agreement or otherwise, and will execute such documents and take such other action as may be necessary or appropriate to effect said assignment.

Sub-Licensee will notify RMC promptly of any claim by a third party, of whatever nature, relating directly or indirectly to any Restonic Patent or Restonic Trademark. Sub-Licensee will cooperate with RMC and Restonic in responding to and/or defending any such claim. Sub-Licensee will promptly make such changes in its use of Restonic Patents or Restonic Trademarks as RMC may direct for the purpose of satisfying or compromising such claim.

Sub-Licensee will notify RMC promptly of an apparent infringement upon, interference with or usurpation of any Restonic Patent or Restonic Trademark or any other rights of Restonic and will, at RMC's expense, cooperate with and assist RMC and Restonic in any efforts to stop such infringement, interference and/or usurpation.

Sub-Licensee acknowledges that the RMC Know-How, RMC Services and RMC Programs made available to Sub-Licensee pursuant to this Agreement constitute valuable commercial and technical information which is not generally available and which has been or is being developed at substantial expense to Restonic and licensed to RMC. Sub-Licensee will not disclose such commercial and technical information to third parties and will not use such commercial and technical information in any manner inconsistent with this Agreement or to the detriment of Restonic or RMC and will take all reasonable precautions to prevent such disclosure or use. The obligations assumed by Sub-Licensee in this <u>Section 5</u> shall survive termination of the Agreement.

6.   <u>Promotion of Restonic Trademarks and RMC Products</u>.

Sub-Licensee hereby agrees to promote the public recognition of Restonic Trademarks and the sale of RMC Products and acknowledges that certain business practices and minimum expenditures for advertising are necessary in connection with such promotion. Accordingly, Sub-Licensee agrees to:

(i)   maintain facilities having productive capacities sufficient to meet reasonable demands for RMC Products and conduct its business in an honest and ethical manner consistent with business practices followed by other reputable manufacturers similarly situated;

(ii)  use its best efforts to promote and sell RMC Products to the extent such efforts are not inconsistent with Sub-Licensee's obligations to the licensor of another national or regional brand of Bedding Products manufactured by Sub-

-7-

Licensee during the term of Sub-Licensee's license with such other national or regional brand licensor;

(iii) refrain from doing any act prejudicial or injurious to the business or good will of Restonic or RMC

7. Modification of Agreement.

(a) RMC may, but only in strict accord with the procedures set forth in subsection 7(b) below, modify this Agreement from time to time, including but not limited to modifications in the following respects:

(i) change the definition of "Bedding Products";

(ii) change the dollar amount and/or percentage amount of payments by Sub-Licensee required by subsections 3(a) or 3(e); and

(iii) charge fees for labels required by subsection 4(a).

(b) Any modification of this Agreement pursuant to subsection 7(a) shall be effective only if adopted in the following manner and on the following terms and conditions:

(i) no such modification shall have any retroactive effect upon Sub-Licensee;

(ii) the proposed modification is duly approved by RMC;

(iii) the proposed modification shall become effective only upon (A) the affirmative vote of 2/3 of the RMC Sub-Licensees present at a meeting thereof called, with at least 90 days' prior notice by RMC, or (B) upon written consent of 2/3 of the RMC Sub-Licensees, in each case with each such RMC Sub-Licensee having one vote per sublicense then held;

(iv) Sub-Licensee shall have a right, exercisable within 30 days after it has been given notice that a proposed modification was adopted, to terminate this Agreement as of the effective date of the modification;

(v) unless Sub-Licensee properly terminated this Agreement pursuant to subsection 7(b)(iv) above, the modification shall become binding upon Sub-Licensee, as if a part of this Agreement, as of the designated effective date thereof; and

(vi) Sub-Licensee will, at the request of RMC, execute such documents or agreements as RMC may reasonably request in order to reflect any modifications adopted pursuant to this Section 7.

-8-

(c) In all other respects, this Agreement may only be modified with the written consent of each party hereto.

8. Termination of Agreement.

(a) This Agreement shall be automatically renewed from calendar year to calendar year until terminated pursuant to subsection 7(b)(iv) or this Section 8.

(b) Sub-Licensee may terminate this Agreement as of the expiration of any calendar year by giving RMC not less than 120 days' written notice of its intention to so terminate, in which event said termination shall be effective as of the last day of said calendar year.

(c) If Sub-Licensee fails or refuses to make any payment due hereunder within 30 days after rendition of an invoice therefore by RMC, RMC shall have the right, by not less than 30 days' prior notice to Sub-Licensee, to terminate this Agreement effective at the end of said notice period unless Sub-Licensee shall have made the required payment, together with an amount equal to 1-1/2% of the required payment for each 30-day period subsequent to the 30th day after the rendition of such invoice, prior to the end of said notice period.

(d) In the event of any breach of or default under this Agreement by either party (other than Sub-Licensee's failure to make payments to Restonic hereunder) the other party shall have the right, by not less than 60 days' prior notice of its intention to terminate, which notice shall state the reason therefore, to terminate this Agreement as of the expiration of said notice period unless such breach or default is remedied or cured during such notice period.

(e) This Agreement shall automatically terminate if either party is adjudicated a bankrupt, becomes insolvent, makes or executes for the benefit of creditors any bill of sale, deed of trust, or assignment, or enters into a composition or arrangement with its creditors, or if a trustee or receiver is appointed to administer or conduct the business or affairs of such party, or if any voluntary or involuntary bankruptcy proceeding is commenced by or against such party which remains pending for more than 60 days, unless the other party, in any of such events, elects, within 10 days after receipt of notice of such event, not to terminate this Agreement.

(f) This Agreement shall automatically terminate in the event that Sub-Licensee fails or refuses to pay any amount due to RMC under the Stockholders Agreement dated as of January 1, 2006, and such failure or refusal continues for in excess of sixty (60) days.

(g) No termination of this Agreement under this section or subsection 7(b)(iv) shall release Sub-Licensee from its obligation to pay monies due to RMC through the date of termination.

(h) This Agreement shall automatically terminate upon the termination of that certain License Agreement dated as of December 31, 1995 between Restonic and RMC.

-9-

9. <u>Actions on Termination</u>. Upon termination of this Agreement, all rights of Sub-Licensee to use Restonic Patents, Restonic or RMC Proprietary Components, Restonic Trademarks, RMC Know-How, RMC Services and RMC Programs and any other technical or commercial information made available to Sub-Licensee by RMC shall terminate and Sub-Licensee will immediately:

(a) pay all amounts due to RMC up to the date of termination;

(b) discontinue all use of Restonic Patents, Restonic Trademarks and Restonic or RMC Proprietary Components, and destroy all labels, advertising or other materials bearing Restonic Trademarks;

(c) execute and deliver to RMC all written assignments or other documents which are, in the opinion of counsel to RMC, necessary or appropriate to transfer to RMC or Restonic any and all right, title or interest in the Restonic Patents, Restonic Trademarks or Restonic or RMC Proprietary Components; and

(d) return to RMC, and refrain from using, all commercial and technical information supplied to Sub-Licensee by RMC pursuant to this Agreement, including all documents constituting, containing or relating to RMC Know-How, RMC Specifications, RMC Services or RMC Programs.

Sub-Licensee's obligations in this <u>Section 9</u> shall survive termination of this Agreement.

In the event of termination of this Agreement, RMC agrees to use reasonable efforts to assist Sub-Licensee in disposing of materials Sub-Licensee is prohibited from using by reason of this <u>Section 9</u>.

10. <u>Ownership of Sub-Licensee and Assignment</u>.

(a) Sub-Licensee acknowledges that RMC's willingness to enter into this Agreement is based upon RMC's assessment of the business capabilities and experience of Sub-Licensee and/or the persons controlling Sub-Licensee. Sub-Licensee represents that the present owners of Sub-Licensee and their respective percentage ownership interests are fully set forth in <u>Exhibit C</u>, which <u>Exhibit C</u> also designates the person(s) currently controlling Sub-Licensee by reason of their ownership of more than 50% of the stock or other ownership interest of Sub-Licensee ("Controlling Persons"). Sub-Licensee agrees to report promptly, by written notice to RMC, any changes in the information set forth in <u>Exhibit C</u>.

(b) Sub-Licensee will not directly or indirectly, by operation of law or otherwise, sell, assign, transfer or otherwise dispose of this Agreement or any interest created hereby without the written consent of RMC. Any sale, transfer or disposition or series of sales, transfers or dispositions which result in persons other than Controlling Persons owning fifty percent (50%) or more of the stock or other ownership interest of Sub-Licensee shall constitute an assignment of this Agreement for purposes of this subsection; <u>provided</u>, <u>however</u>, that transfers by Controlling Persons of stock or

-10-

RMC:06012007.15

ownership interests to their spouses or children or to trusts established primarily for their benefit and/or the benefit of their spouses or descendants shall not be deemed transfers for purposes of this section and, so long as such stock or ownership interest is held by such spouses or children or in such a trust, such stock and ownership interest shall be deemed to continue to be owned by the transferring Controlling Person, whether alive or deceased, for purposes of this subsection.

11. <u>Sub-Licensee Not An Agent of Restonic or RMC</u>.  Sub-Licensee shall have no authority to bind Restonic or RMC upon any contract or obligation whatsoever, and nothing in this Agreement shall be construed as constituting Sub-Licensee an agent of or joint venturer with Restonic or RMC for any purpose.

12. <u>Additional Representations, Warranties and Covenants</u>.

(a) <u>Sub-Licensee's Representations and Warranties</u>.  Sub-Licensee hereby represents and warrants to RMC:

(i) The execution and delivery of this Agreement and performance of its terms by Sub-Licensee will not (A) violate, conflict with, or result in a breach of any provision of the constituent documents of Sub-Licensee, (B) violate any order, writ, injunction, decree, judgment, ruling, law, rule or regulation of any court or governmental authority, domestic or foreign, applicable to Sub-Licensee, (C) violate or conflict with the terms of any license agreement, contract or understanding with any other national brand licensor of Bedding Products or any other contract, understanding or agreement entered into by or binding upon Sub-Licensee, or (D) require any consent, approval or authorization of, or notice to, or declaration, filing or registration with, any governmental or regulatory authority in connection with the execution, delivery and performance of this Agreement.

(ii) Sub-Licensee is not subject to any contractual provision, restriction, agreement, judgment, decree, order, award, law, rule or regulation which would prohibit or be violated by its execution, delivery or performance of this Agreement;

(iii) This Agreement constitutes the valid and binding agreement of Sub-Licensee and is enforceable against Sub-Licensee in accordance with its terms.

(iv) Sub-Licensee has the authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby.  All action required to authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby has been taken and no other proceedings on the part of Sub-Licensee are necessary to approve and authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

-11-

(v) There are no actions, suits or proceedings pending, or to the knowledge of Sub-Licensee, threatened against or affecting Sub-Licensee in any court or before an arbitrator of any kind that, individually or in the aggregate, could reasonably be expected to prohibit this Agreement or the transactions contemplated hereby.

(b) <u>Sub-Licensee's Covenants</u>. Sub-Licensee hereby covenants to RMC as follows:

(i) Sub-Licensee shall permit RMC, at reasonable times and at RMC's expense, to place one or more of its employees or agents in any Sub-Licensee Location during normal working hours to observe and inspect the manufacturing of RMC Products, Private Label Products, Contract Products and OEM Products. Such employees or agents of RMC shall be freely admitted to any part of any Sub-Licensee Location in which RMC Products, Private Label Products, Contract Products or OEM Products are being manufactured and shall abide by the rules and regulations of Sub-Licensee relating to plant safety and security.

(ii) Sub-Licensee shall maintain complete and accurate records of sales, production and inventory of RMC Products, Private Label Products, Contract Products and OEM Products and shall maintain such records for such periods of time as RMC shall designate.

(iii) Sub-Licensee shall manufacture all RMC Products, Private Label Products, Contract Products and OEM Products in conformance with any national, state or local laws or any lawful order, rule or regulation issued thereunder which is applicable to the manufacture of such RMC Products, Private Label Products, Contract Products and OEM Products.

(iv) Without limiting Sub-Licensee's indemnification of Restonic and RMC, Sub-Licensee shall at all times during the term of this Agreement maintain, at its expense, commercial general liability insurance including Premises Operations, Products/Completed Operations, Contractual, Broad Form Property Damage, and Personal Injury, with a combined single limit of not less than Five Million Dollars ($5,000,000.00) per occurrence which policy shall name Restonic Corporation and Restonic Mattress Corporation as additional insureds.

(c) <u>RMC's Representations and Warranties</u>. RMC hereby represents and warrants to Sub-Licensee:

(i) The execution and delivery of this Agreement and performance of its terms by RMC will not (A) violate, conflict with, or result in a breach of any provision of the constituent documents of RMC, (B) violate any order, writ, injunction, decree, judgment, ruling, law, rule or regulation of any court or governmental authority, domestic or foreign, applicable to RMC, (C) violate or conflict with the terms or any contract, understanding or other agreement entered into by or binding upon RMC, or (D) require any consent, approval or

-12-

authorization of, or notice to, or declaration, filing or registration with, any governmental or regulatory authority in connection with the execution, delivery and performance of this Agreement.

(ii) RMC is not subject to any contractual provision, restriction, agreement, judgment, decree, order, award, law, rule or regulation which would prohibit or be violated by its execution, delivery or performance of this Agreement.

(iii) This Agreement constitutes the valid and binding agreement of RMC and is enforceable against RMC in accordance with its terms.

(iv) RMC has the authority to execute and deliver this Agreement and to consummate the transactions contemplated hereby. All action required to authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby has been taken and no other proceedings on the part of RMC are necessary to approve and authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.

(v) There are no actions, suits or proceedings pending, or to the knowledge of RMC, threatened against or affecting RMC in any court of before an arbitrator of any kind that, individually or in the aggregate, could reasonably be expected to prohibit this Agreement or the transactions contemplated hereby.

13. <u>Waiver</u>. Failure of either party to notify the other of any breach of this Agreement or any default hereunder shall not constitute a waiver of any such breach or default, or a waiver of the right of said party to terminate this Agreement or exercise any other remedy at any time on account thereof, or on account of any other subsequent breach or default.

14. <u>Partial Invalidity</u>. The terms of this Agreement shall be deemed severable and if any term or provision of this Agreement shall to any extent be held invalid or unenforceable, the remaining terms and provisions of this Agreement shall not be affected thereby, which terms and provisions shall remain valid and enforceable to the fullest extent permitted by law.

15. <u>Notices</u>. All notices required or permitted to be given under this Agreement shall (i) be in writing and personally delivered, delivered by overnight courier service, sent by facsimile transmission (with confirmation of receipt) or sent by certified mail, return receipt requested, addressed to the address and facsimile number of the addressee as indicated below or at such other address as such party may designate from time to time in writing to the other party and (ii) be effective from the date of mailing:

If to RMC:

Restonic Mattress Corporation
1540 E. Dundee Road

        Suite 102
        Palatine, Illinois 60074
        Attn: Stephen S. Russo
        Facsimile No.: (847) 241-1136
        Telephone No.: (847) 241-1130

If to Sub-Licensee:

        Royal Sleep Products, Inc.
        3520 N.W. 46th Street
        Miami, FL 33142
        Attn: Gary Robinson
        Facsimile No.: 305-634-9900
        Telephone No.: 305-635-2337

16. <u>Entire Agreement and Survival of Obligations</u>. This Agreement constitutes the entire understanding of the parties relating to the subject matter hereof; however, the execution of this Agreement by either party shall not be deemed to constitute a release or waiver by said party of its rights prior to the date hereof pursuant to any prior agreement between the parties, it being the intention of the parties that this Agreement shall only govern the rights and obligations of the parties subsequent to the date hereof. No modification, waiver or amendment of any provision of this Agreement shall be effective unless specifically made in writing and duly signed by the party or parties to be bound thereby or adopted in accordance with the provisions of Section 7 hereof.

17. <u>Governing Law</u>. This Agreement shall be governed by the internal laws (and not the law of conflicts) of the State of Illinois. This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same agreement.

18. <u>Reserved</u>.

19. <u>Acknowledgment of Restonic License</u>. Sub-Licensee acknowledges that Restonic has entered into a License Agreement with RMC, pursuant to which Restonic has permitted RMC to enter into sublicense agreements on the terms and conditions set forth therein. Notwithstanding any provision of this Agreement to the contrary, the parties hereto agree that if any term or provision of this Agreement shall in any respect violate or conflict with any term or provision of such License Agreement, the terms and provisions of such License Agreement shall control in all respects.

20. <u>Confidentiality</u>. Sub-Licensee understands and acknowledges that the Restonic Patents, the Restonic Trademarks, the RMC Know-How, the RMC Services, the RMC Programs and the specifications which will be made available to Sub-Licensee pursuant to this Agreement, together with any information provided by RMC to Sub-Licensee regarding the

-14-

pricing, margins and cost of RMC Products, constitute valuable commercial and technical information which is not generally available and which has been or is being developed at substantial expense to Restonic and licensed to RMC. To the extent such information is not already in the public domain, Sub-Licensee will not disclose such commercial and technical information to third parties and will refrain from using such commercial and technical information in any manner inconsistent with this Agreement or to the detriment of Restonic or RMC and will take all reasonable precautions to prevent such disclosure or use. In furtherance of its obligations hereunder and not by way of limitation, Sub-Licensee agrees that any affiliation (other than as permitted by Section 22) of Sub-Licensee or any owners of Sub-Licensee with the owner or licensor of any national or regional trademark or brand other than Restonic, except for small minority interests held solely for investment or informational purposes, shall entitle RMC to terminate this Agreement effective immediately upon delivery of written notice to Sub-Licensee. The obligations assumed by Sub-Licensee in this Section 21 shall survive termination of this Agreement.

21. This Agreement may be executed in counterparts, each of which shall be an original, all of which shall constitute but one and the same instrument.

22. RMC understands and acknowledges that Sub-Licensee may choose to enter into additional licensing agreements to manufacture and sell Bedding Products with the owner(s) or licensor(s) of national or regional bedding product trademarks or brands other than Restonic or RMC (the "Other Licensors"). Sub-Licensee agrees that during the term of this Agreement it shall not enter into any licensing or other arrangement regarding the manufacture and sale of Bedding Products with any Other Licensor unless Sub-Licensee notifies RMC thereof in writing not less than ten (10) days following entry into any such license arrangement.

23. Indemnification by Sub-Licensee. Sub-Licensee agrees to indemnify, save and hold RMC and Restonic (and their officers, directors, employees, shareholders, and affiliates) harmless from and against any and all claims, charges, causes of action, costs, expenses (including reasonable attorneys' fees), liabilities, damages, losses or judgments of any nature whatsoever arising from or relating to, or alleged to arise from or relate to, (a) the manufacture or sale of any RMC Products, Private Label Products, Contract Products or OEM Products by Sub-Licensee, (b) any defect of any nature in any RMC Products, Private Label Products, Contract Products or OEM Products manufactured by Sub-Licensee, (c) any breach of any warranty associated with any RMC Products, Private Label Products, Contract Products and OEM Products manufactured by Sub-Licensee, (d) the failure of Sub-Licensee to perform any covenant, obligation, commitment or warranty as required pursuant to this Agreement; (e) any alleged obligations of Sub-Licensee allegedly owed to any Other Licensor or third party, which obligations are alleged by said Other Licensor or third party to be violated or affected by this Agreement, or (f) the performance of Sub-Licensee's obligations hereunder. Sub-Licensee's obligations in this Section 23 shall survive the termination of this Agreement; provided, however, nothing in this Section 23 shall be construed to apply to claims by a third-party that (i) Sub-Licensee's use of the Restonic Trademarks or the Restonic or RMC Proprietary Components in accordance with the license granted hereunder violates the intellectual property rights of such third-party or (ii) RMC Products manufactured by Sub-Licensee in accordance with the RMC Specifications are defective.

24.  Indemnification by RMC.  RMC agrees to indemnify, save and hold Sub-Licensee (and its officers, directors, employees, shareholders and affiliates) harmless from and against any and all claims, charges, causes of action, costs, expenses (including reasonable attorneys' fees), liabilities, damages, losses or judgments of any nature whatsoever arising from or relating to, or alleged to arise from or relate to, claims by a third-party that (i) Sub-Licensee's use of the Restonic Trademarks or the Restonic or RMC Proprietary Components in accordance with the license granted hereunder violates the intellectual property rights of such third-party or (ii) RMC Products manufactured by Sub-Licensee in accordance with the RMC Specifications are defective.

25.  Warranty Procedures.  Sub-Licensee agrees to, at all times, honor and abide by the product warranty procedures attached hereto as Exhibit D.

[signature page follows]

RMC:06012007.15

IN WITNESS WHEREOF, this Agreement has been executed as of the day and year first above written.

RESTONIC MATTRESS CORPORATION

By: _____/s/ Russo_____

Title: ____PRESIDENT_____


ROYAL SLEEP PRODUCTS, INC.

By: _____

Title: _____

**Exhibit A to
Sublicense Agreement
Between Restonic Mattress Corporation
and Royal Sleep Products, Inc.
dated as of June 1, 2007**

**Restonic or RMC Proprietary Components**

I. ComfortCare™ Proprietary Components

    a. 567 LFK
    b. 648 LFK
    c. Versalok Module
    d. Marvelous Middle construction technique

II. Healthrest™ Proprietary Components

    a. Sensora Design

III. Other Proprietary Components

    a. national ticking as identified on RMC specifications sheets

RMC:06012007.15