# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ROYAL SLEEP PRODUCTS, INC., a Florida Corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 07 C 6588 |
| RESTONIC CORPORATION, an Illinois Corporation, RESTONIC MATTRESS CORPORATION, an Illinois Corporation, SLEEP ALLIANCE, LLC, a Delaware Limited Liability Company, ROYAL BEDDING COMPANY OF BUFFALO, a New York Corporation, JACKSON MATTRESS CO. LLC, a North Carolina Limited Liability Company, CONTINENTAL SILVERLINE PRODUCTS L.P., a Texas Limited Partnership, STEVENS MATTRESS MANUFACTURING CO., a North Dakota Corporation, TOM COMER, JR., an individual, DREW ROBINS, an individual, and RICHARD STEVENS, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Judge Rebecca Pallmeyer |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Restonic Corporation ("Restonic") is the owner of certain patents and trademarks, as well as "programs, services and know-how" relating to the manufacture and sale of mattresses and box springs.  Plaintiff Royal Sleep Products, Inc. ("Royal Sleep") is one of several licensees of these intellectual property rights.  In this action, Royal Sleep claims that Restonic; its subsidiary, Restonic Mattress Corporation (RMC"); and several other Restonic licensees interfered with two significant business opportunities available to Royal Sleep and, in so doing, breached fiduciary obligations that Defendants owed to Royal Sleep.  Several of the Defendants have moved to dismiss the case for lack of personal jurisdiction.  For the reasons stated here, the motions are granted.

**FACTS**

The facts relevant to this motion are the moving parties' contacts with Illinois and the relationship between those contacts and the dispute before the court. As those facts cannot be assessed without some context, however, the court begins by reviewing the factual allegations in the complaint, presumed true at this stage.

**The Parties**[1]

Plaintiff Royal Sleep is a Florida corporation with its principal place of business in Miami, Florida. Complaint ¶ 3. Gary Robinson owns Royal Sleep. *Id.* ¶ 19. Defendant Restonic is a Delaware corporation, and its subsidiary, RMC, is an Illinois corporation; both have their principal places of business in Rosemont, Illinois. *Id.* ¶¶ 4, 5, 18.[2] The remaining Defendants are business associations that, like Plaintiff, are licensees of Restonic, as well as their owners: Jackson Mattress Co., LLC is a North Carolina limited liability company whose sole manager, Defendant Tom Comer, is a New York resident. *Id.* ¶¶ 7, 11, 21; Jurisdictional Statement, [Docket No. 9], ¶ 7. Royal Bedding Company of Buffalo is a New York corporation, also owned by Mr. Comer, with its principal place of business in Buffalo, New York. Complaint ¶¶ 8, 20. Continental Silverline Products, L.P. is a limited partnership located in Houston, Texas, whose managing partner, Drew Robins, resides in Texas. *Id.* ¶¶ 9, 22; Jurisdictional Statement ¶ 9. Plaintiff alleges that Defendant Stevens

---

[1]	Plaintiff invokes the court's diversity jurisdiction, but its complaint did not set forth the citizenship of every party in this case. The court's effort to ensure that Plaintiff provide the necessary information was only partly successful, as the Jurisdictional Statement the court ordered [Docket No. 9] does not identify all members of the Defendant LLCs. Defendants have not challenged diversity, however, and the court will direct that the partnership or LLC Defendants identify all of their members within 14 days.

[2]	Plaintiff alleged that Restonic Corporation is an Illinois corporation, but Restonic has denied this. Answer of Restonic Corporation, ¶ 4. The Amended and Restated Sublicense Agreement Plaintiff has submitted likewise recites that Restonic is a Delaware corporation. *See, e.g.,* Amended and Restated Sublicense Agreement, Exhibit D to Plaintiff's Response to Defendants Continental Silverline Products L.P. and Drew Robins' Motion to Dismiss, at 1. As Plaintiff is not a citizen of Delaware or Illinois, this fact is not material to the court's jurisdiction.

Mattress Manufacturing Co. is a North Dakota corporation with its principal place of business in Grand Forks, North Dakota, and is owned by Defendant Richard Stevens, a North Dakota resident; but Plaintiff also alleges that Stevens Mattress Manufacturing, Inc. (despite the slight difference in its name, apparently the same entity as Stevens Manufacturing Co.), owned by Mr. Stevens, is located in Grand Rapids, Michigan. Complaint ¶¶ 10, 13, 23. The complaint alleges that the four licensee Defendants—Jackson Mattress, Royal Bedding, Continental Silverline and Stevens Mattress, and their owners—formed Defendant Sleep Alliance, LLC as a "strategic alliance." *Id.* ¶24. Sleep Alliance is a Delaware limited liability company whose members—Comer, Robins, and Stevens—are residents of New York, Texas, and North Dakota, respectively. Jurisdictional Statement ¶ 6.

**Plaintiff's License Rights**

Royal Sleep enjoys the right to use Restonic's patents, trademarks and know-how through a sublicense agreement with RMC. Complaint ¶ 26.[3] The sublicense grants Plaintiff the right to enjoy RMC's services—including advertising services, recommendations, marketing information and data processing service—on the same terms as are available to all other licensees. *Id.* ¶ 63. Plaintiff alleges that when Royal Sleep executed a sublicense agreement with RMC in April 2001, Plaintiff's owner, Mr. Robinson, relied on "written and oral assurances" that Royal Sleep "would operate the only manufacturing facility [presumably for Restonic products] in the State of Florida." *Id.* ¶ 25. In addition to the sublicense agreement, Royal Sleep alleges that it "also became a signatory to the Restonic National Account Program." *Id.* ¶ 27. According to Royal Sleep, that program "mandates that with respect to national accounts obtained by Restonic, the Restonic licensee whose manufacturing facility is geographically the closest to the product shipping location"

---

[3] Although Plaintiff has not explained this, the court presumes that RMC holds a license from Restonic; hence, Plaintiff's rights in the Restonic patents, trademarks, and know-how come through a sublicense rather than a direct agreement with Restonic.

will ordinarily be the licensee who will serve the customer. *Id.* Plaintiff and the Defendant sublicensees are also owners of shares of RMC: Plaintiff owns 15 of the 345 shares; Jackson Mattress owns 60 shares; Royal Bedding owns 15 shares; Continental Silverline owns 60 shares; and Stevens Mattress owns 45 shares. *Id.* ¶¶ 19-23, 32.[4]

**Formation of Sleep Alliance**

Sometime in 2002, Tom Comer, the owner of Defendants Jackson Mattress and Royal Bedding, purchased the rights to Restonic licenses in North Carolina; Tampa, Florida; and Jacksonville, Florida, as well as a warehouse in Jacksonville. *Id.* ¶ 28. Also in 2002, Mr. Comer met with Mr. Robinson, Plaintiff's owner, at a tradeshow in Nashville, Tennessee. Through Mr. Robinson, Plaintiff made an offer to purchase the licenses for Jacksonville and Tampa, and the Jacksonville warehouse. *Id.* ¶ 29. Comer rejected the offer, and allegedly announced his intention to push Plaintiff out of business in Florida and make Mr. Robinson "'regret the day he heard the Restonic name.'" *Id.* ¶ 30.

Four years later, sometime in the summer of 2006, Mr. Comer, Mr. Robins, and Mr. Stevens (the owners of Jackson Mattress, Royal Bedding, Continental Silverline, and Stevens Mattress) formed a limited liability company, Sleep Alliance, LLC. *Id.* ¶ 31. Plaintiff alleges that the combined total of their RMC shares was 180, making Sleep Alliance "the majority [52%] shareholder of Restonic and RMC." *Id.* ¶ 32.[5] Sleep Alliance allegedly fired Carlene Evenson from her position as President of Restonic and replaced her with a personal friend of Mr. Comer's, Steve Russo. *Id.* ¶ 33. Sleep Alliance also voted in two members of the RMC board of directors: Dan Cantor and

---

[4]     As RMC is alleged to be a subsidiary of Restonic (Complaint ¶ 18), the court would presume that Restonic owned a controlling interest in RMC and, therefore, is puzzled by the allegations that Plaintiff and the three entity Defendants together own more than half the shares of RMC.

[5]     As noted, RMC's sublicensees allegedly own a controlling interest in RMC. The Complaint does not explain how ownership in RMC gave Sleep Alliance an ownership interest in RMC's purported parent, Restonic, as well.

Adam Weinman; Weinman soon resigned and was replaced by Mr. Comer himself.  *Id.* ¶¶ 34, 35.

**Negotiations with Mattress Giant**

Plaintiff alleges that before Sleep Alliance took control of RMC, RMC had been negotiating with Mattress Giant.[6]  *Id.* ¶ 36.  Donna Favia, vice president of sales for RMC, announced at a Restonic licensee meeting in July 2006 that the negotiations were going well, and that "RMC had several meetings with Mattress Giant . . . to show Mattress Giant some product samples" (the complaint does not reveal who participated in these meetings), including a meeting at a facility in Houston owned by Mr. Robins.  *Id.* ¶ 37.  Plaintiff alleges that a successful agreement with Mattress Giant would have benefitted all Restonic licensees, including Plaintiff, because orders placed by Mattress Giant would be filled by the Restonic licensee whose facilities were closest to the Mattress Giant warehouses.  *Id.* ¶ 38.  Plaintiff alleges that soon after the Houston meeting, Sleep Alliance "interfered with these negotiations and took over the negotiations from RMC corporate on its own behalf."  Plaintiff claims that "According to Mr. Comer, . . . [a Sleep Alliance/Mattress Giant deal] would be for the benefit of Sleep Alliance and not RMC and the Restonic licensees."  *Id.*  ¶ 39.  The complaint does not say when or where Mr. Comer expressed this view; it does allege that Sleep Alliance's conduct in "usurping the benefit of the Mattress Giant deal" was a breach of fiduciary duty to Restonic's licensees.  *Id.* ¶ 40.

**Plaintiff's Overtures to Become Lady Americana's Supplier to Mattress Giant**

On July 7, 2007, Lady Americana, which, like RMC, is a group of mattress manufacturing licensees, entered into an agreement to sell its mattresses to Mattress Giant.  *Id.* ¶ 42.  When he heard this news, Mr. Robinson contacted Lady Americana's president, Kerry Tramell, offering to manufacture the Lady Americana Product for Mattress Giant (a move that presumably would have

---

[6]        Although Plaintiff does not explain this, the court understands that Mattress Giant is a bedding retailer.  *See* http://www.descartes.com/resources/case_studies/08mar_cs_mattress_giant.pdf*, last visited February 2, 2009.*

required Plaintiff to become a Lady Americana licensee). *Id.* ¶ 43. Mr. Tramell asked Mr. Robinson to meet with him and other executives in Oklahoma. *Id.* ¶ 44. One day before the planned visit, Mr. Comer called Mr. Robinson and asked whether Royal Sleep intended to become a Lady Americana licensee; Comer did not reveal how he had learned about Robinson's overtures to Lady Americana. *Id.* ¶ 45. Mr. Robinson's July 10 meeting with Lady Americana executives "went well" until Mr. Trammell disclosed that "Mattress Giant" had said "negative things" about Plaintiff; Mr. Trammell nevertheless expressed interest in touring Plaintiff's Miami facility. *Id.* ¶¶ 46, 47. Steve Booker, Lady Americana's sales manager, did tour Plaintiff's Miami facility on July 21, 2007, and was favorably impressed; he disclosed that the source of the negative comments about Plaintiff was "someone at Restonic, . . . likely Mr. Comer." *Id.* ¶ 48. In a conversation with Mr. Robinson the following day, Mr. Robins acknowledged he had heard similar negative comments about Plaintiff "from Mattress Giant but was unaware of the source." *Id.* ¶ 49. Plaintiff alleges that Mr. Comer's "negative comments" included false statements that Plaintiff was liquidating its business, did not meet product specifications or honor warranties, and was in jeopardy of losing its license with Restonic. *Id.* ¶ 50. Mr. Comer's negative comments caused Plaintiff to lose the opportunity to enter into an agreement with Mattress Giant. *Id.* ¶ 52. On September 11, 2007, Mr. Robinson learned that Sleep Alliance personnel were attempting to negotiate an agreement between Sleep Alliance and Mattress Giant. *Id.* ¶ 53.

On October 19, 2007, Mr. Robinson contacted RMC's Vice President of Sales, Donna Favia, and urged that RMC pursue negotiations with Mattress Giant. *Id.* ¶ 64. Ms. Favia responded by saying she "had to consult with Mr. Russo" regarding this request. *Id.* ¶ 65. Because Mr. Russo had significant contacts in the mattress business, Mr. Robinson asked him to pursue certain other "bedding accounts" for RMC, including one the complaint refers to as "Famous Tates." *Id.* ¶ 66. In violation of his obligation to assist Plaintiff, a Restonic licensee, Mr. Russo refused to contact Famous Tates, telling Mr. Robinson that Mr. Comer was interested in pursuing that customer. *Id.*

¶ 67. (Whether Famous Tates was geographically closer to Plaintiff's facility or to one owned by Mr. Comer is not clear from the complaint.)

**Failed Buyout Negotiations**

In the fall of 2006, Plaintiff alleges, "Sleep Alliance toured the Miami facility." *Id.* ¶ 41. (Plaintiff does not identify who it was at Sleep Alliance that participated in this tour, nor even identify the owner of the "Miami facility"; the court presumes the reference is to Plaintiff's own facility in Miami.) Deborah Gory of Sleep Alliance reviewed Plaintiff's financial statements, and thereafter, "Sleep Alliance approached Royal [Sleep] with offers" either to purchase Royal Sleep or enter into a "supply agreement" with Royal Sleep. *Id.* ¶ 41. (The Complaint does not identify the individuals on either side of these negotiations, nor does it explain which of the two parties was contemplated to be the supplier in the potential "supply agreement.") Several months later, in August 2007, Mr. Russo "approached Mr. Robinson to determine whether Mr. Robinson" would sell Royal Sleep's business and its 15 shares of RMC stock to Sleep Alliance. *Id.* ¶ 54. (Plaintiff does not explain how Mr. Russo, who was allegedly made President of Restonic, had authority to negotiate for Sleep Alliance.) On behalf of Royal Sleep, Mr. Robinson agreed to accept payment for this transaction "over time." At Mr. Comer's request, Mr. Robinson agreed to provide Royal Sleep's financial statements for review, in return for Mr. Robinson's having access to the Sleep Alliance financial statements. *Id.* ¶ 55.

Sleep Alliance later reneged on its commitment to provide Plaintiff with Sleep Alliance's own financial statements and apparently declined to proceed with its own review of Plaintiff's financial statements, as well, contending (again, Plaintiff does not identify the individual who made this contention) that Sleep Alliance's review of Plaintiff's financials "could potentially expose" one of the parties "to future legal action." *Id.* ¶ 56. In a telephone conversation on September 18, 2007, Mr. Robins broke off the purchase negotiations, telling Mr. Robinson that Sleep Alliance would be opening its own manufacturing facility in Florida in order to do business with Mattress Giant, which,

Mr. Robins claimed, preferred to "do business with a company that owned all of its own factories, as opposed to a licensing group . . . ." *Id.* ¶¶ 57, 58. At some point following this conversation, Sleep Alliance terminated the purchase negotiations by letter. *Id.* ¶ 59. In a later conversation with Mr. Robinson, Mr. Russo acknowledged that it "made no business or economic sense" for Sleep Alliance to open a factory in Tampa, and that Sleep Alliance's decision to do so was "a very bad business move" for Restonic, RMC, and Sleep Alliance itself. *Id.* ¶ 61.

**Plaintiff's Claims**

Plaintiff alleges that these events support several claims. He alleges that Mr. Comer's interference in Plaintiff's negotiations with Lady Americana and Mattress Giant constituted a breach of fiduciary duty (Count I); that the Sleep Alliance/Mattress Giant deal constituted a breach of the fiduciary duty of loyalty on the part of Sleep Alliance, Jackson Mattress, Continental Silverline, Stevens Mattress, Mr. Robins, and Mr. Stevens (Count II); that Sleep Alliance, Jackson Mattress, Continental Silverline, Stevens Mattress, Mr. Robins, and Mr. Stevens aided and abetted Mr. Comer's breach of his fiduciary duty (Count III); that Mr. Comer tortiously interfered with Plaintiff's prospective economic advantage in deals with Lady Americana (Count IV) and with Mattress Giant (Count VI); that Defendants Restonic, RMC, Sleep Alliance, Jackson Mattress, Continental Silverline, Stevens Mattress, Mr. Robins, and Mr. Stevens are guilty of tortious interference (Counts V and VII); that the same Defendants tortiously interfered with Plaintiff's license agreement (Counts VIII and IX); that Defendants Mr. Comer and Jackson Mattress defamed him (Count X); and that Defendant RMC breached the license agreement with Plaintiff (Count X).

The individual Defendants (Comer, Robins, and Stevens) and the businesses they own—Defendants Jackson Mattress, Continental Silverline, Stevens Mattress, and Sleep Alliance—have moved to dismiss the case for lack of personal jurisdiction.[7]

---

[7]      Defendant Royal Bedding has also moved to dismiss the case on this ground. The
(continued...)

**DISCUSSION**

Where jurisdiction is based on diversity of citizenship, a federal court sitting in Illinois has personal jurisdiction only where an Illinois state court would also have jurisdiction. *Citadel Group Ltd. v. Washington Regional Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008). The exercise of personal jurisdiction must comply with the requirements of the Illinois long-arm statute and with state and federal constitutional due process standards. *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997).

The Illinois long-arm statute provides for the exercise of personal jurisdiction to the extent constitutionally permissible under the Illinois and United States Constitutions. 735 ILCS 5/2-209; *see Hyatt Intern. Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (noting that the Seventh Circuit has repeatedly recognized "that there is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction."). Due process under both the Illinois and United States Constitution requires the court to ask whether the nonresident defendants have "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Citadel*, 536 F.3d at 761 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Depending on the nature of a defendant's contacts with the state, the court may assert either "general" or "specific" jurisdiction. *International Medical Group, Inc. v. American Arbitration Assoc., Inc.*, 312 F.3d 833, 846 (7th Cir. 2002). Specific jurisdiction "refers to jurisdiction over a defendant in a suit 'arising out of or related to the defendant's contacts with the forum.'" *Id.* Where a defendant's contacts neither arise out of nor are related to the suit, general jurisdiction exists only if the defendant has "continuous and

[7](...continued)
court notes, however, that Plaintiff has not identified Royal Bedding as a Defendant in any of the ten counts. Royal Bedding's only alleged wrongdoing is its cooperation informing Sleep Alliance; but as Royal Bedding is not even a member of Sleep Alliance, the court concludes Plaintiff has not stated a claim against Royal Bedding, and dismisses the case as against Royal Bedding without prejudice.

systematic general business contacts" in the forum. *RAR*, 107 F.3d at 1277 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)).

The Supreme Court has explained that a defendant has minimum contacts with the forum where two conditions are met. First, a defendant must have "purposefully established minimum contacts within the forum State" such that he would "reasonably anticipate being haled into court." *RAR,* 107 F.3d at 1277 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)). Second, for purposes of specific jurisdiction, the suit must be related to or arise out of a defendant's contacts. *Id.* In considering the necessary degree of relatedness between a defendant's contacts and the subject of the suit, the Seventh Circuit has held that "the action must *directly arise* out of the specific contacts between the defendants and the forum state.'" *RAR*, 107 F.3d at 1278 (7th Cir.1997) (quoting *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir.1995) (emphasis in original)). "Specific jurisdiction is not appropriate 'merely because a plaintiff's cause of action arose out of the general relationship between the parties." *Id.* Defendants' alleged contacts with Illinois arising after this lawsuit was filed are not relevant. See *Reeves v. Baltimore & Ohio R.R. Co.*, 171 Ill. App.3d 1021, 1027, 526 N.E.2d 404, 408 (1st Dist. 1988). With these principles in mind, the court turns to the arguments made by each group of Defendants in support of their challenges to the court's exercise of personal jurisdiction.

## I.      Defendants Continental Silverline and Robins

As against Defendants Robins and Continental Silverline, Plaintiff has asserted five claims: breach of fiduciary duty of loyalty (Count II), aiding and abetting breach of fiduciary duty of loyalty (Count III), tortious interference with prospective economic advantage with Lady Americana (Count V), tortious interference with prospective economic advantage with Mattress Giant (Count VI), and tortious interference with Plaintiff's licensing agreement with RMC (Count IX). (Pl.'s Compl. ¶¶ 75-86, 93-104, 116-120; Continental and Drew Robins' Memorandum of Law in Support of Motion to Dismiss ("Continental Mem.") at 2.)

As noted earlier, Continental owns 60 shares of RMC stock. It is undisputed that Robins and Continental, through its agents, have occasionally been present in Illinois. Robins Dep. 26:10-11, 27:18-28:1, Ex. B (Part 1) to Pl.'s Resp. to Continental; Continental Aff. ¶ 2; Ex. A to Pl.'s Resp. to Continental. Robins acknowledges he personally has visited Illinois some 20 times in his lifetime and "at least four to five times" in the past five years. Pl.'s Resp. to Continental at 2; Robins Dep. 26:10-11, 27:18-28:1. During these visits, he attended Restonic marketing meetings, RMC shareholder meetings, and Sleep Alliance meetings. Robins Dep. 30:10-25, 32:14-17; Russo Dep. 15:10-16:2, 17:10-17, Ex. C to Pl.'s Resp. to Continental. Robins is in telephone contact with Restonic in Illinois "five or six times a year"; Continental Silverline employees are in phone contact "no more than a couple times a month." Robins Dep. 63:1-12. Continental Silverline has also sent two of its employees to Illinois: Brent Ford, a Continental Silverline employee and sales manager for Sleep Alliance, traveled to Illinois "five to seven times" in 2007. Ford Dep. 10:4-5, Ex. B (Part 2) to Pl.'s Resp. to Continental. These visits included meeting with vendors "from other parts of the country." Ford Dep. 22:17-25, 29:23-25, 30:6-11. Rosa Ortiz, another employee of Continental Silverline, traveled to Illinois once in 2006 and once in 2007, both times to attend Restonic meetings. Robins Dep. 38:19-24, 39:4-13.

Continental Silverline's contacts with Illinois do not include solicitation of business here. Robins Aff. ¶¶ 4-5, Ex. 2 to Continental Mem. Continental Silverline does, however, buy "point-of-purchase" and marketing materials from Restonic, and sent royalty checks to Restonic in Illinois pursuant to the Sublicense Agreement. Robins Dep. 47:18-21; 48:22-49:9; Sublicense Agreement, Ex. D to Pl.'s Resp. to Continental. Continental Silverline has also sold samples to Restonic for use in showrooms and meetings; at least one of these samples was sent to Illinois. Robins Dep. 49:18-25, 51:4-52:4, 53:9-13; Russo Dep. 63:13-20.

There is also evidence of Continental Silverline's business support for Restonic: For example, Restonic has reimbursed Continental Silverline for travel expenses that Continental

Silverline incurred in sending some of Continental Silverline's own employees to "donate" time at Restonic meetings. Robins Dep. 46:3-22. Restonic has also reimbursed Continental Silverline for $15,000 in expenses that Continental Silverline incurred in performing "fire retardant" tests on certain Restonic mattress products to be sold by all of the licensees. Robins Dep. 60:17-61:10, 61:17-22. At some point, when RMC had a "liquidity problem," Continental Silverline lent RMC funds necessary for development of a showroom in Nevada; Defendants note that the promissory note that RMC signed (the record does not indicate the sum of the loan or when it occurred) was negotiated over the telephone and at meetings in Houston, Texas. Pl.'s Resp. to Continental at 4; Robins Dep. 23:15-21, 24:4-8. Approximately two to five years ago, Restonic paid Continental Silverline on commission to provide bedding products to certain customers. Robins testified that he was unsure of the exact dates of these commissions or whether the customers were from Illinois, however, and pointed out that Restonic had not compensated Continental Silverline for this type of work for at least two years. Robins Dep. 64:13-65:24.

A. **Minimum contacts analysis**

Plaintiff contends this evidence of Continental Silverline's and Robins's "extensive" business transactions in Illinois establishes that the exercise of personal jurisdiction is proper under the Illinois long-arm statute. Plaintiff recites in support of this argument the following acts by Continental Silverline and/or Robins: (1) shipping bedding samples to Restonic in Illinois, (2) RMC's execution of a promissory note in favor of Continental Silverline, (3) the Sublicense Agreement between RMC and Continental Silverline, expressly governed by Illinois law, (4) Continental Silverline's ownership of RMC stock, (5) travel by Continental Silverline employees to Illinois to attend RMC and Restonic meetings, and (6) Continental Silverline's transaction of business with RMC and Restonic via mail and telephone. (Pl.'s Resp. to Continental at 11.)

Plaintiff has not forcefully argued that these activities constitute "doing business" such that Continental Silverline may be viewed as a resident of Illinois, subject to general jurisdiction. *See*

*Kostal v. Pinkus Dermatopathology Lab., P.C.*, 357 Ill. App.3d 381, 385, 827 N.E.2d 1031, 1035 (1st Dist. 2005) (explaining that an entity "doing business" in Illinois is subject to general jurisdiction, while the "transaction of business," a lesser standard, supports only specific jurisdiction). Defendants insist that Plaintiff has not explained how any of the actions it identifies actually give rise to the claims presented in this case. *See* 737 ILCS 5/2-209(a); *RAR*, 107 F.3d at 1278; *Spartan Motors, Inc. v. Lube Power, Inc.*, 337 Ill. App. 3d 556, 561, 786 N.E.2d 613, 618 (2d Dist. 2003) ("In specific jurisdiction cases, the action must directly arise out of the contacts between the defendant and the forum."). The court agrees. Plaintiff's claims do not relate to specific provisions of the Sublicense Agreement with RMC or the promissory note–both of which are contracts between Continental Silverline and RMC, not Plaintiff. Plaintiff relies on an unreported decision in which the court asserted personal jurisdiction based on a loan agreement performed in Illinois and containing an Illinois choice-of-law provision. *See Bank of Montreal v. McKenzie Methane*, No. 93 C 3610, 1993 WL 420985, at *5 (N.D. Ill. Oct. 18, 1993). That suit, however, alleged a breach of the very agreement containing the Illinois choice-of-law provision; 1993 WL 420985, at *1; in any event, numerous cases hold that a choice-of-law clause in an agreement does not by itself establish personal jurisdiction even over parties to the agreement. *See Commercial Coin Laundry Systems v. Loon Investments, LLC*, 375 Ill. App.3d 26, 33, 871 N.E.2d 898, 905 (1st Dist. 2007). Although Continental Silverline's fiduciary obligations to Plaintiff arise (if at all) from the fact that both are licensees and shareholders in RMC, the exercise of specific jurisdiction is not appropriate merely because the plaintiff's claim arose out of the parties' general relationship as shareholders of RMC. Plaintiff has not alleged a breach of Continental Silverline's Sublicense with RMC and would lack standing to do so. Defendants' conduct is simply too far removed from Plaintiff's causes of action for Defendants to have reasonably anticipated being haled into federal court in Illinois.

Plaintiff's reliance on *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 281 (7th Cir.1990), is similarly misplaced. In *Heritage House*, plaintiff, an Illinois

corporation, sued the nonresident defendant for breach of contract. Although the defendant had never been physically present in the state, it had solicited business in Illinois by initiating contact with the plaintiff and then maintaining a relationship with the plaintiff for more than a year. *Id.* 283-84. The court was willing to exercise personal jurisdiction because the defendant knew it was dealing with an Illinois business and because the allegedly tortious acts were based on defendant's phone conversations with the Illinois company. Here, in contrast, Continental Silverline and Robins's phone and mail contact with RMC are extraneous to Plaintiff's claims, and Plaintiff itself is not located here.

Plaintiff also argues that personal jurisdiction over Continental and Robins is proper because they "regularly send their principals and employees to Illinois to conduct business meetings." Pl.'s Resp. to Continental at 9. Plaintiff cites *Scovill Manufacturing Co. v. Dateline Electric Co., Ltd.*, 461 F.2d 897 (7th Cir.1972), in support, arguing that sending employees into Illinois satisfies the "transacting business" prong of Illinois' long-arm statute. Plaintiff's reasoning suffers from the same deficiency as its application of *Heritage House*: the dispute in *Scovill* arose directly from the defendant's forum contacts. 461 F.2d at 900. In *Scovill*, the defendant sent employees to Illinois trade shows for the purpose of contacting new customers and soliciting contracts. Defendant's agents first met with plaintiff at one of these trade shows; subsequently, the parties met three times in Chicago and entered into a contract, the terms of which were negotiated in Chicago, New York, and Connecticut. *Id.* at 898. The litigation arose from a dispute over performance of that very contract. *Id.* Continental Silverline and Robins in contrast, did not travel to Illinois to solicit business; and the agreements between Continental Silverline and RMC, even if they were negotiated here, are at best tangential to Plaintiff's claims. Plaintiff thus fails to show specific personal jurisdiction under the "transaction of any business" prong of Illinois' long-arm statute. *Cf. Craig v. First Web Bill, Inc.*, No. Civ. A. 04-CV-1012 DGT, 2004 WL 2700128, at *7-8 (E.D.N.Y. Nov. 29, 2004) (under New York law, the mere transaction of business is insufficient to

exercise long-arm jurisdiction where there was "no articulable nexus between any of [defendant]'s activities in and with New York, and the claims asserted by plaintiff").

**B.    Continental's Ownership Interest in RMC**

Plaintiff argues, without any citation to legal authority, that personal jurisdiction over Continental Silverline and Robins is nevertheless proper because Continental Silverline owns 60 shares of RMC stock and is a member of Sleep Alliance, which owns a majority of all outstanding RMC shares.  Pl.'s Resp. to Continental at 10.  Subsection 10(a) of Illinois' long-arm statute allows the exercise of specific personal jurisdiction where the cause of action arises from "[t]he acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired."  735 ILCS 5/2-209(a)(10).  Constitutional due process, however, prohibits extending personal jurisdiction over defendants for mere stock ownership, without a showing that the defendant "exercise[d] an unusually high degree of control" over the corporation.  *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000).  Continental Silverline's 60 shares constitute a minority stake in RMC, and Plaintiff does not attempt to argue that Continental Silverline exercises substantial control over RMC.  Rather, Plaintiff seems to suggests that Continental Silverline's membership in Sleep Alliance somehow gives Continental Silverline a controlling interest in RMC, but fails to identify any facts in support of this theory.[8]  (Pl.'s Resp. to Continental at 10.)  This inference, without more, is insufficient as a basis for personal jurisdiction based on stock ownership in a corporate co-defendant.

**C.    Alleged Tortious Conduct in Illinois**

Finally, Plaintiff contends that the court may exercise specific personal jurisdiction over Continental Silverline and Robins because they "breached the fiduciary duties owed by them within

---

[8]      As discussed *infra*, Plaintiff has not even pressed the "controlling shareholders" basis for personal jurisdiction against Sleep Alliance itself.

the State of Illinois" by tortiously interfering in Plaintiff's negotiations with Mattress Giant. Pl.'s Compl. ¶ 2. In arguing for personal jurisdiction, Plaintiff alleges that "[s]ometime in late July, early August 2006, Sleep Alliance, through Mr. Comer, informed [Plaintiff] that if a deal was reached with Mattress Giant . . . it would be for the benefit of Sleep Alliance and not RMC and its stockholders." Pl.'s Compl. ¶¶ 76-77. In expressing this intent, Plaintiff argues, not only Defendant Sleep Alliance, but also Jackson Mattress, Continental Silverline, Stevens Mattress, Robins and Stevens, as majority shareholders of RMC, breached their fiduciary duty to Royal Sleep to refrain from unethical self-dealing. Pl.'s Compl. ¶ 78. Plaintiff alleges that the breach was "further compounded" on September 11, 2007, when Comer admitted that Robins and Sleep Alliance's sales manager, Brent Ford, "were meeting with Mattress Giant to discuss a business arrangement between the parties." Pl.'s Compl. ¶ 78. Plaintiff claims that Continental Silverline and Robins, as RMC shareholders, breached their fiduciary duty to Plaintiff (Count II) or, in the alternative, that they aided and abetted Comer's breach (Count III).

Illinois' long-arm statute authorizes specific personal jurisdiction over litigation arising out of "[t]he breach of any fiduciary duty within this State." 735 ILCS 5/2-209(a)(11). Plaintiff suggests the court infer a fiduciary duty on the part of Continental Silverline and Robins due to their minority stake in an entity (Sleep Alliance) that holds a controlling share in RMC. At the very least, Plaintiff suggests, the court can infer such a duty on the part of Comer as a member of RMC's board. Without endorsing Plaintiff's assumption that any such duty exists, the court simply observes that nothing in the complaint identifies any activities in Illinois that relate to the alleged breach of fiduciary duty. Plaintiff has alleged generally that Mr. Robins and Mr. Ford traveled to Illinois for business meetings and that Continental Silverline had e-mail and telephone contact with Restonic and RMC in Illinois; but Plaintiff does not suggest that any of these contacts relate to the alleged breach of fiduciary duty. In fact, there is no indication that any of Defendants' alleged tortious interference or the resulting breach occurred in Illinois, rather than Texas, for instance (where

Continental is located), North Carolina (where Comer's company Jackson Mattress is located), or any state in which Mattress Giant does business. (*See* Pl.'s Compl. ¶¶ 21, 22, 38-40, 76-79.) *See Santora v. Starwood Hotel & Resorts Worldwide, Inc.*, 580 F. Supp.2d 694 (N.D. Ill. 2008) (Moran, J.) (noting that other states with whom defendant has minimum contacts are appropriate fora).

Plaintiff has failed to allege sufficient minimum contacts in Illinois for this court to exercise specific jurisdiction over Continental Silverline and has made no effort at all to make the case that the court has personal jurisdiction over Robins. Their motion to dismiss will be granted.

## II.     Defendants Stevens Mattress and Stevens

Plaintiff's argument for personal jurisdiction over Stevens Mattress and Stevens is similar both factually and legally to its argument for jurisdiction over Continental Silverline and Robins. Plaintiff alleges five causes of action against Stevens Mattress and Mr. Stevens: breach of fiduciary duty of loyalty (Count II), aiding and abetting breach of fiduciary duty of loyalty (Count III), tortious interference with prospective economic advantage with Lady Americana (Count V), tortious interference with prospective economic advantage with Mattress Giant (Count VI), and tortious interference with Plaintiff's licensing agreement with RMC (Count IX).

Stevens is the owner and president of Stevens Mattress, a North Dakota corporation located either in Grand Forks, North Dakota, or Grand Rapids, Michigan, and a Restonic sub-licensee. Stevens Aff. ¶ 4, Ex. C to Stevens Mot.; Stevens Dep. 16:1-9, Ex. A to Plaintiff's Resp. to Stevens Mot.; Stevens Mattress Aff. ¶ 4-6, Ex. B to Stevens Mot. Stevens Mattress has never had offices in Illinois, has no bank accounts or property in Illinois, and has not "direct[ed] its advertising" to Illinois. Stevens Mattress Aff. ¶¶ 6, 10, 12-14. Stevens Mattress owns 45 shares of stock in RMC, but Stevens himself is not a director. Stevens Mattress Aff. ¶ 7; Stockholders of Restonic and RMC Chart, Ex. B to Pl.'s Resp. to Stevens.

Stevens visited Illinois "usually once a year" to attend Restonic meetings. Pl.'s Resp. to Stevens at 2; Stevens Dep. 26:2-11. Mr. Stevens also visited Illinois on behalf of Stevens Mattress

in 2004, 2005, 2006, and 2007 as a member of Restonic's "product development committee," the sole purpose of which was to research the "different flammability products." Stevens Dep. 46:7-47:11, 78:7-79:17. The record does not make clear how often the committee met. As an RMC licensee and shareholder, Stevens Mattress has sent Ken Akers, a Stevens Mattress employee, to Illinois to attend "product, marketing, manufacturing, and other Restonic meetings" at least twice in 2007. Pl.'s Resp. to Stevens at 3; Stevens Dep. 54:11-55:10, 56:13-22, 57:7-25. Stevens Mattress has also sent Stevens and other employees to Illinois for job training. Stevens Dep. 52:20-53:12.

Like Plaintiff, Stevens Mattress has a Sublicense Agreement with RMC, under which it sends checks to Illinois. Pl.'s Resp. to Stevens at 3; Stevens Dep. 36:10-11, 40:5-41:13,. It also purchases "point-of-purchase" and marketing materials from Restonic, and, like other licensees, is reimbursed by Restonic for any traveling expenses incurred for trips to meetings in Illinois. Stevens Dep. 36:16-24, 55:21-24; Russo Dep. 55:21-24, Ex. C to Pl.'s Resp. to Continental. The record also shows that Stevens Mattress has made sales to a customer, Stylution USA, which has its principal place of business in Lake Zurich, Illinois, and sent invoices to Stylution's Illinois office; but there is no evidence that Stevens Mattress shipped the products themselves to Illinois. Stevens Dep. 57:23-25, 58:10-59:1, 58:9-14, 60:13-61:1.

Finally, Stevens Mattress has hired three Illinois companies for certain services: B&C International, a Willowbrook, Illinois company, "locates products in China for Stevens Mattress to purchase and import into the United States for its business." Pl.'s Resp. to Stevens at 4; Stevens Dep. 70:20-71:25. A. Lava & Son Company of Chicago provides Stevens Mattress with "supplies necessary to run" its mattress business. Pl.'s Resp. to Stevens at 4; Stevens Dep. 66:12-19, 67:1-21. And Stevens Mattress has used Evenson Peterson Consulting, also located in Illinois, "to upgrade [its] software system." Stevens Dep. 62:12-63:13.

Plaintiff's arguments for personal jurisdiction over Stevens Mattress and Stevens rest on the following circumstances:

- The RMC Sublicense Agreement's Illinois choice-of-law provision

- Stevens Mattress's monthly licensing fee payments to RMC in Illinois

- Stevens Mattress's monthly report of Restonic sales to RMC in Illinois

- Stevens Mattress's minority stock ownership in RMC, an Illinois corporation

- Stevens and Stevens Mattress's alleged tortious interference in Plaintiff's business relationships and breach of fiduciary duty under the RMC Sublicense Agreement

- Stevens Mattress employees' and Stevens's unrelated dealings in Illinois and with third parties located in Illinois

Pl.'s Resp. to Stevens at 7-9. For reasons similar to those explained earlier, Plaintiff has failed to explain how any of Stevens's or Stevens Mattress's Illinois contacts relate to the subject matter of this lawsuit. The RMC sublicense agreement, the monthly licensing fees, and the monthly sales reports might well support the exercise of personal jurisdiction over Stevens in an action by RMC to enforce the Sublicense agreement; they do not support the conclusion that specific jurisdiction is available in this case. As in the case of Continental Silverline and Robins, the conduct giving rise to the alleged torts did not occur in Illinois, and the alleged injury presumably occurred in Florida, where Plaintiff is located. And although the Complaint identifies certain action taken by Mr. Robins in connection with the Mattress Giant negotiations (none in Illinois), it says nothing at all about any conduct on the part of Mr. Stevens himself.

The court therefore declines to exercise specific jurisdiction over Defendants Stevens or Stevens Mattress.

## III.    Defendants Royal Bedding, Jackson Mattress, Sleep Alliance, and Comer

Finally, Royal Bedding, Jackson Mattress, Sleep Alliance, and Comer (CEO and owner of Royal Bedding and Jackson Mattress and CEO of Sleep Alliance) also move for dismissal based

on lack of personal jurisdiction.  Plaintiff alleges against Comer: breach of fiduciary duty of loyalty (Count I), tortious interference with prospective economic advantage with Lady Americana (Count IV), tortious interference with prospective economic advantage with Mattress Giant (Count VI), tortious interference with Plaintiff's Sublicense agreement with RMC (Count VII), and, against both Comer and Jackson Mattress, defamation (Count X).  Against Jackson Mattress and Sleep Alliance, Plaintiff alleges: breach of fiduciary duty (Count II), aiding and abetting breach of fiduciary duty (Count III), tortious interference with prospective economic advantage with Lady Americana and Mattress Giant (Counts V and VII), and tortious interference with Plaintiff's Sublicense agreement (Count IX).  As noted earlier, Plaintiff has not alleged any specific claims against Royal Bedding. The court notes, further, that Plaintiff has made no response at all aimed at Sleep Alliance's objections to personal jurisdiction and appears to have forfeited its claim to proceed against Sleep Alliance in Illinois.

Jackson Mattress is located and incorporated in North Carolina.  Jackson Aff. ¶¶ 2-3, Ex. 4 to Comer Mem.  Jackson Mattress is a Restonic licensee and owns 60 shares of RMC stock. Pl.'s Resp. to Sleep Alliance, Royal Bedding, Jackson Mattress and Tom Comer's Mot. to Dismiss ("Pl.'s Resp. to Comer") at 2; Stockholders of RMC chart, Ex. B to Pl.'s Resp. to Comer.  Jackson Mattress has never sold products in Illinois, owned land in Illinois, advertised in Illinois, owned a bank account in Illinois, or sent employees to sell products in Illinois.  Royal Aff. ¶¶ 4-7, 9; Jackson Aff. ¶¶ 4-7, 9.

During the summer of 2006, Comer, the owner of both Royal Bedding and Jackson and thus in control of 75 shares of RMC stock, formed Sleep Alliance with Continental Silverline and Stevens Mattress.  The combined interests of these three companies made Sleep Alliance the majority shareholder in RMC.  Pl.'s Resp. to Comer at 2-3.  Comer is the CEO of Sleep Alliance.  Comer Aff. ¶¶ 2-3.  In the fall of 2006, Comer also became a member of RMC's board of directors, and in late 2007, of Restonic's board of directors.  Russo Dep. 21:20-22:7, Ex. C to Pl.'s Resp. to Comer.

Comer participated in meetings with the boards of directors in both companies by telephone; it is unclear from the record how often this took place. Comer Dep. 25:1-2, Ex. A to Pl.'s Resp. to Comer.

Comer and his companies have Illinois contacts substantially similar to the other Defendants whose motions are addressed in this opinion. Comer's office is in Buffalo. He has not sold products in Illinois, advertised in Illinois, owned real estate in Illinois, owned a bank account in Illinois, or attended meetings to sell mattresses in Illinois. Comer Aff. ¶¶ 4, 6-8, 10. Comer testified that he traveled to Illinois five times in 2007 and once in 2006, for Restonic public relations and marketing purposes and for Alliance meetings. Comer Dep. 15:18-25; 62:11-14. On one trip to Chicago in October 2007, Comer and other members of Sleep Alliance met with investment bankers in Chicago to help Sleep Alliance find an equity partner. Comer Dep. 59:14-20, 66:10-11; Russo Dep. 15:6-14, 19:5-11, 65:24, 66:1-4. Plaintiff asserts that in addition to Comer, "members and employees of all of the Defendants" attended the Chicago meeting, but the portions of Comer's and Russo's depositions that Plaintiff cites do not support this statement, nor does Plaintiff offer other evidence to support it. Pl.'s Resp. to Comer at 3-4. Comer also negotiated sublicensing agreements on behalf of Jackson Mattress with RMC and Restonic. Comer Dep. 38:19-25, 41:8-12, 43:12-14, 45:11-17, 46:16-24. The negotiations were conducted by telephone, and the documents containing these agreements were mailed to Restonic and RMC. Comer Dep. 38:13-18, 41:13-15, 43:3-5.

Defendants' alleged activities in Illinois are similar to those alleged of Continental Silverline and Stevens Mattress. Like Continental Silverline and Stevens Mattress, Royal Bedding and Jackson Mattress negotiated an amended Sublicense Agreement in 2007 with RMC over the phone and then sent the executed documents to RMC through the mail. Exs. D and E to Pl.'s Resp. to Comer; Comer Dep. 46:16-24. Like the other RMC licensing agreements, Jackson Mattress's agreements had an Illinois choice-of-law provision. Ex. D to Pl.'s Resp to Comer. Comer has also

executed stockholder agreements with RMC on behalf of Jackson Mattress, also negotiated over the phone.  Comer Dep. 46:16-24.  Jackson Mattress also sends sales reports and royalty payments to RMC in Illinois.  Comer Dep. 55:1-23.  Like Continental Silverline and Stevens Mattress, Jackson Mattress purchases "point-of-purchase" materials and marketing materials from Restonic.  Comer Dep. 54:1-8.

Jackson Mattress employees have traveled to Illinois.  Jackson Mattress sent its president, Randy Bancroft, to Illinois four times in 2007, once for fire-retardancy testing of Jackson Mattress's product and three times for certification of Jackson's product to meet the new federal fire regulations.  Comer Dep. 33:1-20.  Bryan Easterly, CFO of Jackson Mattress, was sent twice in 2007, first with Bancroft to the fire-retardancy testing meeting and then to the Sleep Alliance business review session with Comer.  Comer Dep. 33:21-2, 34:1-8.  Finally, like Stevens Mattress, Jackson Mattress has used Illinois-based companies for certain products and services, including computer supplies and credit reports.  Comer Dep. 74:15.  Resolving all factual ambiguities in favor of Plaintiff, it is also possible that Jackson Mattress once shipped a mattress into Illinois using an Illinois moving company.  Comer Dep. 77:24-27, 79:2-10, 92:17-25, 93:1-7.

## A.    Minimum contacts analysis

Plaintiff's argument with respect to Jackson Mattress suffers from the same defects identified above.   Plaintiff relies on the following circumstances in support of the exercise of personal jurisdiction:

- The RMC Sublicense Agreement's Illinois choice-of-law provision

- Jackson Mattress's monthly licensing fee payments to RMC in Illinois

- Jackson Mattress's monthly report of Restonic sales to RMC in Illinois

- Jackson Mattress's minority stock ownership in RMC, an Illinois corporation

- Jackson Mattress's tortious interference in Plaintiff's business relationships and breach of fiduciary duty under the RMC Sublicense Agreement

- Jackson Mattress's unrelated dealings in Illinois and with third parties located in Illinois

Pl.'s Resp. to Stevens at 7-9. Again, Plaintiff does not argue that Jackson Mattress is "doing business" generally in Illinois. For all of the reasons discussed earlier, these alleged Illinois contacts are not directly related to the claims in this lawsuit, and do not satisfy the court that there are sufficient minimum contacts to justify the exercise of personal jurisdiction over Defendant Jackson Mattress.

### B.     Individual Claims against Comer

Plaintiff additionally alleges that Comer and Jackson Mattress "wrongfully and improperly committed tortious activity in Illinois" through their alleged defamatory statements about Plaintiff and through Comer's interference with Plaintiff's relationships with Mattress Giant and Lady Americana. Pl.'s Resp. to Comer at 11. There is no evidence, however, that Comer or Jackson Mattress committed any of these alleged torts in Illinois. Comer denies having any meetings with Mattress Giant in Illinois, and further notes that there is no allegation of any telephone contact in Illinois. Comer Reply at 10; Comer Dep. 86-88. Plaintiff has failed to meet his burden of pleading facts sufficient to support personal jurisdiction on this basis.

Finally, Plaintiff asserts that Comer is subject to personal jurisdiction in Illinois as a member of the RMC board of directors since 2006 and of the Restonic board since 2007. Pl.'s Resp. to Comer at 12. Subsection(a)(12) of the Illinois long-arm statute extends personal jurisdiction over a defendant when the litigation arises from "the performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State." 735 ILCS 5/2-209(a)(12). Citing *People ex rel. Morse v. E&B Coal Co., Inc.*, 261 Ill. App.3d 738, 746, 634 N.E.2d 436, 441 (5th Dist.1994), Plaintiff argues that the court can exercise personal jurisdiction over Comer because, as a member of the RMC and Restonic boards, Comer knew that RMC and Restonic were Illinois companies that transacted business in Illinois. 261 Ill.

App. 3d at 747, 634 N.E.2d at 443 ("When [defendant] accepted his position as director . . . , he knew or should have known such a position involves business transactions in Illinois."). Pl.'s Resp. to Comer at 12. Plaintiff's claims against Comer do not arise out of RMC's business activities in Illinois; however; instead, Plaintiff claims Comer breached fiduciary duty owed to RMC shareholders, including Plaintiff, by interfering with Plaintiff's negotiations with Lady Americana in Oklahoma and Mattress Giant in Texas or Florida. Pl.'s Compl. ¶¶ 69-74. For this court to properly exercise jurisdiction over Comer, Plaintiff must allege facts showing that Comer's breach of fiduciary duty took place in Illinois. *See West Virginia Laborers Pension Trust Fund v. Caspersen*, 357 Ill. App. 3d 673, 680-682, 829 N.E.2d 843, 849-50 (1st Dist. 2005) (personal jurisdiction improper where none of the acts pertaining to alleged breach of fiduciary duty by board of directors of company headquartered in Illinois took place in Illinois).

Plaintiff's reliance on *Morse* is inapposite here. In that case, the State of Illinois brought a civil suit against a mining company, its controlling shareholders, and its board members, seeking to collect fines for violations of the Surface Coal Mining Land Conservation and Reclamation Act. 261 Ill. App.3d 738, 739-40, 634 N.E.2d 436, 437-38 (5th Dist.1994). The defendant was a resident of California whose Illinois contacts consisted of attending a few board meetings, taking a tour of one of the mines, meeting with Illinois' Director of Mines and Materials, and attending an administrative hearing in Springfield. *Id.* at 742, 439. Reversing the trial court's conclusion that defendant was protected by the fiduciary shield doctrine, the Illinois appellate court focused on the defendant's status as a director who, when he accepted the position, "knew or should have known such a position involves business transactions in Illinois." *Id.* at 747-48, 443. The exercise of personal jurisdiction was proper, in the court's view, because defendant's company transacted business in Illinois and the alleged cause of action arose from those transactions. *Compare Greenspun v. Del. E. Webb Corp.*, 634 F.2d 1204, 1208 (9th Cir. 1980) (under Nevada law, declining to extend personal jurisdiction over directors whose contract with forum state was "limited

to attendance at a shareholders' meeting at which they allegedly acted to divert and mismanage corporate assets.")  In *Morse*, the plaintiff's claims were based on the defendant director's service on the board of a company that did business in Illinois, and the allegedly tortious acts were committed in Illinois.  Defendant Comer's alleged acts involve tortious activities that did not occur in the forum state.  And although RMC and Restonic are named as Defendants in this case, none of Plaintiff Royal Sleep's causes of action involve any alleged business transactions by RMC or Restonic in Illinois.

More on point is *Allman v. McGann*, No. 02 C 7442, 2003 WL 1811531, at *1 (N.D. Ill. April 4, 2003), cited by Defendants.  In *Allman*, a former employee of a WorldCom subsidiary in Illinois sued a vice president of WorldCom under the Illinois Wage Payment and Collection Act for commissions owed under an employment contract.  *McGann*, 2003 WL 1811531, at *1.  Plaintiff alleged that defendant, as vice president of "Corporate Processing Services," had unlawfully frozen the plaintiff's commission account in the course of an audit he authorized.  *Id.*, at *2.  Defendant, a citizen of Mississippi, performed his duties from an office in Mississippi, had never owned property in Illinois, had been to Illinois just once to attend a conference, and had never been in contact with the plaintiff.  *Id.*, at *3-4.  The district court declined to extend personal jurisdiction over the defendant.  *Id.*, at *5. The *Allman* court did not analyze the defendant's forum contacts under the  "specific" or "general" jurisdiction framework, but it was clear that the plaintiff's cause of action arose out of the defendant' s position as, essentially, an accountant for WorldCom.  *Id.*, at *3. Because the plaintiff had not alleged activities in Illinois giving rise to the suit other than the defendant's position as vice president of a company doing business in Illinois, the court refused to extend personal jurisdiction.  *Id.* at *5.

Although none of the Defendants here has cited it, the court notes that *West Virginia Laborers Pension Trust Fund v. Caspersen*, also supports Defendants' objections to the exercise of personal jurisdiction.  357 Ill. App. 3d 673, 829 N.E.2d 843 (1st Dist. 2005).  In *Caspersen*, a

shareholder in a foreign corporation sued the company's board of directors for breach of fiduciary duty following the company's merger with a Delaware corporation whose principal place of business is in Illinois. Plaintiff alleged, in part, that the board had breached their fiduciary duty to shareholders by "(1) failing to ensure the merger materials did not contain material misrepresentations of fact and false statements about Household's finances; (2) failing to conduct a reasonable investigation; and (3) failing to ensure the merger agreement was structured for the benefit of plaintiff." *Id.* at 680, 829 N.E.2d at 849. Even though defendants had attended social dinners with the acquiring corporation in Illinois and the allegedly fraudulent merger materials had been sent to Illinois residents, the court concluded that the exercise of personal jurisdiction over the defendants was improper because the alleged breach had not occurred in Illinois. In support of its conclusion, the court noted that "the alleged fraud did not arise from the sending of the merger materials and defendants' visits to Illinois" but rather from a failure to discover fraud on the part of the acquiring corporation. *Id.*

As in *Allman and Caspersen*, Plaintiff here presents no evidence that his claims against Comer arise from any of Comer's contacts with Illinois. Plaintiff pleads no facts showing that any of the alleged tortious acts, either on Comer's part or RMC's, took place in Illinois. Nor is Plaintiff's mere status as a member of RMC's and Restonic's boards of directors a sufficient basis for personal jurisdiction. *See Caspersen*, 357 Ill. App. 3d at 680-682, 829 N.E.2d at 849-50 (1st Dist. 2005). Plaintiff has not met its burden of asserting facts supporting personal jurisdiction against Comer individually.

## CONCLUSION

For the above reasons, this court grants the motions to dismiss (36, 38, 40) of Defendants Robins, Comer, Stevens, Continental Silverline, Stevens Mattress, Sleep Alliance, Royal Bedding, and Jackson Mattress. The court directs Defendants Jackson Mattress Co., LLC, and Continental Silverline Products, L.P., to satisfy the court's subject-matter jurisdiction concerns by filing, within

14 days, a statement identifying all of their members and the citizenship of those members. Claims against the moving Defendants will then be dismissed without prejudice to actions against those Defendants in any forum having personal jurisdiction over them. The case will proceed as against Defendants RMC and Restonic only.

A status conference is set for February 26, 2009, at 9:00 a.m., at which time the court anticipates discussing its concerns that, as some of Plaintiff's claims appear to be asserted on behalf of RMC or Restonic, Plaintiff may wish to take appropriate steps to proceed in an appropriate forum by way of a shareholders' derivative action.

ENTER:

Dated: February 6, 2009

_____
REBECCA R. PALLMEYER
United States District Judge