## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ROYAL SLEEP PRODUCTS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07 C 6588 |
| ) | |
| RESTONIC CORPORATION and RESTONIC ) | Judge Rebecca R. Pallmeyer |
| MATTRESS CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Dissatisfied with the promotional services rendered by Defendants, Plaintiff Royal Sleep Products, a mattress manufacturer and seller, brings this action for breach of contract against the licensor of patents and trademarks that cover Plaintiff's products. Defendant Restonic Corporation ("Restonic") is the owner of certain patents and trademarks relating to the manufacture and sale of mattresses, box springs, and other bedding products. Defendant Restonic Mattress Corporation ("RMC") is a licensee of Restonic and is authorized to sublicense rights in Restonic's patents and trademarks to third parties.[1] Royal is one such sublicensee. Royal is also a minority shareholder in RMC. Pursuant to a sublicense agreement with RMC, first executed in 2001, Royal has the right to use Restonic's patents and trademarks in connection with the manufacture and sale of mattresses and box springs. Since 2001, the parties have executed three amendments to that agreement, most recently in June 2007. In addition to authorizing the use of Restonic's intellectual property, the sublicense agreement entitles Royal to receive RMC "know-how, programs, and services," as those terms are defined by the contract, on "terms and conditions applicable to other RMC Sublicensees." Royal alleges that RMC breached its obligations under the agreement and that Restonic tortiously interfered with Royal's contractual rights.

---

[1] Plaintiff's initial complaint alleged that RMC was a subsidiary of Restonic. (2007 Complaint, D.E. 1, ¶ 18.) The amended complaint contains no such allegation.

Defendants have moved to dismiss Royal's claims for lack of jurisdiction and for failure to state a claim. For the reasons stated below, the motion to dismiss is granted. RMC simultaneously filed a motion for summary judgment on Count III of Royal's complaint, which, as described more fully below, asserts a distinct breach of contract claim based on the parties' stock restriction agreements. That motion is stricken without prejudice, pending Plaintiff's showing that federal jurisdiction exists in this case.

## **BACKGROUND**

Royal initially filed suit in this court in November 2007, claiming that Restonic, RMC, and other companies had colluded to usurp sales opportunities that rightfully belonged to Royal. In particular, Royal alleged that four other companies with whom RMC did business formed a consolidated corporation, Sleep Alliance, LLC, ("Sleep Alliance"), with the purpose and consequence of depriving Royal of its sales opportunities. In addition to being an RMC sublicensee, Royal is also a minority shareholder of RMC. The various companies that formed Sleep Alliance had held ownership stakes in RMC, and the consolidation of their shares gave Sleep Alliance a controlling interest in RMC.[2] In its previous complaint, Royal asserted that RMC and Sleep Alliance's actions violated fiduciary duties to Royal. Specifically, Royal alleged that Sleep Alliance used its control of RMC to steer lucrative manufacturing deals to itself, at Royal's expense.

In an earlier opinion, this court dismissed Sleep Alliance and several other Defendants for lack of personal jurisdiction. *See Royal Sleep Products, Inc. v. Restonic Corp.*, No. 07 C 6588, 2009 WL 303352 (N.D. Ill. Feb. 6, 2009) ("*Royal I*").[3] In the wake of that ruling, Royal filed an amended complaint, recasting its claims against RMC and Restonic as arising entirely out of

---

[2] Although the Plaintiff has not specifically so alleged, the court assumes that, prior to the consolidation of Sleep Alliance, no single entity controlled an absolute majority of RMC's shares.

[3] The facts alleged in the initial complaint are recounted in greater detail in the Feb. 6, 2009 order.

Royal's sublicense agreement with RMC. In its amended complaint, Royal alleges that the quality of services that RMC rendered under the sublicense agreement has declined. This decline, Royal asserts, coincided with and contributed to the erosion of Restonic's brand and market position and, as a consequence, damaged Royal's sales. Royal asserts five claims against Defendants: Count I is a claim for breach of the sublicense agreement against RMC; Count II alleges that RMC breached an implied covenant of good faith and fair dealing; Count III alleges that RMC breached the stock restriction agreement that governed Royal's ownership of RMC stock; Count IV is a claim against RMC based on promissory estoppel; and Count V is a claim against Restonic for tortious interference with the sublicense agreement. The complaint does not actually specify precisely how RMC breached the sublicense agreement or how Restonic may have induced such a breach. Instead, as set forth below, the complaint identifies several services that RMC once provided to its sublicensees and alleges that the quality of those services (and the value of Restonic's brand) has declined. The complaint does not explain, however, how or whether those services were mandated by the parties' contractual arrangements or when (if at all) Defendants ceased providing the identified services.

In evaluating the sufficiency of the complaint, the court accepts all well-pleaded facts as true and draws all reasonable inferences in Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). As described in the court's previous opinion, Plaintiff's initial complaint left many factual questions unanswered. *See Royal I*, 2009 WL 303352 at *8. The amended complaint similarly makes only general allegations of wrongdoing. The court recounts the facts that are alleged as follows:

Royal became a sublicensee of RMC in April 2001, when the parties first entered into a written sublicense agreement. (Compl. ¶ 9.) That agreement was amended with the mutual assent of Royal and RMC on three separate occasions, most recently on June 1, 2007. (*Id.* at ¶ 10.) Royal's complaint refers to the amendments collectively and asserts that "the prior sublicense

3

agreements and the June 1, 2007 Amended and Restated Sublicense Agreement . . . granted Royal the same or similar rights with respect to Restonic's intellectual property." (*Id.* at ¶ 11.) The complaint does not explicitly state which iteration of the sublicense agreement was in effect at the time of RMC's alleged breach, but the court infers from the preceding sentence that the June 2007 version of the agreement governs Plaintiff's claims. Plaintiff did not attach the sublicense agreement to its complaint, but Defendants have provided the June 2007 agreement as an exhibit to their motion to dismiss. (Sublicense Agreement, Ex. A to Def. Mot.)[4] Royal does not dispute the authenticity of the contract Defendants have provided. The agreement states, in pertinent part:

> During the term of this Agreement and subject to the conditions stated herein, RMC grants to Sub-Licensee [Royal] the right:
>
> (a) to use Restonic Patents and Restonic or RMC Proprietary Components solely in connection with the manufacture at Sub-Licensee Locations and at no other locations . . .
>
> (b) to use Restonic Trademarks, but only in connection with the promotion and sale of RMC Products manufactured at or shipped from a Sub-Licensee Location . . .
>
> (c) to receive and use RMC Know-How and RMC Services on terms and conditions applicable to other RMC Sub-Licensees;
>
> (d) to participate in RMC Programs on terms and conditions applicable to other RMC Sub-Licensees; and
>
> (e) to use the name "Restonic" as part of Sub-Licensee's business name but only in a manner approved in writing by RMC.

(*Id.* at 3-4.) The contract defines "RMC Know-How" broadly as "trade secrets, information, techniques, materials, processes, specifications, and other technical and commercial information either (a) developed by Restonic and licensed to RMC or (b) developed by RMC for use in connection with the manufacture, promotion and sale of Bedding Products." (*Id.* at 3.) "RMC

---

[4] The court may consider the contract on a Rule 12 motion because "documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to his claim." *Continental Cas. Co. v. American Nat'l Ins. Co.*, 417 F.3d 727, 731 n.3 (7th Cir. 2005).

Programs" and "RMC Services" are similarly defined in broad general terms: RMC Programs are defined as "such programs as RMC shall make available from time to time to RMC Sub-Licensees, including advertising and promotional programs, educational programs, purchasing programs and marketing programs and also including all such programs made available by Restonic to RMC." (*Id.*) RMC Services are "such services as RMC shall make available from time to time to RMC Sub-Licensees, including advertising services, recommendations regarding sources of components, marketing information and statistics and data processing services and also including all such services made available by Restonic to RMC." (*Id.*) In return for these rights and benefits, Royal agreed to pay RMC $7,125.00 per calendar quarter or a set percentage of Royal's gross sales, whichever amount was greater.[5] (Id. at 4-5.) Under the contract's choice-of-law provision, the agreement is governed by the law of Illinois. (*Id.* at 14.)

In 2001, when Royal first became an RMC sublicensee, Restonic "was considered one of the seven largest mattress manufactures [sic] in the United States." (Compl. ¶ 6.) "For several years" following the initial April 2001 contract, "and in the performance of its obligations thereunder," RMC offered to Royal "numerous programs and services necessary for the support of Royal, other sublicensees, and the Restonic brand as a whole." (*Id.* at ¶ 15.) Plaintiff describes RMC's offerings during this period in language as general as what appears in the contract: Plaintiff alleges that RMC provided sublicensees with "advertising and marketing programs and related services, educational programs, purchasing programs and discounts, recommendations regarding sources of components, substantive information and statistics regarding industry matters, and well-placed marketing campaigns." (*Id.*) Plaintiff specifically identifies two programs–the "Restonic University" sales training program and the "Ad creator" promotional program–that were particularly

---

[5] The facts in this paragraph are drawn from the contract itself, rather than the complaint, which omits them. The sales percentage formula is complicated and not relevant to this motion, except to say that Royal was typically required to pay between 2.5 and 1 percent of its gross sales earnings per quarter if that amount exceeded $7,125.00.

"instrumental in both supporting the sublicensees and in promoting the Restonic brand." (*Id.* at ¶ 17-18.) The complaint does not allege that RMC was contractually obligated to maintain any specific programs, and the June 2007 sublicense agreement itself makes no explicit reference to the programs. Nor does Plaintiff identify any contractual provision that purports to require RMC to provide any particular program or service indefinitely. Instead, Royal points only to its general contractual entitlement to "know-how, support, programs, and services." (Id. at ¶ 25.)

For at least some time after 2001,[6] RMC and Restonic did allegedly undertake efforts to enhance the Restonic brand, and thereby stimulate sales for Royal and other sublicensees. For example, RMC and Restonic maintained direct mail, television, and print advertising campaigns to promote their products, and they provided marketing materials directly to sublicensees to help promote the products locally. (*Id.* at ¶ 19-20.) Restonic and RMC also employed an "active sales force whose singular purpose was directed at" acquiring new national, regional, and local accounts that would benefit RMC and its sublicensees. (*Id.* at ¶ 16.) In addition, RMC formulated and adopted a "National Account Program" which "from time to time" designated a sublicensee to fill orders from large customers based on the customer's geographic location. (*Id.* at ¶ 21.)[7]

The complaint does not identify the periods during which RMC or Restonic conducted any of the listed activities, nor has Plaintiff even specifically alleged that Defendants have discontinued those activities. Instead, the complaint states only that "as a result of the [unspecified] actions and inactions of Restonic and RMC, the past several years have not been good for the Restonic brand," which declined in market share relative to its closest competitors. (*Id.* at ¶ 22.) Restonic slipped from being "among the top ten bedding brands" to being among the top twenty. (*Id.*) Plaintiff

---

[6] The complaint describes this period only as within the "several years" following 2001.

[7] In its initial complaint, Plaintiff asserted that it was a "signatory" to the National Account Program and that Royal detrimentally relied on unspecified "written and oral assurances" made in connection with that program. *See Royal I*, 2009 WL 303352 at * 2. Plaintiff appears to have withdrawn any such claim in its amended complaint.

blames this decline on a failure of "leadership," asserting that the leaders of Restonic and RMC have "consistently failed to maintain the structure and integrity of the Restonic brand and to otherwise properly support RMC's sublicensees . . . in the development and implementation of meaningful and substantive programs and services necessary to grow the brand . . . ." (*Id.* at ¶ 23.) The complaint cites a "recent marketing study commissioned by Restonic and RMC" that identified sales problems with the brand and "internal dysfunction" within the company. (*Id.* at ¶ 24.)[8]

The complaint goes on to assert that, as a result of a "complete and utter lack of leadership," RMC is "unable or unwilling to comply with its expressed and implied obligations" under the sublicense agreement. (*Id.* at ¶ 25.) Again, the complaint does not identify which "expressed and implied obligations" Defendants have allegedly breached. Instead, Royal alleges generally that RMC has failed to "properly support" the "development and implementation" of "timely, meaningful, and substantive programs and services" that would have assisted Royal's business. (*Id.* at ¶¶ 23, 25.) Based on this language, the court infers that, at some point, RMC and Restonic ceased to provide the services that Royal approvingly describes as having existed in April 2001.

The complaint attributes the negative changes to unspecified "restrict[ions]" imposed by Sleep Alliance, LLC, after that company became RMC's majority shareholder. (*Id.* at ¶ 26.) "The leadership of Restonic and RMC have also acquiesced or otherwise permitted and allowed the Sleep Alliance to dictate strategy and the direction of the company . . . in a manner that otherwise ignores smaller sublicensees." (*Id.* at ¶ 28.) Royal alleges "on information and belief" that Sleep Alliance received "reimbursement from Restonic and/or RMC for expenses relating to products and services made available to Sleep Alliance only. . . ." (*Id.* at ¶ 30.) Precisely what products and

---

[8] Royal does not indicate when the "recent" study took place, who conducted it, or how the researchers arrived at their findings. The complaint merely recounts what Royal asserts the study found. Plaintiff does not explain how, if at all, RMC's brand strength decline and internal operations, which seem to have been the focus of the cited study, actually altered RMC's performance of its contractual obligations to Royal under the sublicense agreement.

services Plaintiff refers to or what entity made those products and services available to Sleep Alliance is unexplained. As best the court can determine, this paragraph suggests that RMC or Restonic reimbursed Sleep Alliance for its expenses for an unspecified service rendered by an unidentified third party.

Royal further alleges that Restonic and RMC "have also allowed and consented to the Sleep Alliance and its members usurping for their own account and pecuniary gain, customers . . . that would have otherwise been available to all sublicensees, including Royal." (*Id.* at ¶ 29.) Specifically, Sleep Alliance engaged in negotiations, allegedly with RMC's consent, "with some of the country's largest mattress and furniture retailers" in a manner "not made available to RMC's sublicensees as a whole." (*Id.*) Royal has not identified any language in the sublicense agreement that grants Royal the right to negotiate with large prospective customers on equal terms as Sleep Alliance. Nor has Royal suggested that Sleep Alliance is itself an RMC sublicensee, subject to the terms and conditions found in the sublicense agreement.

The complaint makes no other general allegations in support of Counts I, II, IV, and V, and the counts themselves are essentially devoid of factual content. For example, Count I of the complaint, which alleges a breach of contract claim against RMC, sets forth the following four allegations: (1) Royal and RMC entered into the sublicense agreement, "a valid, binding, enforceable contract"; (2) RMC breached the contract by "failing to offer and provide Royal with programs, know-how, and services required thereunder"; (3) Royal performed its obligations under the contract by paying fees; and (4) "Royal has suffered damages by reason of the breach . . ." (*Id.* at ¶ 33-36.) The complaint does not explain specifically what is meant by "programs, know-how, and services" and there is no reference to the contractual definition of those terms. The complaint offers no specific instance or example when RMC was contractually obligated to provide any particular service but failed to do so. The complaint contains no explanation of what damages Royal suffered or how any such damages resulted from a contractual breach. The rest of the

counts follow the same pattern, reciting the elements of the claims without factual specificity.

Count III of the complaint presents a separate breach of contract claim against RMC based on a "stock restriction agreement" that governs Royal's ownership of 15 shares of RMC stock. The complaint alleges that the agreement gave RMC's existing shareholders a right of first refusal before any shares could be transferred. (Compl. ¶ 13-14.) Royal alleges that RMC violated this contractual provision when it recognized the transfer of RMC shares to Sleep Alliance. (*Id.* at ¶ 41-45.) RMC has proceeded on a separate motion for summary judgment as to Count III, arguing both that Royal is not a party to the stock restriction agreement and that RMC shares never were, in fact, transferred to Sleep Alliance. (D.E. 86.) According to RMC, the subsidiary companies that formed Sleep Alliance, rather than Sleep Alliance itself, continue to own the disputed RMC shares.

Defendants challenge Royal's allegation of the amount in controversy in this case. They also contend that the complaint fails to provide them with fair notice of the bases for Royal's claims or to raise Royal's right to relief above a speculative level. The court turns now to Defendants' challenges to the sufficiency of the complaint.

## DISCUSSION

### I. Motion to Dismiss Standard

The federal rules teach that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The court accepts a plaintiff's well-pleaded allegations as true and draws all reasonable inferences in the plaintiff's favor. *Tamayo,* 526 F.3d at 1081. Legal conclusions, however, are not entitled to this deference. *Ashcroft v. Iqbal*, ____ U.S. ____, 129 S. Ct. 1937, 1940 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim to relief that is plausible on its face. *Reger Development, LLC, v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (citing *Iqbal*, 129 S. Ct. at 1949.) The complaint must also provide the defendant with fair notice of the claim and its basis. *Windy City*

9

*Metal Fabricators & Supply, Inc. v. CIT Technology Fin. Servs., Inc.*, 536 F.3d 663, 667 (7th Cir 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To meet this threshold, the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (*citing Twombly*, 550 U.S. at 556). A "formulaic recitation of the elements of a cause of action" or "an unadorned, the-defendant-unlawfully-harmed-me accusation," will not satisfy the pleading requirements. *Id.*

**II.    Subject Matter Jurisdiction**

As an initial matter, Defendants challenge Plaintiff's assertion that federal jurisdiction exists. In the absence of subject matter jurisdiction, this court lacks the power to adjudicate any aspect of the case. *See Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009). For subject matter jurisdiction to exist under 28 U.S.C. § 1332, two basic requirements must be satisfied: (1) there must be complete diversity of citizenship between the plaintiff and the defendants, and (2) the amount in controversy must exceed $75,000. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 881 (7th Cir. 2001). There is no dispute that complete diversity of citizenship exists in this case,[9] and Royal has alleged that the amount in controversy exceeds $75,000. (Compl. at ¶ 4.) Defendants contend, however, that Royal has failed to allege the extent of its contractual damages with any specificity, calling into question whether Royal has met the amount-in-controversy requirement. The complaint itself contains no factual content supporting Royal's claim for damages. It states only that "Royal has suffered damages by reason of the breach, for which Royal is entitled to recover actual, compensatory, and consequential damages, including lost future profits." (Compl. at ¶ 36.)

If uncontested, a court generally accepts a plaintiff's good-faith allegation of the amount in

---

[9] Royal is a Florida corporation with its principal place of business in Florida. Restonic is a Delaware corporation with its principal place of business in Illinois. RMC is an Illinois corporation with its principal place of business in Illinois.

controversy unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Where, as here, a defendant challenges the plaintiff's allegation of the amount in controversy, the plaintiff must support its assertion with "competent proof." *Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, 1218 (7th Cir. 1995) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Competent proof has been interpreted to mean a preponderance of the evidence or proof to a "reasonable probability that jurisdiction exists." *NLFC, Inc. v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995); *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009). The plaintiff must come forward and establish that it has satisfied the jurisdictional threshold by doing more than simply pointing to the theoretical possibility of recovery for certain categories of damages. *McMillian,* 567 F.3d at 845.

To meet its burden, Royal has produced the affidavit of Gary Robinson, Royal's owner and sole shareholder. Robinson states that, since June 2007, Royal has paid RMC approximately $7,815 per month as a percentage of its gross sales, and Royal has paid RMC more than $100,000 in licensing fees in the "past two years alone." (Robinson Aff. at ¶ 9.) According to Robinson, Royal seeks "at least the return of licensing fees that it paid to RMC since June of 2007." (*Id.* at 10.) Neither Robinson's affidavit nor Royal's complaint actually identifies when any alleged contractual breach occurred, but Robinson's suggestion that Royal seeks the return of its payments dating to June 2007 is effectively a request that this court rescind the June 1, 2007 sublicense agreement entirely. Yet Royal has never asserted that it seeks or is entitled to equitable rescission. The complaint asks only for an award of compensatory and consequential damages under Royal's breach of contract theory. (Compl. at ¶ 36.) Under Illinois law,[10] the appropriate measure of damages for breach of contract is the "difference between where [the plaintiff] would have been

---

[10] Because the contract's choice-of-law provision so indicates and Plaintiff has not argued otherwise, the court presumes that Illinois law governs this contractual dispute.

11

financially had the contract not been broken, and where he is in fact." *Emerald Investments Ltd. Partnership v. Allmerica*, 516 F.3d 612, 619 (7th Cir. 2008). Robinson's affidavit does not adequately address this question. The amount that Royal paid in performance of the contract does not shed light on Royal's claimed contractual damages, which depend instead on the losses Royal suffered as a result of RMC's alleged breach.

Perhaps in an effort to address this shortcoming, Robinson also asserts that Royal lost approximately $500,000 in gross annual sales because RMC failed to maintain its "contract sales division," an RMC sales group that solicited orders at trade shows and conventions. (*Id.* at 3.) Neither the complaint nor the sublicense agreement mentions the "contract sales division," however. The court is willing to assume that this is a reference to the "active sales force" mentioned in paragraph 16 of the complaint, but this assumption does little to assist Royal. The complaint does not allege that RMC was contractually obligated to maintain an independent sales force, and Plaintiff has not explained how the maintenance of an independent sales force could be included within the contractual definitions of "RMC Know-How," "RMC Programs," or "RMC Services." Moreover, although the court is willing to draw inferences in favor of Plaintiff, the complaint does not explicitly allege that RMC ever discontinued the maintenance of a sales force or, if it did, when such an action took place. Given these omissions, the court cannot discern how Robinson's statement supports Royal's claim for contractual damages in excess of $75,000.

Robinson's affidavit concludes with a vague catch-all assertion. It reads: "Beyond the foregoing, Royal has suffered other forms of damages, which amounts have not been itemized at this time, but which together, are believed to exceed $75,000." The affidavit does not indicate who exactly holds this belief or any facts that would support such conjecture. This is raw speculation, not competent proof.

The court's concerns about the existence of subject matter jurisdiction apply with equal force to Count III of Royal's complaint. Count III alleges a state law claim for breach of contract against

12

RMC based the parties' stock restriction agreement. Importantly, Plaintiff does not allege a violation of federal securities law or any other federal statute, and a copy of stock restriction agreement provided by Defendants states that it is governed by Illinois law. (Stock Restriction Agreement, Ex. 1 to Pl.'s Mot., D.E. 86.) Count III also fails to support any inference that the amount in controversy is satisfied. With respect to damages, Count III states only: "Royal has suffered damages by reason of the breach." (Compl. ¶ 45.) The complaint contains no allegation about the amount of those damages

Royal has not yet shown that the amount in controversy in this case, which consists exclusively of Royal's claimed contractual damages, exceeds $75,000. Royal must make such a showing before this court may consider any of its claims. This requirement is not unduly onerous. Plaintiff need only "itemize" with some minimal degree of particularity the breaches that it alleges and demonstrate, by competent proof, that the claimed loss it has suffered as a result exceeds $75,000. Defendants' motion to dismiss is granted, but Plaintiff is granted leave to amend and re-file its complaint within 21 days if it can produce competent proof supporting the alleged amount in controversy within that time period. When and if the court is satisfied that federal jurisdiction exists in this case, the court will take up Defendants' motion for summary judgment on Count III of the complaint.

## III. Breach of Contract

Assuming that subject matter jurisdiction does exist in this case, the court is still inclined to grant Defendants' motion to dismiss Counts I, II, IV, and V. The factual allegations of Royal's complaint are so sketchy that they fail to provide Defendants with fair notice and to set out a plausible right to relief. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The various counts of the complaint are nothing but formulaic recitations of the elements of the asserted causes of action. Since *Twombly*, such unadorned recitations do not pass muster, even under generous federal pleading standards.

As described above, Count I asserts the elements of a breach of contract claim under Illinois law: (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) a breach by the defendant, and (4) resultant damages. *Reger Development, LLC*, 592 F.3d at 764 (citing *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 351 Ill. App. 3d 752, 814 N.E.2d 960, 967 (1st Dist. 2004)). With regard to two elements, however–breach and damages–the complaint fails to allege any factual content that satisfies the *Twombly* standard.

The allegations in the complaint amount to the following: (1) at some point, Royal ceased to find satisfactory the programs and services that RMC provided to its sublicensees, (2) as a result of the fact that RMC's services were unsatisfactory, the Restonic Brand (and Royal's sales) suffered; and (3) Royal may have been able to sell more mattresses had RMC done some things differently.[11] Then Royal asserts, in conclusory terms, that "RMC is unable or unwilling to comply with its express and implied obligations . . . and has failed to provide Royal with the contractually required know-how, support and services." Royal's legal conclusions do not follow from its threadbare factual allegations, however, as Royal has failed to point to any specific act or omission that violated the terms of the sublicense agreement. Royal's allegations might establish that RMC did a poor job managing the Restonic brand, but they do not establish that RMC violated any of its contractual duties to Royal.

As noted earlier, the complaint does not explain what specifically is meant by the phrase "programs, know-how, and services" and Royal has not even made reference to the very broad contractual definitions of those terms. *Cf. Gandhi v. Sitara Capital Management, LLC*, No. 09 C 3141, 2010 WL 551266, *9(N.D. Ill. Feb. 9, 2010) (although not required to plead facts with particularity, plaintiffs failed the "low threshold" of federal pleading requirements by not identifying the provisions of the agreement that were allegedly breached.) As noted earlier, the contract

---

[11] Because Plaintiff's allegations are themselves so vague, the court has difficulty setting forth Royal's argument with greater specificity than that produced here.

defines "RMC Know-How" as "trade secrets, information, techniques, materials, processes, specifications, and other technical and commercial information . . . ." The few programs Royal does mention in the complaint have nothing to do with the kind of technical or proprietary information contemplated in this definition of "Know-How." The complaint alleges no facts suggesting that RMC withheld trade secrets, information, or other techniques to which Royal was entitled. The advertising, training, and sales opportunities described in the complaint could be understood as falling within the contractual definitions of "RMC Services" and "RMC Programs," but Royal's allegations fall short with respect to those provisions as well. Again, Royal does not identify when it was deprived of any of these services or what losses it may have suffered as a result. Other than conclusory assertions of law on these points, Royal provides no support for its claims with regard to these elements.

The federal pleading standards do "not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation." *EEOC v. Concentra Health Serv's, Inc.*, 496 F.3d 773, 780 (7th Cir. 2007). A complaint should contain information that the plaintiff reasonably can provide and that is clearly important. *Id.* Royal must be capable of alleging how and when RMC breached the sublicense agreement. Indeed, the initial complaint in this case (though it left many questions unanswered) contained considerably more detailed allegations than can be found in the amended complaint. For example, Royal's earlier complaint alleged that RMC agents interfered with a specific attempt by Royal to win a contract with a large potential customer. (2007 Complaint, D.E. 1, ¶ 62-68.) In the amended complaint, Royal has chosen to omit these factual allegations and replace them with vague pronouncements that lack factual content sufficient to support a plausible claim for relief or to provide Defendants with fair notice of its claims.

Moreover, Royal's rights under the sublicense agreement are defined by the contract in limited terms, which Royal has ignored in both the amended complaint and its brief opposing this

motion.[12] Because the interpretation of an unambiguous contract is a question of law, the plain terms of the contract may make it clear that Royal's complaint is insufficient. *Echo, Inc., v. Whitson Co.*, 121 F.3d 1099, 1104 (7th Cir. 1997) (citing *Quake Constr., Inc. v. American Airlines, Inc.,* 141 Ill. 2d 281, 565 N.E.2d 990, 994 (1990)). The terms of the sublicense agreement entitle Royal to "participate" in such programs as RMC shall make available from time to time to RMC sublicensees on "terms and conditions applicable to other RMC Sub-Licensees." (Sublicense Agreement, Ex. A to Def. Mot., at 4.) This provision, unambiguous on its face, merely entitles Royal to receive programs and services on equal footing with RMC's other sublicensees.

Royal does not allege, however, that RMC withheld opportunities to participate in programs or services that were available to other RMC sublicensees. Instead, it alleges that RMC granted one specific entity, Sleep Alliance, a reimbursement for unspecified services and unique opportunities to negotiate with large potential customers–opportunities that were not similarly available to Royal. But the complaint does not allege that Sleep Alliance was an RMC sublicensee subject to the same terms and conditions that governed Royal's relationship with RMC. In fact, elsewhere the complaint suggests that RMC's declining fortunes impacted all of RMC's sublicensees equally, as RMC lost its "ability to offer and provide to *Royal and its other sublicensees* timely, meaningful, and substantive programs and services of the type offered previously . . ." (Compl. ¶ 26.) (emphasis added). The absence of an allegation of disparate treatment among sublicensees critically undermines Royal's claim for breach. The sublicense agreement did not empower Royal to insist on any advertising or training program that it deemed desirable or effective. Nor was Royal contractually entitled to demand that RMC implement alternative business strategies should the value of the Restonic brand decline. Instead, Royal was

---

[12] Disappointingly, the first six pages of Plaintiff's brief in opposition to Defendants' motion to dismiss contain no more than a verbatim repetition of the language contained in the amended complaint.

entitled to receive its fair share of those services and programs that RMC offered to its sublicensees. Royal has made no allegation here that it did not receive as much. Defendants' motion to dismiss Count I is granted.

## IV. Implied Covenant of Good Faith

In Count II, Royal asserts a claim based on RMC's alleged violation of the "mutually implied covenant of good faith and fair dealing" recognized in Illinois contract law. (Compl. ¶ 38.) Thus, Royal alleges, "RMC has a duty to act in good faith and to fairly deal with Royal . . . and is prohibited from engaging in arbitrary or unreasonable conduct . . . . RMC breached the express and implied term . . . by acting arbitrarily, unreasonably, and inconsistent with the reasonable expectation of the parties . . . ." (*Id.* at 39-40.) This allegation might support Royal's breach of contract claim under Count I, but under Illinois law, the covenant of good faith and fair dealing is a rule of construction that applies to all contracts; it is not a stand-alone obligation. *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006) (citing *Northern Trust Co. v. VIII South Michigan Associates*, 276 Ill. App. 3d 355, 367, 657 N.E.2d 1095, 1104 (1st Dist. 1995)). The duty of good faith, therefore, "creates neither a cause of action sounding in tort nor its own *sui generis* cause of action." *Echo, Inc.*, 121 F.3d at 1106. The allegations of Count II, which recite only the legal standards governing the doctrine of good faith in formulaic terms, include no factual content that would support Royal's claim for breach of contract. Count II is dismissed.

## V. Promissory Estoppel

In Count IV of the complaint, Royal asserted a claim for promissory estoppel against RMC. After Defendants pointed out that Illinois law does not recognize promissory estoppel where consideration supports an agreement, Royal sought to withdraw Count IV. (Pl.'s Br. at 14.) Count IV is dismissed.

## VI. Tortious Interference With Contract

In Count V, Royal advances a single claim against Defendant Restonic: a claim for

intentional tortious interference with the sublicense agreement. In order to state a claim for tortious interference with contractual rights under Illinois law, the plaintiff must plead: (1) the existence of a contract, (2) the defendant's awareness of the contract, (3) the intentional inducement of a contractual breach, (4) an actual breach of the contract, and (5) damages. *Cody v. Harris*, 409 F.3d 853, 859 (7th Cir. 2005) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 545 N.E.2d 672, 676 (1989)). Royal has adequately pleaded the first two elements by alleging the existence of the sublicense agreement between Royal and RMC and Restonic's knowledge of that agreement. (Compl. ¶ 54-55.) The rest of the elements lack any factual support, however. The complaint merely states, "Restonic intentionally and unjustifiably induced RMC to breach the [agreement]. As a result of Restonic's intentional and unjustifiable inducement of RMC to breach . . . Royal has suffered substantial harm and damages." (*Id.* at ¶ 56-57.)

Count V shares the weaknesses of Count I, in that the complaint provides no factual support for Royal's conclusory assertions of breach and damages. The complaint also fails to allege any fact relating to the intent of Restonic or its agents. Nor does the complaint specify what actions Restonic undertook to induce RMC's breach. The complaint alleges that Restonic failed to maintain the structure and integrity of its brand, but there is no indication of how such a failure was intended to or did, in fact, interfere with Royal's contractual rights. Royal has again failed to provide Defendants with fair notice of its claim or to raise a plausible right to relief. Count V is dismissed.

## **CONCLUSION**

Defendants' motion to dismiss [80] is granted. Plaintiff is granted leave to amend and re-file its complaint within 21 days, furnishing competent proof that the court has subject matter jurisdiction. Defendants' motion for summary judgment [89] on Count III of Royal's complaint is stricken without prejudice to renewal if Plaintiff is able to satisfy the court that it has jurisdiction in this case.

ENTER:

Dated: March 22, 2010

_____
REBECCA R. PALLMEYER
United States District Judge